1  MUSICK, PEELER & GARRETT LLP
   Susan J. Field (State Bar No. 086200)
2  One Wilshire Boulevard, Suite 2000
   Los Angeles, California 90017-3383
3  Telephone: (213) 629-7600
   Facsimile: (213) 624-1376
4  s.field@mpglaw.com

5  MUSICK, PEELER & GARRETT LLP
   Jennifer M. Kokes (State Bar No. 210261)
6  650 Town Center Drive, Suite 1200
   Costa Mesa, California 92626-1925
7  Telephone: (714) 668-2400
   Facsimile: (714) 668-2490
8  j.kokes@mpglaw.com

9  Attorneys for CRUM & FORSTER SPECIALTY INSURANCE COMPANY

10 DRINKER BIDDLE & REATH LLP
   William A. Hanssen (State Bar No. 110613)
11 Suzanne V. Stouder (State Bar No. 161077)
   1800 Century Park East, Suite 1400
12 Los Angeles, California 90067
   Telephone:  (310) 203-4000
13 Facsimile:  (310) 229-1285
   William.hanssen@dbr.com
14 Suzanne.stouder@dbr.com

15 Attorneys for NATIONAL UNION FIRE INSURANCE COMPANY OF
   PITTSBURGH, PA,, LEXINGTON INSURANCE COMPANY, CHARTIS
16 SPECIALTY INSURANCE COMPANY (FORMERLY AMERICAN
   INTERNATIONAL SPECIALTY LINES INSURANCE)

17

18          **UNITED STATES DISTRICT COURT**

19          **CENTRAL DISTRICT OF CALIFORNIA**

20

| | |
|---|---|
| 21 NATIONAL UNION FIRE INSURANCE COMPANY OF | CASE NO. _SACV12-00943 JST (RNBx)_ |
| 22 PITTSBURGH, PA, LEXINGTON INSURANCE COMPANY, CHARTIS | **COMPLAINT FOR REIMBURSEMENT;** |
| 23 SPECIALTY INSURANCE COMPANY (FORMERLY | **DECLARATORY RELIEF; AND UNJUST ENRICHMENT** |
| 24 AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE), | |
| 25 AND CRUM & FORSTER SPECIALTY INSURANCE | **DEMAND FOR JURY TRIAL** |
| 26 COMPANY, | |
| 27        Plaintiffs, | |
| 28              vs. | |

786986.1

MGA ENTERTAINMENT, INC.; and
ISAAC LARIAN

                    Defendants.

Plaintiffs National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), Lexington Insurance Company ("Lexington"), Chartis Specialty Insurance Company ("Chartis Specialty")(formerly American International Specialty Lines Insurance Company) (collectively, the "Member Companies"), and Crum & Forster Specialty Insurance Company ("Crum & Forster") hereby bring this Complaint as follows:

## THE PARTIES

1.    National Union is a Pennsylvania corporation with its principal place of business in New York, New York.

2.    Chartis Specialty is an Illinois corporation with its principal place of business in New York, New York.

3.    Lexington is a Massachusetts corporation that maintains its principal place of business in Boston, Massachusetts.

4.    Crum & Forster is an Arizona corporation that maintains its principal place of business in Morristown, New Jersey.

5.    Upon information and belief, MGA Entertainment, Inc. ("MGA") is a California corporation with its principal place of business in Van Nuys, California.

6.    Upon information and belief, Isaac Larian is a resident of California and is the President and the Chief Executive Officer as well as the majority shareholder of MGA.  (Collectively, MGA and Larian will be referred to as "MGA" herein).

7.    Upon information and belief, MGA's predecessor in interest is ABC International Traders, Inc. ("ABC").

## JURIDICTION AND VENUE

8.    This court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1), in that the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs as between citizens of different states.  In addition, this court has personal jurisdiction over MGA because its principal place of business is located within this judicial district.

9.    Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(3) because most of the defendants reside, may be found, and transact business in this District.

## THE INSURANCE POLICIES

A.    **Lexington's 2006 and 2007 Policies**

10.    Lexington issued to MGA Commercial General Liability Policies, Policy No. 0308552, for the period January 1, 2006 to January 1, 2007 (the "2006 Policy") and Policy No. 0350122, for the period January 1, 2007 to January 1, 2008 (the "2007 Policy") (collectively, the "Lexington Policies").  Copies of the Lexington Policies are attached hereto as Exhibits A and B.  The Lexington Policies are substantially similar in form.

11.    The Insuring Agreement in the Lexington Policies provides that Lexington will pay "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies."

12.    The Lexington Policies further state that Lexington "has the right and duty to defend the insured against any 'suit' seeking those damages.  However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply."

13.    The Lexington Policies  contain certain "Conditions" to coverage, including Lexington's right to subrogation.  That condition provides:

Section V.   Conditions

\* \* \*

8.      Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

14.      The Lexington Policies, therefore, expressly confirm its right to subrogation.

**B.      National Union's 2001 Policy**

15.      National Union issued to ABC a commercial umbrella liability insurance policy, Policy No. BE 740-82-85, with an effective period of January 1, 2001 to January 1, 2002 (the "2001 Policy"). A copy of the 2001 Policy is attached hereto as Exhibit C.

16.      With respect to Coverage A, the Insuring Agreement of the 2001 Policy provides that National Union "will pay on behalf of the Insured those sums in excess of the total applicable limits of Scheduled Underlying Insurance that the Insured becomes legally obligated to pay as damages provided the damages would be covered by Scheduled Underlying Insurance, except for exhaustion of the total applicable limits of Scheduled Underlying Insurance by the payment of Loss."

17.      The 2001 Policy provides that National Union:

shall have the right and duty to defend any Suit against the Insured that seeks damages covered by this policy:

1.      under Coverage A, when the total applicable limits of Scheduled Underlying Insurance have been exhausted by payment of Loss.

2.      under Coverage B, when the damages sought because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury would

1                   not be covered by Scheduled Underlying
2                   Insurance.

3           18.     The 2001 Policy contains certain "Conditions" to coverage,

4   including the National Union's right to subrogation.  It provides:

5           III.     Conditions –

6                                 * * *

7           O.     Transfer of Rights of Recovery

8                 1.     If any insured has rights to recover all or part of
9                        any payment we have made under this policy, those
10                       rights are transferred to us.  The Insured must do
11                       nothing after loss to impair these rights and must
                        help us enforce them.

12          19.     The National Union Policy, therefore, expressly confirms its

13  right to subrogation.

14      **C.**     **Chartis Specialty's 2002 Policy**

15          20.     Chartis Specialty issued to ABC a commercial umbrella liability

16  insurance policy, Policy No. BE 7413666, with an effective period of January 1,

17  2002 to January 1, 2003 (the "2002 Policy").  A copy of the 2002 Policy is attached

18  hereto as Exhibit D.

19          21.     The Insuring Agreement of the 2002 Policy provides that Chartis

20  Specialty "will pay on behalf of the Insured those sums in excess of the Retained

21  Limit that the Insured becomes legally obligated to pay by reason of liability

22  imposed by law or assumed by the Insured under an Insured Contract because of

23  Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes

24  place during the Policy Period and is caused by an Occurrence happening anywhere

25  in the world."

26          22.     The 2002 Policy provides that Chartis Specialty:

27          shall have the right and duty to defend any claim or suit seeking
28          damages covered by the terms and conditions of this policy when:

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

786986.1

5

1.    The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the Insured have been exhausted by payment of claims to which this policy applies; or

2.    Damages are sought for Bodily Injury, Property Damage, Personal Injury or Advertising Injury covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the Insured.

23.    The 2002 Policy contains certain "Conditions" to coverage, including Chartis Specialty's right to subrogation.  It provides:

VI.    Conditions –

\* \* \*

O.    Subrogation

If any insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us.  The Insured must do nothing after loss to impair these rights and must help us enforce them.

24.    The Chartis Specialty Policy, therefore, expressly confirms its right to subrogation.

25.    The 2001 Policy, the 2002 Policy and the Lexington Policies are referred to hereafter as the "Member Companies' Policies"

**D.**    **The Crum & Forster Policies.**

26.    Crum & Forster issued to MGA Commercial General Liability Policies, Policy No. GLO 0000222, for the period January 1, 2003 to January 1, 2004 (the "2003 Policy"), Policy No. GLO 011079, for the period January 1, 2004 to January 1, 2005 (the "2004 Policy") and  Policy No. GLO 050151, for the period January 1, 2005 to January 1, 2006  (the "2005 Policy") (collectively, the "Crum & Forster Policies").  Copies of the Crum & Forster Policies are attached hereto as Exhibits E, F and G.  The Crum & Forster Policies are substantially similar in form.

27.    The Insuring Agreement in the Crum & Forster Policies provides

1  that Crum & Forster will pay "those sums that the insured becomes legally obligated

2  to pay as damages because of 'personal and advertising injury' to which this

3  insurance applies."

4       28.    The Crum & Forster Policies further state that Crum & Forster

5  "has the right and duty to defend the insured against any 'suit' seeking those

6  damages.  However, we will have no duty to defend the insured against any 'suit'

7  seeking damages because of 'personal and advertising injury' to which this

8  insurance does not apply."

9       29.    The Crum & Forster Policies contain certain express

10  "Conditions" to coverage under the Crum & Forster  Policies, including Crum &

11  Forster's  right to subrogation.  That condition provides:

12       Section V.   Conditions

13                             * * *

14       8.    Transfer Of Rights Of Recovery Against Others To Us

15       If the insured has rights to recover all or part of any

16       payment we have made under this Coverage Part, those
         rights are transferred to us. The insured must do nothing

17       after loss to impair them.  At our request, the insured will

18       bring "suit" or transfer those rights to us and help us
         enforce them.

19       30.    The Crum & Forster Policies, therefore, expressly confirm Crum

20  & Forster's right to subrogation.

21                    **THE MATTEL LITIGATION**

22       31.    Mattel, Inc. ("Mattel") brought a claim against MGA including,

23  among other things, allegations that MGA infringed upon Mattel's rights in the

24  "Bratz" line of dolls in violation of the Copyright Act, 17 U.S.C. § 101 et seq. (the

25  "Mattel Litigation").

26       32.    Mattel's various claims, including an amended copyright claim

27  asserting ownership of sketches and sculpts that MGA had allegedly infringed upon,

28  were consolidated for trial in Federal Court, in the Central District of California.

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

786986.1

7

1         33.    MGA filed its Answer and Counterclaims, including a count

2 under the California Uniform Trade Secrets Act ("CUTSA").

3         34.    The jury entered a verdict in favor of MGA finding, among other

4 things, that Mattel did not own the copyrights at issue and thus MGA did not

5 infringe on any Mattel copyright.

6         35.    Similarly, the jury found against Mattel on all of Mattel's trade

7 secret misappropriation allegations against MGA.

8         36.    The jury also found in favor of MGA on a number of its claims

9 under CUTSA.

10         37.    MGA sought attorneys' fees and costs from Mattel as the

11 prevailing party in a copyright action pursuant to § 505 of the Copyright Act.

12         38.    MGA sought attorneys' fees and costs from Mattel as the

13 prevailing party in a CUTSA claim.

14         39.    MGA filed a Bill of Costs as the prevailing party under FRCP

15 Rule 54.

16         40.    On August 4, 2011, the District Court awarded MGA

17 $105,688,073.00 in attorneys' fees and $31,677,104.00 in costs pursuant to § 505 of

18 the Copyright Act (hereinafter the "Copyright Fee Award").

19         41.    On August 4, 2011, the District Court awarded MGA $2,172,000

20 in attorneys' fees and $350,000 in costs pursuant to CUTSA (hereinafter the

21 "CUTSA Fee Award").

22         42.    On August 11, 2011, Mattel filed a Notice of Appeal, which

23 remains pending.

24         43.    On August 26, 2011,  Plaintiffs filed a Motion to Intervene in the

25 Mattel Litigation to file a Complaint in Intervention against MGA and Mattel

26 seeking to enforce the Plaintiffs' rights, including those of  subrogation and

27 reimbursement.  Both MGA and Mattel opposed the motion.  On September 26,

28 2011, the District Court denied that motion and specifically held that such relief

1  against MGA must be made in a separate action.  The Court also rejected Plaintiffs'

2  claim that they had direct rights to subrogation against Mattel.  Plaintiffs dispute that

3  such ruling is correct and have filed a Notice of Appeal, but to protect their rights,

4  have proceeded as set forth herein.

5                          **TENDERS AND RESPONSES**

6            44.    On or around November 1, 2007, MGA provided the Member

7  Companies with notice of the counterclaims asserted in the Mattel Litigation.

8            45.    By letter dated May 15, 2008, Lexington agreed to defend MGA

9  in connection with the Mattel Litigation pursuant to a full reservation of all of

10 Lexington's rights.

11           46.    By letters dated July 8 and 9, 2008, National Union and Chartis

12 Specialty agreed to participate in the defense of MGA in the Mattel Litigation under

13 the 2001 Policy and 2002 Policy, subject to a complete reservation of National

14 Union's and Chartis Specialty's rights.

15           47.    In or around January, 2007, MGA gave notice to Crum & Forster

16 and thereafter tendered the defense of the counterclaim asserted in the Mattel

17 Litigation.

18           48.    Crum & Forster declined to defend and, on April 3, 2008, MGA

19 brought the action captioned *MGA Entertainment, Inc., et al. v. Crum & Forster*

20 *Specialty Insurance Company*, Case No. 5:08-CV-00459-SCL-JCR alleging that

21 Crum & Forster owed a duty to defend under the Policies' coverage for "personal

22 and advertising injury."

23           49.    Following a partial settlement in December 2008, the Court ruled

24 on cross-motions for summary judgment and determined that Crum & Forster had a

25 duty to defend based on the allegations of the Second Amended Answer and

26 Counterclaim.  Pursuant to that Ruling and the Settlement Agreement, Crum &

27 Forster agreed to defend under reservation of rights which was confirmed in a letter

28 dated July 15, 2009.  Following the filing by Mattel of the Fourth Amended Answer

1  and Counterclaim, Crum & Forster addressed the amendments to the pleadings and

2  supplemented its reservation of rights by letter dated May 17, 2010.

3        50.    In February, 2012, the Court held that Crum & Forster  and

4  Lexington, respectively, had a duty to defend based on the allegations of the Fourth

5  Amended Answer and Counterclaim.

6        51.    On March  26, 2012,  Crum & Forster  supplemented its

7  reservation of rights to address developments in the Mattel Litigation that had taken

8  place since its letter of May 17, 2010.

9        52.    In  each of their letters, Crum & Forster and The Member

10  Companies reserved all of their respective rights under their respective policies and

11  under California law.

12        53.    From and after the dates that Plaintiffs (and each of them) agreed

13  to defend MGA, under reservations of rights, MGA has submitted to the Member

14  Companies (or their designee) various invoices of law firms representing MGA in

15  the Mattel Litigation setting forth the fees and costs incurred by such firms

16  (hereinafter, "MGA's Counsel") and invoices of various other service providers or

17  vendors (hereinafter "Third Party Vendors") which were retained by MGA and/or

18  its counsel and which MGA alleged were incurred in the defense of the Mattel

19  Litigation and submitted to the Member Companies other Costs  that MGA

20  contended were incurred in the defense of the Mattel Litigation.  With a few limited

21  exceptions where payment was made directly to the law firm or service provider or

22  vendor, pursuant to agreements reached with MGA, Plaintiffs have made payments

23  of their respective "share" of such invoices directly to MGA for transmittal to or for

24  payment of such law firm or service provider or vendor invoices.  To date, the

25  Member Companies and Crum & Forster have made substantial payments to MGA

26  and/or law firms, service providers or vendors  for the defense of MGA.

27        54.  Plaintiffs are informed and believe and, thereupon allege that

28  certain of those invoices which were paid in whole or part by the Member

1  Companies and Crum & Forster are the basis for the Copyright Fee Award and the

2  basis for an award of costs under FRCP 54. Further, the Member Companies and

3  Crum & Forster are informed and believe that they have paid fees and costs incurred

4  by MGA in prosecution of its CUTSA claim.

5                    **FIRST CAUSE OF ACTION**

6            **(Claim for Equitable Reimbursement – against MGA)**

7            55.    The Member Companies and Crum & Forster incorporate the

8  allegations contained in paragraphs 1-54 above as if fully set forth herein.

9            56.    The Member Companies and Crum & Forster have made

10  substantial payments under their respective policies to MGA in connection with the

11  representation of MGA in the Mattel Litigation.

12            57.    MGA has been awarded attorneys' fees and costs as direct

13  compensation for fees and costs incurred in connection with its defense in the Mattel

14  Litigation and the prosecution of MGA's CUTSA claims and may further be

15  awarded Costs as the "Prevailing Party."

16            58.    To the extent that MGA has recovered or in the future does

17  recover any attorneys' fees or costs from Mattel based upon the Copyright Fee

18  Award, the CUTSA Fee Award and/or the Bill of Costs, the Member Companies

19  and Crum & Forster are entitled in equity to reimbursement of the payments they

20  made in defense of MGA for the services and/or costs for which recovery is made.

21                    **SECOND CAUSE OF ACTION**

22            **(Claim for Contractual Reimbursement – against MGA)**

23            59.    The Member Companies and Crum & Forster incorporate the

24  allegations contained in Paragraphs 1-54 above as if fully set forth herein.

25            60.    The Member Companies and Crum & Forster have made

26  substantial payments under their respective policies to MGA in connection with the

27  defense of MGA in the Mattel Litigation.

28            61.    MGA has been awarded attorneys' fees and costs as direct

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

786986.1

11

COMPLAINT FOR REIMBURSEMENT: DECLARATORY RELIEF: AND UNJUST ENRICHMENT

1   compensation for fees and costs incurred in connection with its defense in the Mattel
2   Litigation and the prosecution of MGA's CUTSA claims, and may further be
3   awarded Costs as the "Prevailing Party."

4         62.    The Member Companies' Policies and the Crum & Forster
5   Policies each include an express term in their "Conditions" which provides that "if
6   the Insured has rights to recover all or part of any payment we have made under this
7   Coverage Part, those rights are transferred to us."

8         63.    The Member Companies and Crum & Forster have made
9   substantial payments under their respective policies in connection with the
10  representation of MGA in the Mattel Litigation.

11        64.    The Member Companies and Crum & Forster are contractually
12  subrogated to MGA's recovery of attorneys' fees and costs under the Copyright Act,
13  CUTSA and/or under the Bill of Costs and are entitled to full reimbursement from
14  any recovery for those amounts that they paid and which the Court has ordered or
15  will hereafter order Mattel pay to MGA.

16        65.    To the extent that MGA has recovered or in the future does
17  recover any attorneys' fees or costs from Mattel, based upon the Copyright Fee
18  Award, the CUTSA Fee Award and/or the Bill of Costs, the Member Companies
19  and Crum & Forster are entitled to reimbursement of payments they made in
20  defense of MGA for the services and/or costs for which recovery is made under the
21  applicable conditions of their respective.

22        **THIRD CAUSE OF ACTION**

23        **(Unjust Enrichment – against MGA)**

24        66.    The Member Companies and Crum & Forster incorporate the
25  allegations contained in Paragraphs 1-54 above as if fully set forth herein.

26        67.    The Member Companies and Crum & Forster have made
27  substantial payments under their respective policies to MGA in connection with the
28  representation of MGA in the Mattel Litigation.

68.     By the express, bargained-for terms of the policies, MGA is contractually obligated to reimburse the Member Companies and Crum & Forster. Further, to the extent that Plaintiffs have made payments for the defense of MGA, MGA is equitably obligated to reimburse the Member Companies and Crum & Forster

69.     The District Court found that Mattel was liable to MGA for fees and costs under both the Copyright Act and CUTSA, and may hereafter award costs under Federal Rule of Civil Procedure 54 and Local Rule 54-3 to MGA as the prevailing party.  The Ninth Circuit may affirm such award or make such other order as may be just and proper.

70.     To the extent that MGA has recovered or in the future does recover any fees and costs from Mattel which have been paid by the Member Companies and/or Crum & Forster, it will be unjustly enriched by recovering the same fees and costs from both Mattel and the Member Companies and Crum & Forster.

71.     The Member Companies and Crum & Forster are entitled to restitution/reimbursement of the amounts paid for MGA's defense  from any award of fees or costs MGA recovers from Mattel and which were previously paid by the Member Companies and Crum & Forster in the Mattel Litigation.

## FOURTH CAUSE OF ACTION

### ( Declaratory Relief – against MGA)

72.     The Member Companies and Crum & Forster incorporate the allegations contained in Paragraphs 1-54 above as if fully set forth herein.

73.     Through payments made in connection with the defense of MGA in the Mattel Litigation, the Member Companies and Crum & Forster have legal rights of reimbursement to the extent that MGA has recovered or in the future does recover any attorneys' fees or costs under the Copyright Fee Award, the CUTSA Fee Award or the Bill of Costs which were paid in whole or part by Plaintiffs.

74.     Plaintiffs have advised MGA of and have asserted their rights to recovery of such amounts and MGA has denied Plaintiffs' rights and contend that Plaintiffs are not entitled to recovery of such amounts.

75.     Thus, an actual controversy exists between Plaintiffs and MGA concerning Plaintiffs' rights to recovery from MGA amounts MGA recovers under the Copyright Fee Award, the CUTSA Fee Award and/or the Bill of Costs as the contentions of the parties' respective rights and obligations.  This controversy is ripe for adjudication, and declaratory relief is necessary and appropriate to determine and preserve the Member Companies' and Crum & Forster's right to be reimbursed from MGA's recovery of attorneys' fees and costs from Mattel under the Copyright Act, CUTSA and/or under the Bill of Costs.

76.     The Member Companies and Crum & Forster are entitled to a declaration that they are and may obtain reimbursement for those fees and costs that they paid in connection with the representation of MGA in the Mattel Litigation from MGA's recovery of such attorneys' fees and costs as the District Court has ordered or will hereafter order be paid by Mattel so that all parties will be bound by the same interpretation of the Policies and the plaintiffs' rights thereunder.

## DEMAND FOR JURY TRIAL

77.     Plaintiffs hereby demand a jury trial.

## DEMAND FOR RELIEF

WHEREFORE, Member Companies and Crum & Forster demand the following relief:

a.     A judgment awarding the Member Companies and Crum & Forster those attorneys' fees and costs paid by them in defense of MGA and/or the prosecution of MGA's CUTSA claim which the Court has ordered or will hereafter order Mattel pay to MGA;

b.     A declaration that the Member Companies and Crum & Forster have reimbursement rights in any recovery of attorneys' fees and

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

786986.1

COMPLAINT FOR REIMBURSEMENT; DECLARATORY RELIEF; AND UNJUST ENRICHMENT

1  costs paid by them in defense of MGA and/or the prosecution of

2  MGA's CUTSA claim, which the Court has ordered or will

3  hereafter order Mattel pay to MGA;

4  c.  The imposition of a constructive trust for the benefit of the

5  Member Companies and Crum & Forster over any award of

6  attorneys' fees and costs granted or which are hereafter granted

7  to MGA, and any proceeds and interest therefrom;

8  d.  The return of any amounts paid by Plaintiffs towards attorneys

9  fees and costs that MGA has not and will not pay to the parties

10  whose invoices were paid by Plaintiffs;

11  e.  Interest on any award and costs of suit; and ,

12  d.  Such other relief as the Court deems just and proper.

13  DATED: June 13, 2012          MUSICK, PEELER & GARRETT LLP

14

15  By:  _Susan Field_ (JX)

16  Susan J. Field

    Attorneys for CRUM & FORSTER

17  SPECIALTY INSURANCE COMPANY

18

19  DATED: June 13, 2012          DRINKER, BIDDLE & REATH, LLC

20

21  By:  _Suzanne Stouder_ (JX)

22  Suzanne Stouder

    Attorneys for NATIONAL UNION FIRE

23  INSURANCE COMPANY OF

24  PITTSBURGH, PA., LEXINGTON

    INSURANCE COMPANY, CHARTIS

25  SPECIALTY INSURANCE COMPANY

26  (FORMERLY AMERICAN

    INTERNATIONAL SPECIALTY LINES

27  INSURANCE)

28

MUSICK, PEELER
& GARRETT LLP
ATTORNEYS AT LAW

# Exhibit A

# LEXINGTON INSURANCE COMPANY

Administrative Offices: 100 Summer Street, Boston, Massachusetts 02110-2103
(hereinafter called the Company)

## COMMERCIAL GENERAL LIABILITY POLICY
## OCCURRENCE FORM

### Declarations

Policy Number: 0308552                                      Renewal of: NEW

Item 1.    Named Insured: MGA ENTERTAINMENT, INC.

Address:    163 ROSCOE BLVD. STE.100
            VAN NUYS, CA 94106

The Named Insured is:

☐ Individual      ☐ Partnership      ☐ Joint Venture      ☐ Limited Liability Company
☒ Organization (other than a Partnership or Joint Venture)      ☐ Trust

The Business of the Named Insured is:
TOY MANUFACTURER

Item 2.    Policy Period:  From: 01/01/06 To: 01/01/07
           12:01 A.M., standard time at the address of the Named Insured as stated herein.

Item 3.    Limits of Insurance:

| | | |
|---|---|---|
| Each Occurrence Limit | $1,000,000 | |
| Damage to Premises Rented to you Limit | $   50,000 | - Any one premises |
| Personal & Advertising Injury Limit | $1,000,000 | - Any one person or organization |
| General Aggregate Limit | $2,000,000 | |
| Products-Completed Operations Aggregate Limit | $2,000,000 | |

Item 4.    Premium:

A. Total Advance Premium:          $405,000
B. Annual Minimum Premium:         $405,000
C. Minimum Earned Premium at Inception:  $202,500

Item 5.    Audit Period:  ANNUAL

**The policy is comprised of this Declarations page, the policy form and the schedules and endorsements, if any, attached at inception or during the Policy Period.**

Authorized Representative OR
Countersignature (in states where applicable)

OCC-GL
LX9640 (09/04)

EXHIBIT A - PAGE 17

**LEXINGTON INSURANCE COMPANY**

ANY REFERENCE IN THE POLICY FORM TO CONTACT IN WRITING THE COMPANY'S CLAIM OR
LEGAL DEPARTMENTS SHOULD USE THE ADDRESSES PROVIDED BELOW.


Attn: Claim Department
Lexington Insurance Company
100 Summer Street
Boston, Massachusetts 02110-2103


Attn: Legal Department
Lexington Insurance Company
100 Summer Street
Boston, Massachusetts 02110-2103

## FORMS SCHEDULE

Named Insured:   MGA ENTERTAINMENT INC.

Policy No:  0308552                                      Effective Date:   01/01/2006

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| LX9104 | 07/97 | | CGL RATE SCHEDULE |
| LX9640 | 09/04 | | CGL OCCURRENCE |
| LX9641 | 09/04 | | CGL OCCURRENCE |
| LEXCAS032 | 11/03 | 001 | CROSS SUITS ENDORSEMENT |
| LX9407 | 09/00 | 002 | PUNITIVE DAMAGES EXCLUSION |
| LX9568 | 01/03 | 003 | ACCIDENT INSURANCE ENDORSEMENT |
| LX9827 | 01/05 | 004 | TERRORISM PREMIUM CHARGE END |
| LX9606 | 06/03 | 005 | EMPLOYEE BENEFITS LIAB COV |
| LX9466 | 10/03 | 006 | A.I. REQ'D BY WRITTEN CONTRACT |
| LX5201 | 11/88 | 007 | ADDITIONAL INSURED VENDORS |
| MANUSCRIPT | | 008 | ADVERTISING,BROADCASTING |
| MANUSCRIPT | | 009 | AMENDMENT TO SELF INSURED |
| LX9488 | 01/02 | 010 | SELF INSURED RETENTION |

## NOTICE

1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NON-ADMITTED" OR "SURPLUS LINE" INSURERS.

2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT WHICH APPLIES TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. CALIFORNIA MAINTAINS A LIST OF ELIGIBLE SURPLUS LINE INSURERS APPROVED BY THE INSURANCE COMMISSIONER. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST.

5. FOR ADDITIONAL INFORMATION ABOUT THE INSURER YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357.

6. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

SF 199222.2 73670 00741 D-2 (EFFECTIVE JANUARY 1, 2005 THROUGH DECEMBER 31, 2007)

## SCHEDULE
### Commercial General Liability
### Schedule of Rates/Advance Premium

| Classification Description | Premium Basis* | Rate* | Advance/Deposit Premium |
|---|---|---|---|
| TOY MANUFACTURER<br>CLASS CODE: 59790 | SALES<br>720MIL | $.563 | $405,000 |
| | | | |
| | | | |

\*    (s)  per $1,000 sales
     (p)  per $1,000 payroll
     (x)       other (specify)

**CGL SCH
LX9104 (ED. 07/97)**

## LEXINGTON INSURANCE COMPANY

### Administrative Offices: 100 Summer Street, Boston, Massachusetts 02110-2103

### COMMERCIAL GENERAL LIABILITY POLICY
### OCCURRENCE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

The words "we", "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under SECTION II - WHO IS AN INSURED. Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION IV - DEFINITIONS.

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.     Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages because of "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)**    The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE; and

        **(2)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS-COVERAGES A AND B.

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)**    Prior to the policy period, no insured described in Paragraph 1 of SECTION II - WHO IS AN INSURED and no "employee" authorized by you to give or receive notice of an "occurrence", claim or "suit", knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the "policy period".

    **c.**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of SECTION II. WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" claim , or "suit", includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.**    "Bodily injury" or "property damage" will be deemed to have  been known to have occurred at the earliest time  when any insured  listed under Paragraph 1. of SECTION II - WHO IS AN INSURED or any "employee"  authorized by you to give or receive notice of an "occurrence", claim or "suit":

        **(1)**    Reports  all, or any  part, of the  "bodily injury"  or "property  damage" to us or any other insurer;

        **(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

       **(3)**    Becomes aware by any other means that  "bodily injury"  or "property damage"  has occurred or has begun to occur.

e.    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services, loss of consortium or death resulting at any time from the "bodily injury".

**2.    Exclusions**

This insurance does not apply to:

**a.    Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.    Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)    That the insured would have in the absence of the contract or agreement; or

(2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c.    Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1)    Causing or contributing to the intoxication of any person;

(2)    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)    Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d.    Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e.    Employer's Liability**

(1)    "Bodily injury" to an "employee" of the insured arising out of and in the course of:

(a)    Employment by the insured; or

(b)    Performing duties related to the conduct of the insured's business; or

(2)    Any claim or "suit" brought by the spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1)    Whether the insured may be liable as an employer or in any other capacity; and

(2)    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

OCC-GL    Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission. All Rights Reserved.
LX9641 (09/04)    2

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f.    Pollution**

    (1)    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

        (a)    At or from any premises, site or location, which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

            (I)    "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat that building; water for personal use by the building's occupants or their guests;

            (II)    "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, sight or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

            (III)    "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

        (b)    At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

        (c)    Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

            (I)    Any insured; or

            (II)    Any person or organization for whom you may be legally responsible; or

        (d)    At or from any premises, site or location, on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

            (I)    "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.   This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, disposal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

            (II)    "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.
3

(III)   "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e)   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effect of "pollutants".

(2)   Any loss, cost or expense arising out of any:

(a)   Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b)   Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" not otherwise excluded that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g.   **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1)   A watercraft while ashore on premises you own or rent;

(2)   A watercraft you do not own that is:

(a)   Less than 26 feet long; and

(b)   Not being used to carry persons or property for a charge;

(3)   Parking an "auto" on or on the ways next to premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or any insured;

(4)   Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5)   "Bodily injury" or "property damage" arising out of:

(a)   The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

(b)   The operation of any of the machinery or equipment listed in paragraph f.(2) or f.(3) of Page of the definition of "mobile equipment".

h.   **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1)   The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2)   The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

OCC-GL
LX9641 (09/04)

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.
4

**i.**    **War**

"Bodily injury" or "property damage", however caused, arising directly or indirectly out of:

**(1)**    War, including undeclared or civil war; or

**(2)**    Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)**    Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

This exclusion does not apply to the use or threaten use of "terrorism".

As used in this exclusion, "terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

**(1)**    A government;

**(2)**    The civilian population of a country, state or community; or

**(3)**    To disrupt the economy of a country, state or community.

So long as the Terrorism Risk Insurance Act of 2002 (the "Act") is in effect, "terrorism" includes an act of terrorism as defined by Section 102. Definitions of the Act and any revisions or amendments thereto.

**j.**    **Damage to Property**

"Property damage" to:

**(1)**    Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)**    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)**    Property loaned to you;

**(4)**    Personal property in the care, custody or control of the insured;

**(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. However, a separate Limit of Insurance applies to Damage To Premises Rented To You as described in SECTION III - LIMITS OF INSURANCE.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.**    **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission. All Rights Reserved.

l.   **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.   **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.   **Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o.   **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p.   **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q.   **Fungus/Mold**

"Bodily injury" or "property damage" or any other loss, cost or expense, including, but not limited to losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

**(1)** Any "fungus(i)", "molds(s)", mildew or yeast, or

**(2)** Any "spore(s)" or toxins created or produced by or emanating from such "fungus(i)", "mold(s)", mildew or yeast, or

**(3)** Any substance, vapor, gas, or other emission or organic or inorganic body substance produced by or arising out of any "fungus(i)", "mold(s)", mildew or yeast, or

**(4)** Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any "fungus(i)", "mold(s)", mildew, yeast or "spore(s)" or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that "bodily injury" or "property damage", loss, cost or expense.

For the purpose of this exclusion, the following definitions are added to the Policy:

"Fungus(i)" includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts, and mushrooms.

"Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter of on living organisms, and fungi that produce molds.

"Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants, organisms or microorganisms.

**r.    Employment Related Practices**

Any claim or "suit" alleging or asserting in any respect loss, injury, or damage (including consequential bodily injury) in connection with "wrongful termination" of your "employees" and/or "discrimination" involving your "employees" and/or "sexual harassment" of your "employees".

The following definitions apply to this exclusion:

"Wrongful termination" means termination of an employment relationship in a manner which is against the law, wrongful, or in breach of an implied or written agreement to continue employment.

"Discrimination" means termination of an employment relationship or a demotion, or a failure or refusal to hire or promote an individual because of race, color, religion, age, sex, disability, pregnancy, natural origin, sexual orientation or other protected category or characteristic established pursuant to any applicable United States federal, state, or local law, regulation or ordinance.

"Sexual harassment" means unwelcome sexual advances and/or requests for sexual favors and/or other verbal or physical conduct of a sexual nature that (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance.

**s.    Asbestos**

(1)    "Bodily injury" in any way arising out of the use by any person or organization of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

(2)    "Property damage" to real property arising out of the use by any person or organization of asbestos, asbestos products, asbestos fibers, asbestos dust, including without limitation the costs incurred with respect to the removal or abatement of asbestos, asbestos products, asbestos fibers or asbestos dust from or in such real property;

(3)    Any obligation of the insured to indemnify any party because of damages arising out of such "property damage", "bodily injury", sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury, at any time as a result of the manufacture of, mining of, use of, sale of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

(4)    Any obligation to defend any "suit" or claim against the insured alleging "bodily injury", sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury or "property damage" resulting from or contributed to, by any and all manufacture of, mining of, use of, sale of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

t.   **Lead**

(1)   "Bodily injury" or "property damage", for past, present or future claims arising in whole or in part, either directly or indirectly, out of the manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, replacement or handling of, exposure to, ingestion of or testing for, lead whether or not the lead is or was at any time airborne as a particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever;

(2)   The costs of clean up or removal of lead or products and materials containing lead;

(3)   The costs of such actions as may be necessary to monitor, assess and evaluate the release or threat of same, or lead or products and material containing lead;

(4)   The cost of disposal of lead substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result;

(5)   The cost of compliance with any law or regulation regarding lead.

u.   **Nuclear**

(1)   "Bodily injury" or "property damage":

(a)   With respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any such policy but for its termination upon exhaustion of its limit of liability; or

(b)   Resulting from the "hazardous properties" of "nuclear material" and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the insured is or, had this policy not been issued, would be entitled to indemnify from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof with any person or organization.

(2)   "Bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

(a)   The "nuclear material" (i) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (ii) has been discharged or dispersed therefrom:

(b)   The "nuclear material" is contained in "spent fuel" or "waste" at anytime possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the insured; or

(c)   The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions of Canada, this subparagraph (2) (c) applies only to "property damage" to such "nuclear facility" and any property thereat.

(3)   "Bodily injury" or "property damage" resulting from the intentional or unintentional detonation of any nuclear bomb or nuclear device.

(4)   As used in this exclusion, the following definitions apply;

(a)   "Hazardous properties" include radioactive, toxic or explosive properties.

(b)   "Nuclear material" means "source material", "special nuclear material" or "by-product material";

(c)  "Source material", "special nuclear material" and "by-product material" have the meanings given them in Atomic Energy Act of 1954 or in any law amendatory thereof;

(d)  "Spent fuel" means any fuel element of fuel component, solid or liquid which has been used or exposed to radiation in a "nuclear reactor";

(e)  "Waste" means any waste material (i) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium form any ore processed primarily for its "source material" content, and (ii) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

(f)  "Nuclear facility" means:

  (I)  Any "nuclear reactor";

  (II)  Any equipment or device designed or used for (a) separating the isotopes or uranium or plutonium, (b) processing or utilizing "spent fuel", or (c) handling, processing or packaging "waste";

  (III)  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more that 250 grams of uranium 235;

  (Iv)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**v.  Securities and Financial Interest**

Any claim or "suit" alleging or asserting in any respect loss, injury or damage, in connection with the purchase or sale, the offer, solicitation, or advertising for the purchase or sale, or the depreciation or decline in price or value, of any security, debt, deposit, or financial interest or instrument.

**w.  Silica**

(1)  "Bodily injury", sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury, and/or any other type of injury, loss, cost, damage, or expense sustained by any person for the real or alleged emergence, contraction, aggravation or exacerbation of any form of silicosis or any other disease of the human body caused by, arising out of, or resulting from the manufacture, mining, use, sale, removal, or distribution by any person or organization of silica, silica products, silica fibers or silica dust, or the exposure to silica, silica products, silica fibers or silica dust; or

(2)  Any obligation of the insured to defend and/or indemnify any party because of damages arising out of such "bodily injury", sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury, at any time caused by, arising out of, or resulting from the manufacture of, mining of, use of, sale of, removal of, distribution of, or exposure to silica, silica products, silica fibers or silica dust.

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1.  Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1)    The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE and

(2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS-COVERAGES A AND B.

**b.**    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2.    Exclusions**

This insurance does not apply to:

**a.    Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury"

**b.    Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c.    Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d.    Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e.    Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.

This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f.    Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g.    Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h.    Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**I.    Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j.    Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1)    Advertising, broadcasting, publishing or telecasting;

(2)    Designing or determining content of web-sites for others; or

       (3)     An internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14. a.,.b and c of the definition of "personal and advertising injury" in SECTION IV. DEFINITIONS.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.    Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l.    Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.    Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage migration, release or escape of "pollutants" at any time.

**n.    Pollution-Related**

Any loss, cost or expense arising out of any:

       (1)     Request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

       (2)     Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**Exclusions l. War, q. Fungus/Mold, r. Employment Related Practices, s. Asbestos, t. Lead, u. Nuclear, v. Securities and Financial Interest and w. Silica pertaining to "bodily injury" and "property damage" under COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY shall apply equally to "personal and advertising injury" under this COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY.**

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1.    We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

    **a.**    All expenses we incur.

    **b.**    Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

    **c.**    The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

    **d.**    All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

    **e.**    All costs taxed against the insured in the "suit".

    **f.**    Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    **g.**    Interest on that part of any judgment we pay that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

OCC-GL    Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.
LX9641 (09/04)

2.    If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a.    The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b.    This insurance applies to such liability assumed by the insured;

   c.    The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d.    The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e.    The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f.    The indemnitee:

      (1)    Agrees in writing to:

         (a)    Cooperate with us in the investigation, settlement or defense of the "suit";

         (b)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c)    Notify any other insurer whose coverage is available to the indemnitee; and

         (d)    Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2)    Provides us with written authorization to:

         (a)    Obtain records and other information related to the "suit"; and

         (b)    Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of SECTION I COVERAGES - COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

   a.    We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

   b.    The conditions set forth above, or the terms of the agreement described in subparagraph 2. f.above, are no longer met.

## SECTION II - WHO IS AN INSURED

1.    If you are designated in the Declarations as:

   a.    An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b.    A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c.    A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

OCC-GL          Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission. All Rights Reserved.
LX9641 (09/04)                                                     12

    **d.**    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    **e.**    A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.**    Each of the following is also an insured:

    **a.**    Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" is an insured for:

        **(1)**    "Bodily injury" or "personal and advertising injury":

            **(a)**    To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co"employee" while that co"employee" is either in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business, or to any claim or "suit" brought by the spouse, child, parent, brother or sister of that co"employee" or "volunteer worker" as a consequence of such injury.

            **(b)**    For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1) (a), above; or

            **(c)**    Arising out of his or her providing or failing to provide professional health care services.

        **(2)**    "Property damage" to property:

            **(a)**    Owned, occupied or used by;

            **(b)**    Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

            you, any of your "employees", or "voluntary workers"; or any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    **b.**    Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

    **c.**    Any person or organization having proper temporary custody of your property if you die, but only:

        **(1)**    With respect to liability arising out of the maintenance or use of that property; and

        **(2)**    Until your legal representative has been appointed.

    **d.**    Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Policy.

**3.**    Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    **a.**    Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

Includes Copyrighted Information of Insurance Services Offices, Inc. with Its permission. All Rights Reserved.

b.      Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization.

c.      Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed or before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1.      The Limits of Insurance shown in the Declarations and the rules below establish the most we will pay regardless of the number of:

   a.      Insureds;

   b.      Claims made or "suits" brought; or

   c.      Persons or organizations making claims or bringing "suits".

2.      The General Aggregate Limit is the most we will pay for the sum of:

   a.      Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   b.      Damages under Coverage B.

3.      The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4.      Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5.      Subject to 2. or 3.  above, whichever applies, the Each Occurrence Limit is the most we will pay for damages under Coverage A because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6.      Subject to 5. above, the Damage To Premises Rented To You Limit Is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you, or in the case of a fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of this Policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - DEFINITIONS

1.      "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a.      Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b.      Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2.      "Auto" means:

   a.      A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b.      Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4.  "Coverage territory" means:

    a.  The United States of America, including its territories and possessions, Puerto Rico and Canada; or

    b.  Anywhere else in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America if the injury or damage arises out of:

        (1)  Goods or products made or sold by you in the territory described in a. above;

        (2)  The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

        (3)  "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

        provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a above or in a settlement we agree to.

5.  "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7.  "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.  You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b.  Your fulfilling the terms of the contract or agreement.

9.  "Insured contract" means:

    a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b.  A sidetrack agreement;

    c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e.  An elevator maintenance agreement;

    f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph f. does not include that part of any contract or agreement:

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission. All Rights Reserved.

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

But "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

    (1)    Equipment designed primarily for:

        (a)    Snow removal;

        (b)    Road maintenance, but not construction or resurfacing; or

        (c)    Street cleaning;

    (2)    Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    (3)    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one "occurrence", and shall be deemed to occur only when such damage first commences.

**14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**    False arrest, detention or imprisonment;

    **b.**    Malicious prosecution;

    **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    **d.**    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**    Oral or written publication of material that violates a person's right of privacy.

    **f.**    The use of another's advertising idea in your "advertisement"; or

    **g.**    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.**    "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.**    "Products-completed operations hazard":

    **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1)    Products that are still in your physical possession; or

        (2)    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            (a)    When all of the work called for in your contract has been completed.

            (b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            (c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be deemed as completed.

    **b.**    Does not include "bodily injury" or "property damage" arising out of:

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

    (1)   The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    (2)   The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3)   Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17.    "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or be deemed to occur at the time of the "occurrence" that caused it.

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18.    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a.    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19.    "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or shortterm workload conditions.

20.    "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21.    "Your product"

    a.    Means:

        (1)   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a)   You;

            (b)   Others trading under your name; or

            (c)   A person or organization whose business or assets you have acquired; and

        (2)   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b.    Includes:

        (1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        (2)   The providing of or failure to provide warnings or instructions.

    c.    Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work"

    a. Means:

        (1) Work or operations performed by you or on your behalf; and

        (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        (2) The providing of or failure to provide warnings or instructions.

## SECTION V - CONDITIONS

1. **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Policy.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1) How, when and where the "occurrence" or offense took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b. If a claim is made or "suit" is brought against any insured; you must:

        (1) Immediately record the specifics of the claim or "suit" and the date received; and

        (2) Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c. You and any other involved insured must:

        (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2) Authorize us to obtain records and other information;

        (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other then for first aid, without our consent.

3. **Legal Action Against Us**

No person or organization has a right under this Policy:

    a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    b. To sue us on this Policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4.    Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Policy, our obligations are limited as follows:

**a.    Primary Insurance**

This insurance is primary except when b. Excess Insurance, below, applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. Method of Sharing, below.

**b.    Excess Insurance**

This insurance is excess over:

**(1)**    Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)**    That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)**    That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)**    That is insurance purchased by you to your cover liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner: or

**(d)**    If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY.

**(2)**    Any other primary insurance available to you covering liability for damages arising out of the premises or operations or the "products-completed operations hazard" for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)**    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)**    The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Policy.

**c.    Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes an equal amount until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.    Premium and Audit**

    **a.**    We will compute all premiums for this Policy in accordance with our rules and rates.

    **b.**    If the premium for this policy is a flat premium, it is not subject to adjustment, except that additional premiums may be required for any additional exposure and/or insureds, or as provided for in Condition 9 Cancellation.

        The Premium shown in Item 4. A. of the Declarations as the Total Advance Premium is a deposit premium only. If the policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Total Advance Premium, the first Named Insured will pay the difference to us due and payable upon notice. Subject to the Annual Minimum Premium shown in Item 4. B. of the Declarations, if the earned premium is less than the Total Advance Premium, we will return the difference to the first Named Insured.

    **c.**    The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request. The first Named Insured shown on the Declarations is responsible for the payment of all premiums and will be the payee for any return premiums we pay.

**6.    Representations**

By accepting this policy, you agree that:

    **a.**    The statements in the Declarations are accurate and complete;

    **b.**    Those statements are based upon representations you made to us; and

    **c.**    We have issued this policy in reliance upon your representations.

**7.    Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Policy to the first Named Insured, this insurance applies:

    **a.**    As if each Named Insured were the only Named Insured; and

    **b.**    Separately to each insured against whom claim is made or "suit" is brought.

**8.    Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9.    Cancellation**

    **a.**    The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    **b.**    We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        **(I)**    10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        **(II)**    30 days before the effective date of cancellation if we cancel for any other reason.

    **c.**    We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    **d.**    Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission. All Rights Reserved.

e.  If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, earned premium will be calculated in accordance with the customary short-rate table and procedure, or the Minimum Earned Premium at inception of the policy shown in Item 4. c. of the Declarations, which ever is greater. The cancellation will be effective even if we have not made or offered a refund.

f.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**10.  Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**11.  Examination of your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during this policy period and up to three years afterward.

**12.  Change In Control**

a.  If the first "Named Insured" designated in Item 1 of the Declarations consolidates with or merges into, or sells all or substantially all of its assets to any person or entity; or

b.  If any person or entity acquires an amount of the outstanding ownership interests representing more than 50% of the voting or designation power for the election of directors of the first "Named Insured" designated in Item 1 of the Declarations, or acquires the voting or designation rights of such an amount of ownership interests;

this policy will continue in full force and effect as to "bodily injury" and "property damage" that occur prior to the effective date of such transaction and "personal and advertising injury" caused by an "occurrence" that takes place prior to the effective date of such transaction. There will be no coverage afforded by this policy for "bodily injury" or "property damage" that occurs on or after the effective date such transaction and "personal and advertising injury" caused by an "occurrence" that takes place on or after the effective date of such transaction.

**13.  Inspections and Surveys**

We have the right but are not obligated to:

a.  Make inspections and surveys at any time;

b.  Give you reports on the conditions we find; and

c.  Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public, and we do not warrant that conditions:

a.  Are safe or healthful: or

b.  Comply with laws, regulations, codes or standards. This condition applies not only to us, but also to any rating advisory, rate service or similar organization which make insurance inspections, surveys, reports or recommendations.

**14.  Transfer of your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured. If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

OCC-GL        Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission. All Rights Reserved.
LX9641 (09/04)                                                22

15.    **Service Of Suit**

In the event of the failure of the Company to pay any amount claimed to be due hereunder, we, at the request of the Insured , will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver by us or our rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, Massachusetts, 02110-2103 or his or her representative, and that in any suit instituted us upon this policy, we will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, we hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance, and hereby designates the above named Counsel Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, MA 02110-2103, as the person to whom the said officer is authorized to mail such process or a true copy thereof.

16.    **Arbitration**

Notwithstanding Condition 15. Service of Suit, above, in the event of a disagreement as to the interpretation of this policy (except with regard to whether this policy is void or voidable), it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) Arbitrators consisting of two (2) party-nominated (non-impartial) Arbitrators and a third (impartial) Arbitrator (hereinafter "umpire") as the sole and exclusive remedy.

The party desiring arbitration of a dispute shall notify the other party, said notice including the name, address and occupation of the Arbitrator nominated by the demanding party. The other party shall, within 30 days following receipt of the demand, notify in writing the demanding party of the name, address and occupation of the Arbitrator nominated by it. The two (2) arbitrators so selected shall, within 30 days of the appointment of the second Arbitrator, select an umpire. If the Arbitrators are unable to agree upon an umpire, the selection of the umpire shall be submitted to the Judicial Arbitration and Mediation Services (hereinafter, "JAMS"). The umpire shall be selected in accordance with Rule 15 (as may be amended from time to time) of the JAMS Comprehensive Arbitration Rules and Procedures for the selection of a sole arbitrator.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the umpire. Said hearings shall be held within 30 days of the selection of the umpire. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud and gross misconduct by the Arbitrators. The award will be issued within 30 days of the close of the hearings. Each party shall bear expenses of its designated Arbitrator and shall jointly and equally share with the other the expense of the umpire and the arbitration.

The arbitration proceeding shall take place in the vicinity of the first Named Insured's mailing address as shown in the Declarations or such other place as may be mutually agreed by the first Named Insured and us. The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the JAMS Comprehensive Arbitration Rules and Procedures.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in the Declarations by a duly authorized representative of the Company.

_Elizabeth M. Tuck_

Secretary                    Chairman of the Board and CEO

ENDORSEMENT # 001

**This endorsement, effective 12:01 AM** 01/01/2006

**Forms a part of policy no.:** 0308552

**Issued to:** MGA ENTERTAINMENT INC.

**By:** LEXINGTON INSURANCE COMPANY

**CROSS SUITS ENDORSEMENT**

The coverage afforded by this policy does not apply to any claim or "suit" or cross "suit" alleged, initiated, brought or caused to be brought by a Named Insured or Additional Named Insured covered by this policy against any other Named Insured or Additional Named Insured covered by this policy.

All other terms and conditions remain unchanged.

**Authorized Representative OR
Countersignature (In states where applicable)**

**ENDORSEMENT # 002**

**This endorsement, effective 12:01 AM** 01/01/2006

**Forms a part of policy no.:** 0308552

**Issued to:** MGA ENTERTAINMENT INC.

**By:** LEXINGTON INSURANCE COMPANY

**EXCLUSION FROM COVERAGE FOR PUNITIVE, EXEMPLARY AND
AGGRAVATED DAMAGES, FINES AND PENALTIES**

It is agreed that this policy does not apply to any claim or "suit" seeking punitive, exemplary or aggravated damages, nor does it apply to any fines or penalties.

**Authorized Representative OR
Countersignature (In states where applicable)**

LX9407 (09/00)

EXHIBIT A - PAGE 46

ENDORSEMENT # 003


**This endorsement, effective 12:01 AM** 01/01/2006

**Forms a part of policy no.:** 0308552

**Issued to:** MGA ENTERTAINMENT INC.

**By:** LEXINGTON INSURANCE COMPANY

**THIS ENDORSEMENT ADDS ACCIDENT INSURANCE TO THE POLICY, PLEASE READ IT CAREFULLY.**

## ACCIDENT INSURANCE ENDORSEMENT

The Policy is amended as follows:

I.   **ACCIDENT INSURANCE DECLARATIONS** - The following declarations are added to the policy and apply only with respect to the coverage provided by this endorsement:

   (a)  **Accident Insurance Effective Date:** Same as Policy Effective Date

   (b)  **Classification of Eligible Persons:** All Employees of the Named Insured working at least 20 hours per week and who are permanently employed inside the U.S.

   (c)  **Covered Activity (ies):** Coverage is provided for **Injury** sustained by a **Covered Person** while the **Covered Person** is actively performing the duties of his or her occupation for the Named Insured.

   (d)  **Principal Sum Amount** (per **Covered Person**): $50,000

   (e)  **Accident Insurance Aggregate Limit:** $250,000 per accident

**Words and phrases that appear in bold face print in this endorsement have special meaning within this endorsement.  Refer to the Accident Insurance Declarations above and the definitions section below.**


**THIS ENDORSEMENT PROVIDES ACCIDENT ONLY COVERAGE.  IT DOES NOT COVER SICKNESS OR DISEASE.**

II.  **ACCIDENT INSURANCE** - The following Accident Insurance Coverage is added to the Policy.  The provisions hereunder apply only with respect to the Accident Insurance provided by this endorsement:

A.  **ACCIDENT INSURANCE INSURING AGREEMENT**

We will pay a benefit to the **Covered Person** (or, in the event of death, to the **Covered Person's** beneficiary) if that **Covered Person** suffers a loss covered under this endorsement arising from an **Injury** that results from an accident that occurs on or after the **Accident Insurance Effective Date** and during a **Covered Activity**. The **Principal Sum Amount** and the **Covered Activity(ies)** applicable to each **Covered Person** are set out in the **Schedule**. The benefit amount payable is subject to the Accident Insurance Reduction Schedule found below.

**Accidental Death & Dismemberment and Paralysis Benefit**. If **Injury** to a **Covered Person** results, within 365 days of the date of the accident that caused the **Injury**, in that **Covered Person** suffering any one of the losses or any type of paralysis specified below, the benefit we will pay will be based upon the indicated percentage of the **Principal Sum Amount** shown below for that loss or paralysis:

| For Loss of: | Percentage of **Principal Sum Amount** Payable |
|---|---|
| Life | 100% |
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| One Hand and the Sight of One Eye | 100% |
| One Foot and the Sight of One Eye | 100% |
| Speech and Hearing in Both Ears | 100% |
| One Hand or One Foot | 50% |
| Sight of One Eye | 50% |
| Speech or Hearing in Both Ears | 50% |
| Hearing in One Ear | 25% |
| Thumb and Index Finger of Same Hand | 25% |
| **Quadriplegia** | 100% |
| **Paraplegia** | 50% |
| **Hemiplegia** | 25% |

Loss of a hand or foot means complete severance through or above the wrist or ankle joint. Loss of sight of an eye means total and irrecoverable loss of the entire sight in that eye. Loss of hearing in an ear means total and irrecoverable loss of the entire ability to hear in that ear. Loss of speech means total and irrecoverable loss of the entire ability to speak. Loss of thumb and index finger means complete severance through or above the metacarpophalangeal joint of both digits.

If more than one loss or paralysis is sustained by a **Covered Person** as a result of the same accident, only one amount, the largest, will be paid.

B.  **ACCIDENT INSURANCE EXCLUSIONS**

No coverage shall be provided under this endorsement and no payment shall be made for any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following excluded risks even if the proximate or precipitating cause of the loss is an accidental bodily injury:

1.  suicide or any attempt at suicide or intentionally self-inflicted Injury or any attempt at intentionally self-inflicted Injury or any act of autoeroticism.

2.  sickness or disease, or mental incapacity or bodily infirmity whether the loss results directly or indirectly from any of these.

3.  the **Covered Person's** commission of or attempt to commit a crime.

4.  declared or undeclared war, or any act of declared or undeclared war regardless of whether the Policy to which this endorsement is attached provides such coverage.

5.  infections of any kind regardless of how contracted, except bacterial infections that are directly caused by botulism, ptomaine poisoning or an accidental cut or wound independent and in the absence of any underlying sickness, disease or condition including but not limited to diabetes.

6.  full-time active duty in the armed forces, National Guard or organized reserve corps of any country or international authority.  (Unearned premium for any period for which the Insured is not covered due to his or her active duty status will be refunded)  (Loss caused while on short-term National Guard or reserve duty for regularly scheduled training purposes is not excluded).

7.  travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, if the **Covered Person** is:

    a)  riding as a passenger in any aircraft not intended or licensed for the transportation of passengers; or

    b)  performing, learning to perform or instructing others to perform as a pilot or crew member of any aircraft; or

    c)  riding as a passenger in an aircraft owned, leased or operated by the Named Insured or the **Covered Person's** employer.

8.  the **Covered Person** being under the influence of intoxicants.

9.  the **Covered Person** being under the influence of drugs unless taken under the advice of and as specified by a **Physician**.

10. the medical or surgical treatment of sickness, disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from the treatment.

11. stroke or cerebrovascular accident or event; cardiovascular accident or event; myocardial infarction or heart attack; coronary thrombosis; aneurysm.

12. the **Covered Person** riding in or driving any type of motor vehicle as part of a speed contest or scheduled race, including testing such vehicle on a track, speedway or proving ground.

## C. ACCIDENT INSURANCE LIMITATIONS

**Accident Insurance Aggregate Limit** - The maximum amount payable under the Accidental Death & Dismemberment and Paralysis Benefit may be reduced if more than one **Covered Person** suffers a loss or paralysis as a result of the same accident. The maximum amount payable for all such losses and types of paralysis for all **Covered Persons** will not exceed the amount shown as the **Accident Insurance Aggregate Limit** in the **Schedule**. If the combined maximum amount otherwise payable for all **Covered Persons** must be reduced to comply with this provision, the reduction will be taken by applying the same percentage of reduction to the individual maximum amount otherwise payable for each **Covered Person** for all such losses and types of paralysis. The **Accident Insurance Aggregate Limit** is in addition to the Policy's General Aggregate Limit.

**Accident Insurance Reduction Schedule** - The amount payable for a loss will be reduced if a **Covered Person** is age 70 or older on the date of the accident causing the loss.  The amount payable for that **Covered Person's** loss is a percentage of the amount that would otherwise be payable, according to the following schedule:

| AGE ON DATE OF ACCIDENT | PERCENTAGE OF AMOUNT OTHERWISE PAYABLE |
|---|---|
| 70-74 | 65% |
| 75-79 | 45% |
| 80-84 | 30% |
| 85 and older | 15% |

Premium for a **Covered Person** age 70 or older is based on 100% of the coverage that would be in effect if the **Covered Person** were under age 70.

### D.  ACCIDENT INSURANCE DEFINITIONS

**Covered Activity (ies)** - means those activities set out as **Covered Activity (ies)** in the **Schedule** with respect to which **Covered Persons** are provided coverage under this endorsement.

**Covered Person** - means a person: (1) who is a member of an eligible class of persons as described in the **Classification of Eligible Persons** section of the **Schedule**; (2) for whom premium has been paid; and (3) while such person's coverage under this endorsement is in force.

**Hemiplegia** means the complete and irreversible paralysis of the upper and lower **Limbs** of the same side of the body.

**Immediate Family Member** - means a person who is related to the **Covered Person** in any of the following ways:  spouse,  brother-in-law,  sister-in-law,  son-in-law,  daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister), or child (includes legally adopted or stepchild).

**Injury** - means an injury to the body: (1) which is sustained as a direct result of an unintended, unanticipated accident that is external to the body and that occurs while the injured person's accident coverage is in force; (2) which occurs under the circumstances described in a **Covered Activity** applicable to that person; and (3) which directly (independent of sickness, disease, mental incapacity, bodily infirmity or any other cause) causes a covered loss under this endorsement.

**Limb** means entire arm or entire leg.

**Paraplegia** means the complete and irreversible paralysis of both lower **Limbs**.

**Physician** - means a licensed practitioner of the healing arts acting within the scope of his or her license who is not: (1) the **Covered Person**; (2) an **Immediate Family Member**; or (3) retained by the Named Insured.

**Quadriplegia** means the complete and irreversible paralysis of both upper and both lower **Limbs**.

**Schedule** - means the Accident Insurance Declarations section of this endorsement.

### E.  ACCIDENT INSURANCE CLAIMS PROVISIONS

**Notice of Claim**.  Written notice of a claim for benefits must be given to us within 20 days after a **Covered Person's** loss, or as soon thereafter as reasonably possible.  Notice given by or on behalf of the claimant to us in care of AIG Claim Services, P.O. Box 15701, Wilmington, DE 19850-5701, or by calling 1-800-551-0824 with information sufficient to identify the **Covered Person**, is deemed notice to us.

**Claim Forms.** We will send claim forms to the claimant upon receipt of a written notice of claim. If such forms are not sent within 15 days after the giving of notice of a claim, the claimant will be deemed to have met the proof of loss requirements upon submitting, within the time fixed herein for filing proof of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include the **Covered Person's** name, the Named Insured's name and the Policy number.

**Proof of Loss.** Written proof of loss must be furnished to us within 90 days after the date of the loss. If the loss is one for which this endorsement requires continuing eligibility for periodic benefit payments, subsequent written proofs of eligibility must be furnished at such intervals as we may reasonably require. Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

**Payment of Claims.** Upon receipt of due written proof of death, payment for loss of life of a **Covered Person** will be made, in equal shares, to the survivors in the first surviving class of those that follow: the **Covered Person's** (1) spouse; (2) children; (3) parents; or (4) brothers and sisters. If no class has a survivor, the beneficiary is the **Covered Person's** estate.

Upon receipt of due written proof of loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the **Covered Person** suffering the loss. If a **Covered Person** dies before all payments due have been made, the amount still payable will be paid as described above for loss of life.

If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property. If the payee has no legal guardian for his or her property, a payment not exceeding $1,000 may be made, at our option, to any relative by blood or connection by marriage of the payee, who, in our opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

Any payment we make in good faith fully discharges our liability to the extent of the payment made.

**Time of Payment of Claims.** Benefits payable for any loss other than loss for which this endorsement provides any periodic payment will be paid immediately upon our receipt of due written proof of the loss. Subject to our receipt of due written proof of loss, all accrued benefits for loss for which this endorsement provides periodic payment will be paid at the expiration of each month during the continuance of the period for which we are liable and any balance remaining unpaid upon termination of liability will be paid immediately upon receipt of such proof.

**Physical Examination and Autopsy.** We at our own expense have the right and opportunity to examine the person of any individual whose loss is the basis of claim hereunder when and as often as we may reasonably require during the pendency of the claim and to make an autopsy in case of death where it is not forbidden by law.

**F.  ACCIDENT INSURANCE ADDITIONAL PROVISIONS**

**Covered Person's Effective Date.** A **Covered Person's** coverage under this endorsement begins on the latest of: (1) the **Accident Insurance Effective Date**; (2) the date the person becomes a member of an eligible class of persons as described in the **Classification of Eligible Persons** section of the **Schedule**; or (3) the date the appropriate premium is paid for the **Covered Person.**

**Covered Person Termination Date.** A **Covered Person's** coverage under this endorsement ends on the earliest of: (1) the date the Policy is terminated; (2) the date this endorsement is terminated; or (3) the date the **Covered Person** ceases to be a member of any eligible class of persons as described in the **Classification of Eligible Persons** section of the **Schedule**.

Termination of coverage will not affect a claim for a covered loss that occurred while the **Covered Person's** coverage under this endorsement was in force.

**All other terms, conditions, and exclusions of the Policy shall remain unchanged.**

_____

**Authorized Representative OR
Countersignature (In states where applicable)**

LX9568 (01/03)                    6

ENDORSEMENT # 004

**This endorsement, effective 12:01 AM** 01/01/2006

**Forms a part of policy no.:** 0308552

**Issued to:** MGA ENTERTAINMENT INC.

**By:** LEXINGTON INSURANCE COMPANY

## TERRORISM PREMIUM CHARGE ENDORSEMENT

The "Terrorism" charge is $ 12,150    and is included in the Policy Premium shown on the Declarations Page of this policy.

DEFINITION - The following definition of terrorism shall apply:

"Terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

    (1) A government;
    (2) The civilian population of a country, state or community; or
    (3) To disrupt the economy of a country, state or community.

So long as the Terrorism Risk Insurance Act of 2002 (the "Act") is in effect, "Terrorism" includes a certified act of terrorism defined by Section 102. Definitions, of the Act and any revisions or amendments thereto.

All other terms and conditions of the policy are the same.

**Authorized Representative OR
Countersignature (In states where applicable)**

LX9827 (01/05)

EXHIBIT A - PAGE 53

POLICY NUMBER: 0308552        ENDORSEMENT # 005

# EMPLOYEE BENEFITS LIABILITY COVERAGE

### THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
### PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $1,000,000 | each employee | $25,000 | each employee | $ INCLUDED |
| | $1,000,000 | aggregate | | | |
| Retroactive Date: | / / | | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. The following is added to Section I - Coverages:

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Paragraph E. (Section III - Limits Of Insurance); and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   b. This insurance applies to damages only if:

      (1) The act, error or omission, is negligently commited in the "administration" of your "employee benefit program";

      (2) The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

      (3) A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph c. below, during the policy period or an Extended Reporting Period we provide under Paragraph G. of this endorsement.

   c. A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

      (1) When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

LX9606 (06/03)        Includes copyrighted Information of the Insurance Services Offices, Inc., with its permission.  All rights reserved.

1

(2) When we make settlement in accordance with Paragraph 1.a. above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

d. All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

2. **Exclusions**

This insurance does not apply to:

a. **Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

b. **Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

c. **Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

d. **Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e. **Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

f. **Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

g. **ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

h. **Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

i. **Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

j. **Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

B. For the purposes of the coverage provided by this endorsement:

1. All references to Supplementary Payments – Coverages A and B are replaced by Supplementary Payments – Coverages A, B and Employee Benefits Liability.

2. Paragraphs 1.b. and 2. of the Supplementary Payments provision do not apply.

C. For the purposes of the coverage provided by this endorsement, Paragraphs 2. and 4. of **Section II – Who Is An Insured** are replaced by the following:

2. Each of the following is also an insured:

a. Each of your "employees" who is or was authorized to administer your "employee benefit program".

b. Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

LX9606 (06/03)    Includes copyrighted information of the Insurance Services Offices,
Inc., with its permission. All rights reserved.

2

c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

D. For the purposes of the coverage provided by this endorsement, Paragraph 3. of Section II – Who Is An Insured does not apply.

E. For the purposes of the coverage provided by this endorsement, Section III – Limits Of Insurance is replaced by the following:

1. Limits Of Insurance

a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

(1) Insureds;

(2) "Claims" made or "suits" brought;

(3) Persons or organizations making "claims" or bringing "suits";

(4) Acts, errors or omissions; or

(5) Benefits included in your "employee benefit program".

b. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one " employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

(1) An act, error or omission; or

(2) A series of related acts, errors, or omissions

negligently committed in the "administration"of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

2. Deductible

a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

b. The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

c. The terms of this insurance, including those with respect to:

(1) Our right and duty to defend any "suits" seeking those damages; and

(2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

apply irrespective of the application of the deductible amount.

d. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

F. For the purposes of the coverage provided by this endorsement, Conditions 2. and 4. of **Section IV – Conditions** are replaced by the following:

2. **Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

(1) What the act, error or omission was and when it occurred; and

(2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

b. If a "claim" is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the "claim" or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

(a) No Retroactive Date is shown in the Schedule of this insurance; or

(b) The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

(2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

G. For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provision are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

1. You will have the right to purchase an Extended Reporting Period, as described below, if:

   a. This endorsement is canceled or not renewed; or

   b. We renew or replace this endorsement with insurance that:

      (1) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

      (2) Does not apply to an act, error or omission on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

   You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

a. The "employee benefit programs" insured;

b. Previous types and amounts of insurance;

c. Limits of insurance available under this endorsement for future payment of damages; and

d. Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

H. For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

1. "Administration" means:

   a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   b. Handling records in connection with the "employee benefit program"; or

   c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

   However, "administration" does not include handling payroll deductions.

LX9606 (06/03)     Includes copyrighted Information of the Insurance Services Offices, Inc., with its permission.  All rights reserved.                    5

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

I. For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. in the Definitions Section are replaced by the following:

5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

LX9606 (06/03)    Includes copyrighted Information of the Insurance Services Offices, Inc., with its permission. All rights reserved.    6

ENDORSEMENT # 006

**This endorsement, effective 12:01 AM** 01/01/2006

**Forms a part of policy no.:** 0308552

**Issued to:** MGA ENTERTAINMENT INC.

**By:** LEXINGTON INSURANCE COMPANY

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED REQUIRED BY WRITTEN CONTRACT

**A.** **Section II - Who Is An Insured** is amended to include any person or organization you are required to include as an additional insured on this policy by a written contract or written agreement in effect during this policy period and executed prior to the "occurrence" of the "bodily injury" or "property damage."

**B.** The insurance provided to the above described additional insured under this endorsement is limited as follows:

1. COVERAGE A BODILY INJURY AND PROPERTY DAMAGE (Section I - Coverages) only.

2. The person or organization is only an additional insured with respect to liability arising out of "your work" or "your product" for that additional insured.

3. In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the written contract or written agreement, the insurance provided by this endorsement shall be limited to the Limits of Insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Insurance stated in the Declarations under Item 3. Limits of Insurance pertaining to the coverage provided herein.

4. The insurance provided to such an additional insured does not apply to "bodily injury" or "property damage" arising out of an architect's, engineer's or surveyor's rendering of or failure to render any professional services including:

   I   The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   II  Supervisory, inspection, architectural or engineering activities.

5. This insurance does not apply to "bodily injury" or "property damage" arising out of "your work" or "your product" included in the "products-completed operatons hazard" unless you are required to provide such coverage by written contract or written agreement and then only for the period of time required by the written contract or written agreement and in no event beyond the expiration date of the policy.

Includes copyrighted information of the Insurance Services Offices, Inc. with its permission. All rights reserved.

LX9466 (10/03)                                                                                 Page 1 of 2

6. Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a written contract or written agreement specifically requires that this insurance apply on a primary or non-contributory basis.

C. Subparagraph (1)(a) of the Pollution exclusion paragraph 2.f., Exclusions of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages) does not apply to you if the "bodily injury" or "property damage" arises out of "your work" or "your product" performed on premises which are owned or rented by the additional insured at the time "your work" or "your product" is performed.

D. In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each additional insured must give us prompt notice of any "occurrence" which may result in a claim, forward all legal papers to us, cooperate in the defense of any actions, and otherwise comply with all of the policy's terms and conditions.

**Authorized Representative OR
Countersignature (In states where applicable)**

Includes copyrighted information of the Insurance Services Offices, Inc. with its permission. All rights reserved.

LX9466 (10/03)

Page 2 of 2

EXHIBIT A - PAGE 61

**POLICY NUMBER:** 0308552        **ENDORSEMENT #** 007        **COMMERCIAL GENERAL LIABILITY**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

---

**SCHEDULE**

---

**Name of Person or Organization (Vendor):**
            AS PER ON FILE WITH COMPANY

**Your Products:**


(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:
   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;
   b. Any express warranty unauthorized by you;
   c. Any physical or chemical change in the product made intentionally by the vendor;
   d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;
   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;
   g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

CG 20 15 11 88      Copyright, Insurance Services Office, Inc., 1986, 1988
LX5201

Page 1 of 1

ENDORSEMENT # 008

**This endorsement, effective 12:01 AM** 01/01/2006

**Forms a part of policy no.:** 0308552

**Issued to:** MGA ENTERTAINMENT INC.

**By:** LEXINGTON INSURANCE COMPANY

ADVERTISING, BROADCASTING PUBLISHING AND TELECASTING

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Advertising, Broadcasting, Publishing and Telecasting

This insurance does not apply to Personal Injury and Advertising Injury committed or alleged to have been committed in any advertising, advertisement, publicity article ,book, magazine, brochure, broadcast, written material or telecast in the conduct of the Insured's advertising, broadcasting, re-broadcasting, televising, re-televising, newspaper publishing or other publishing activities.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

**Authorized Representative OR**
**Countersignature (In states where applicable)**

ENDORSEMENT # 009

**This endorsement, effective 12:01 AM** 01/01/2006

**Forms a part of policy no.:** 0308552

**Issued to:** MGA ENTERTAINMENT INC.

**By:** LEXINGTON INSURANCE COMPANY

AMENDMENT TO SELF-INSURED RETENTION ENDORSEMENT

~~It is agreed that Self-Insured Retention Endorsement LX9488 (01/02)~~
is amended as follows:

A.    Paragraph I. LIMITS OF INSURANCE is deleted and replaced with
the following:

I.    LIMITS OF INSURANCE

The LIMITS OF INSURANCE as set for in Item 3 of the Declarations
shall apply excess of a Self-Insured Retention (hereafter referred to
as the Retained Limit) in the amount of:

        $100,000      each "occurrence" sporting goods
        $ 25,000      each "occurrence" all other


and you agree to assume the Retained Limit.  The Retained Limit, or
any part of it, shall not be insured without our prior written
~~approval.~~

**Authorized Representative OR
Countersignature (In states where applicable)**

**EXHIBIT A - PAGE 64**

**ENDORSEMENT # 010**

**This endorsement, effective 12:01 AM** 01/01/2006

**Forms a part of policy no.:** 0308552

**Issued to:** MGA ENTERTAINMENT INC.

**By:** LEXINGTON INSURANCE COMPANY

**SELF-INSURED RETENTION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY POLICY

I.     LIMITS OF INSURANCE

The LIMITS OF INSURANCE as set forth in Item 3 of the Declarations shall apply excess of a Self-Insured Retention (hereafter referred to as the Retained Limit) in the amount of :

$ ENDT. 009        each "occurrence"

$                per claim

and you agree to assume the Retained Limit.  The Retained Limit, or any part of it, shall not be insured without our prior written approval.

II.    DEFENSE AND SETTLEMENT - COVERAGES A AND B

The defense and settlement obligations as set forth in Section I - Coverages A and B are deleted and replaced by the following defense and settlement obligation:

A.  WITHIN THE RETAINED LIMIT:

"We" do not have the duty to investigate or defend any "occurrence", claim or "suit" unless and until the Retained Limit is exhausted with respect to that "occurrence", claim or "suit".  However, we may, at our discretion and expense, participate with you in the investigation of any such "occurrence" and the defense of any such claim or "suit" that may result.

B.  IN EXCESS OF THE RETAINED LIMIT:

1. Once the Retained Limit is exhausted, with respect to any specific "occurrence", claim or "suit", we shall thereafter have the right and duty to defend that "occurrence", claim or "suit".

2. When we have the duty to investigate and/or defend pursuant to B.1. above, we may, at our sole discretion, settle any such "occurrence", claim or "suit".

**EXHIBIT A - PAGE 65**

C.   If you refuse to agree to a settlement we recommend and the resulting judgement or settlement exceeds our recommended settlement, our liability for that "occurrence", claim or "suit", subject to the Limits of Insurance, will not exceed our recommended settlement amount (less any amount of the Retained Limit remaining).  In such event the company will have no further obligation with respect to "Allocated Loss Adjustment Expense" subsequent to the date of such refusal.

D.   In no event shall you agree to a settlement in excess of the Retained Limit without our prior written approval.

E.   There will be no reduction of the Retained Limit because of payment of claims or "suits" arising from claims or "suits" for which coverage is not afforded by the policy.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section III ALLOCATED LOSS ADJUSTMENT EXPENSES.

III.   **ALLOCATED LOSS ADJUSTMENT EXPENSES - COVERAGES A AND B**

SECTION I - COVERAGES, SUPPLEMENTARY PAYMENTS - COVERAGES A AND B is deleted in its entirety and replaced with the following:

**ALLOCATED LOSS ADJUSTMENT EXPENSES - COVERAGES A AND B**

You are responsible for "Allocated Loss Adjustment Expenses" according to your election as indicated by an "X" below. If no election is indicated, election i. shall apply.

[X]   i.   All "Allocated Loss Adjustment Expenses" up to the Retained Limit.  However, the most you are responsible for with respect to damages and "Allocated Loss Adjustment Expenses" combined shall not exceed the Retained Limit.

[ ]   ii.   A part of "Allocated Loss Adjustment Expenses".  That part will be calculated by dividing the smaller of the Retained Limit or the damages by the damages.  If we pay no damages you are responsible for all "Allocated Loss Adjustment Expenses".

[ ]   iii.   All  "Allocated Loss Adjustment Expenses".

Your duty to pay for "Allocated Loss Adjustment Expenses" applies separately to each "occurrence" for "bodily injury" or "property damage", or to each offense for "personal and advertising injury".

IV.   **INSOLVENCY**

Your bankruptcy, insolvency, inability to pay, failure to pay, or refusal to pay the Retained Limit will not increase our obligations under the policy.  In the event there is insurance, whether or not applicable to an "occurrence", claim or "suit" within the Retained Limit, you will continue to be responsible for the full amount of the Retained Limit before the limits of insurance under this policy apply.  In no case will we be required to pay the Retained Limit or any portion thereof.

LX9488  (01/02) Simplified                                    2

## V.    NOTICE PROVISIONS

A.  You shall immediately notify us in writing of any claim which:

   1.  involves serious "bodily injury", including but not limited to, burns, spinal cord injury, amputation, brain damage, loss of eyesight or hearing, a fatality, or any claim which is likely to exceed  50 % of the Retained Limit, or for which you have established a reserve (including Indemnity and "Allocated Loss Adjustment Expense") at or more than 50% of the Retained Limit;

   2.  you receive notice of a "suit" in which the damage demand exceeds the Retained Limit and/or of a "suit" or claim for Punitive Damages.

B.  On a quarterly basis, "you" must provide us with a written summary (loss run) of all "occurrences", offenses, claims, or "suits" which have or may result in payments within the Retained Limit.

   This written summary must show:

   1.  The date of the "occurrence", offenses, claims or "suits"; and

   2.  The name(s) of the injured person(s) or identification of the damaged property; and

   3.  A description of the injury or damage; and

   4.  The amount paid or reserved, including "Allocated Loss Adjustment Expense", resulting from the "occurrence", offenses, claim or "suit".

## VI.    SPECIAL CONDITION

It is required that there be a service agreement between you and the Third Party Administrator (herein after referred to as TPA), named below.  The service agreement shall require that all claims or "suits" shall be administered by the TPA.

   TPA:       HERTZ CLAIM MANAGEMENT

   Address:   225 BRAE BLVD.
              PARK RIDGE, NJ 07656

The insured may not, without our consent, cancel, amend, or suspend the service agreement between the above named TPA and the named insured.

EXHIBIT A - PAGE 67

**VII.    ADDITIONAL DEFINITIONS**

SECTION V - DEFINITIONS of the policy is amended to include the following additional definition:

"Allocated Loss Adjustment Expenses" means all fees for service of process and court costs and court expenses; pre- and post-judgement interest; attorneys' fees; cost of undercover operative and detective services; costs of employing experts; costs for legal transcripts, copies of any public records, and costs of depositions and court reported or recorded statements; costs and expenses of subrogation; and any similar fee, cost or expense reasonably chargeable to the investigation, negotiation, settlement or defense of a loss or a claim or "suit" against you, or for the protection and perfection of your or our subrogation rights.

"Allocated Loss Adjustment Expenses" shall not include your or our general overhead, the salary and employee benefits of any of our employees, nor the fees of any attorney who is our employee or under our permanent retainer; nor the fees of any attorney we retain to provide counsel to us about our obligations, if any, under any policy issued by us or our affiliated company (ies), with respect to a claim or "suit" against you.

All other terms, exclusions, and conditions of this policy remain unchanged.

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

LX9488  (01/02) Simplified                           4

POLICY NUMBER:  0308552      ENDORSEMENT # 011          COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED PRODUCTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Designated Product(s):**
BATTERY POWERED RIDE-ON TOYS AND RECALLED FLASH LIGHTS

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products–completed operations hazard" and arising out of any of "your products" shown in the Schedule.

CG 21 33 11 85          Copyright, Insurance Services Office, Inc., 1984
LX5176

**EXHIBIT A – PAGE 69**

**ENDORSEMENT # 012**

**This endorsement, effective 12:01 AM** 11/06/2006

**Forms a part of policy no.:** 0308552

**Issued to:** MGA ENTERTAINMENT, INC.

**By:** LEXINGTON INSURANCE COMPANY

In consideration of an additional premium of $18, 009, effective from
11/06/2006 to 01/01/2007, it is hereby understood and agreed that the
following entity is added to the policy.

Little Tikes
Sales $31,987,933
$100,000 Self Insured Retention Limit Each Occurrence

It is further agreed that Endorsement #011 Designated Products
Exclusion LX5176 Ed 11/85 is added as respects to Little Tikes
operation only.

**Authorized Representative OR
Countersignature (In states where applicable)**

LEXDOC021
LX0404

**EXHIBIT A - PAGE 70**

In consideration of an additional premium of $18,009, effective from 11/06/2006 to 01/01/2007, it is hereby understood and agreed that the following entity is added to the policy.

Little Tikes
Sales $31,987,933
$100,000 Self Insured Retention Limit Each Occurrence

It is further agreed that Endorsement #011 Designated Products Exclusion LX5176 Ed 11/85 is added as respects to Little Tikes operation only.

ENDORSEMENT # 013

**This endorsement, effective 12:01 AM** 11/06/2006

**Forms a part of policy no.:** 0308552

**Issued to:** MGA ENTERTAINMENT, INC.

**By:** LEXINGTON INSURANCE COMPANY

### SEXUAL & PHYSICAL ABUSE EXCLUSION

This policy does not apply to any injury sustained by any person arising out of or resulting from the physical and/or sexual abuse of any person by:

1.  any Insured;

2.  any employee of any Insured;

3.  any person performing volunteer services for or on behalf of any Insured.

The Company shall not have any duty to defend any suit against the Insured seeking damages on account of any such injury.

**Authorized Representative OR
Countersignature (In states where applicable)**

LEXOCC218(Ed.04/90)
LX0469

# Exhibit B

# LEXINGTON INSURANCE COMPANY

Administrative Offices: 100 Summer Street, Boston, Massachusetts 02110-2103
(hereinafter called the Company)

## COMMERCIAL GENERAL LIABILITY POLICY
## OCCURRENCE FORM

### Declarations

Policy Number: 0350122                          Renewal of: 0308552

Item 1.    Named Insured: MGA ENTERTAINMENT, INC.

        Address:      163 ROSCOE BLVD. STE.100

        VAN NUYS                          CA 94106

The Named Insured is:

☐ Individual      ☐ Partnership      ☐ Joint Venture      ☐ Limited Liability Company

☒ Organization (other than a Partnership or Joint Venture)      ☐ Trust

The Business of the Named Insured is:
TOY MANUFACTURER

Item 2.    Policy Period:   From: 01/01/07 To: 01/01/08
        12:01 A.M., standard time at the address of the Named Insured as stated herein.

Item 3.    Limits of Insurance:

| | | |
|---|---|---|
| Each Occurrence Limit | $1,000,000 | |
| Damage to Premises Rented to you Limit | $50,000 | - Any one premises |
| Personal & Advertising Injury Limit | $1,000,000 | - Any one person or organization |
| General Aggregate Limit | $2,000,000 | |
| Products-Completed Operations Aggregate Limit | $2,000,000 | |

Item 4.    Premium:

    A. Total Advance Premium:                $599,760
    B. Annual Minimum Premium:                $599,760
    C. Minimum Earned Premium at Inception:   $299,880

Item 5.    Audit Period:  ANNUAL

**The policy is comprised of this Declarations page, the policy form and the schedules and endorsements, if any, attached at inception or during the Policy Period.**

_____
**Authorized Representative OR
Countersignature (in states where applicable)**

OCC-GL
LX9640 (09/04)

EXHIBIT B - PAGE 74

**FORMS SCHEDULE**

Named Insured:　MGA ENTERTAINMENT INC.

Policy No:  0350122

Effective Date:　01/01/2007

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| LX9104 | 07/97 | | CGL RATE SCHEDULE |
| LX9640 | 09/04 | | CGL OCCURRENCE DEC |
| LX9641 | 10/05 | | CGL OCCURRENCE TEXT |
| LEXCAS032 | 11/03 | 001 | CROSS SUITS ENDORSEMENT |
| LX9827 | 01/05 | 002 | TERRORISM PREMIUM CHARGE END |
| LX9606 | 06/03 | 003 | EMPLOYEE BENEFITS LIAB COV |
| LX9466 | 10/03 | 004 | A.I. REQ'D BY WRITTEN CONTRACT |
| LX5201 | 11/88 | 005 | ADDITIONAL INSURED VENDORS |
| MANUSCRIPT | | 006 | ADVERTISING,BROADCASTING |
| LX9488 | 04/06 | 007 | SELF-INSURED RETENTION (SIMP) |
| LX5176 | 11/85 | 008 | DESIGNATED PRODUCTS EXCL |
| LEXOCC218 | 04/90 | 009 | SEXUAL & PHYSICAL ABUSE EXCL |
| LX9940 | 10/06 | 010 | ACCIDENT INSURANCE ENDORSEMENT |

DOC018(Ed.12/87)
LX0295

**EXHIBIT B - PAGE 75**

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American
International Group, Inc. (AIG). The AIG member companies generally pay
compensation to brokers and independent agents, and may have paid
compensation in connection with your policy. You can review and obtain
information about the nature and range of compensation paid by AIG member
companies to brokers and independent agents in the United States by visiting
our website at www.aigproducercompensation.com or by calling AIG at
1-800-706-3102.

91222 (7/06)

**LEXINGTON INSURANCE COMPANY**

ANY REFERENCE IN THE POLICY FORM TO CONTACT IN WRITING THE COMPANY'S CLAIM OR
LEGAL DEPARTMENTS SHOULD USE THE ADDRESSES PROVIDED BELOW.

Attn: Claim Department
Lexington Insurance Company
100 Summer Street
Boston, Massachusetts 02110-2103

Attn: Legal Department
Lexington Insurance Company
100 Summer Street
Boston, Massachusetts 02110-2103

## SCHEDULE

### Commercial General Liability
### Schedule of Rates/Advance Premium

| Classification Description | Premium Basis* | Rate* | Advance/Deposit Premium |
|---|---|---|---|
| TOY MANUFACTURER<br>EST. EXPOSURE: $833,000,000 | SALES | $.72 | $599,760 |
| | | | |

```
*    (s)  per $1,000 sales
     (p)  per $1,000 payroll
     (x)        other (specify)
```

CGL SCH
LX9104 (ED. 07/97)

**' EXINGTON INSURANCE COMPANY**

Administrative Office: 100 Summer Street, Boston, Massachusetts 02110-2103

### COMMERCIAL GENERAL LIABILITY POLICY
### OCCURRENCE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

The words "we", "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under SECTION II - WHO IS AN INSURED. Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION IV - DEFINITIONS.

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages because of "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)**    The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE; and

        **(2)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS-COVERAGES A AND B.

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)**    Prior to the policy period, no insured described in Paragraph 1 of SECTION II - WHO IS AN INSURED and no "employee" authorized by you to give or receive notice of an "occurrence", claim or "suit", knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the "policy period".

    **c.**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of SECTION II. WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" claim, or "suit", includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of SECTION II - WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence", claim or "suit":

        **(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        **(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e.   Damages because of "bodily injury"  include damages claimed by any person or organization for care, loss of services, loss of consortium or death resulting at any time from the "bodily injury".

**2.   Exclusions**

This insurance does not apply to:

**a.   Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.   This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.   Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1)   That the insured would have in the absence of the contract or agreement; or

(2)   Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.   Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)   Liability to such party  for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)   Such attorney fees and  litigation expenses are for defense of that party against a civil or alternative dispute  resolution  proceeding  in which damages  to  which this  insurance applies are alleged.

**c.   Liquor Liability**

"Bodily injury" or "property damage"  for  which any insured  may be  held liable  by reason of:

(1)   Causing or contributing to the intoxication of any person;

(2)   The furnishing  of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)   Any statute, ordinance or  regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion  applies only  if you  are in  the business  of manufacturing,  distributing, selling, serving or furnishing alcoholic beverages.

**d.   Workers Compensation and Similar Laws**

Any  obligation of the insured  under a  workers  compensation, disability benefits or unemployment compensation law or any similar law.

**e.   Employer's Liability**

(1)   "Bodily injury" to an "employee" of the insured arising out of and in the course of:

(a)   Employment by the insured; or

(b)   Performing duties related to the conduct of the insured's business; or

(2)   Any claim or "suit" brought by the spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1)   Whether the insured may be liable as an employer or in any other capacity; and

(2)   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f.    Pollution**

(1)    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a)    At or from any premises, site or location, which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(I)    "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests;

(II)    "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, sight or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(III)    "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b)    At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c)    Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(I)    Any insured; or

(II)    Any person or organization for whom you may be legally responsible; or

(d)    At or from any premises, site or location, on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(I)    "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(II)    "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.
3

(III)    "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)**    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effect of "pollutants".

**(2)**    Any loss, cost or expense arising out of any:

**(a)**    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)**    Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" not otherwise excluded that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.**    **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)**    A watercraft while ashore on premises you own or rent;

**(2)**    A watercraft you do not own that is:

**(a)**    Less than 26 feet long; and

**(b)**    Not being used to carry persons or property for a charge;

**(3)**    Parking an "auto" on or on the ways next to premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or any insured;

**(4)**    Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)**    "Bodily injury" or "property damage" arising out of:

**(a)**    The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)**    The operation of any of the machinery or equipment listed in paragraph f.(2) or f.(3) of Page of the definition of "mobile equipment".

**h.**    **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)**    The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)**    The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

**i.    War**

"Bodily injury" or "property damage", however caused, arising directly or indirectly out of:

**(1)**    War, including undeclared or civil war; or

**(2)**    Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)**    Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

This exclusion does not apply to the use or threaten use of "terrorism".

As used in this exclusion, "terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

**(1)**    A government;

**(2)**    The civilian population of a country, state or community; or

**(3)**    To disrupt the economy of a country, state or community.

So long as the Terrorism Risk Insurance Act of 2002 (the "Act") is in effect, "terrorism" includes an act of terrorism as defined by Section 102. Definitions of the Act and any revisions or amendments thereto.

**j.    Damage to Property**

"Property damage" to:

**(1)**    Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)**    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)**    Property loaned to you;

**(4)**    Personal property in the care, custody or control of the insured;

**(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.  However, a separate Limit of Insurance applies to Damage To Premises Rented To You as described in SECTION III - LIMITS OF INSURANCE.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion  does not apply to  "property damage" included in  the "products-completed operations hazard".

**k.    Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

l.    **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the
"products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage
arises was performed on your behalf by a subcontractor.

m.    **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically
injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or
"your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract
or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden
and accidental physical injury to "your product" or "your work" after it has been put to
its intended use.

n.    **Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of
use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal
of:

(1)    "Your product";

(2)    "Your work"; or

(3)    "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use
by any person or organization because of a known or suspected defect, deficiency,
inadequacy or dangerous condition in it.

o.    **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p.    **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to
access, or inability to manipulate electronic data

As used in this exclusion, electronic data means information, facts or programs stored
as or on, created or used on, or transmitted to or from computer software, including
systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells,
data processing devices or any other media which are used with electronically
controlled equipment.

q.    **Fungus/Mold**

"Bodily injury" or "property damage" or any other loss, cost or expense, including, but
not limited to, losses, costs or expenses related to, arising from or associated with
clean-up, remediation, containment, removal or abatement, caused directly or indirectly,
in whole or in part, by:

(1)    Any "fungus(i)", "molds(s)", mildew or yeast, or

(2)    Any "spore(s)" or toxins created or produced by or emanating from such
"fungus(i)", "mold(s)", mildew or yeast, or

(3)    Any substance, vapor, gas, or other emission or organic or inorganic body
substance produced by or arising out of any "fungus(i)", "mold(s)", mildew or
yeast, or

(4)    Any material, product, building component, building or structure, or any con-
centration of moisture, water or other liquid within such material, product,
building component, building or structure, that contains, harbors, nurtures or
acts as a medium for any "fungus(i)", "mold(s)", mildew, yeast or "spore(s)" or
toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that "bodily injury" or "property damage", loss, cost or expense.

For the purpose of this exclusion, the following definitions are added to the Policy:

"Fungus(i)" includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts, and mushrooms.

"Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter of on living organisms, and fungi that produce molds.

"Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants, organisms or microorganisms.

**r.**   **Employment Related Practices**

Any claim or "suit" alleging or asserting in any respect loss, injury, or damage (including consequential bodily injury) in connection with "wrongful termination" and/or "discrimination" and/or "sexual harassment".

The following definitions apply to this exclusion:

"Wrongful termination" means termination of an employment relationship in a manner which is against the law, wrongful, or in breach of an implied or written agreement to continue employment.

"Discrimination" means termination of an employment relationship or a demotion, or a failure or refusal to hire or promote an individual because of race, color, religion, age, sex, disability, pregnancy, national origin, sexual orientation or other protected category or characteristic established pursuant to any applicable United States federal, state, or local law, regulation or ordinance.

"Sexual harassment" means unwelcome sexual advances and/or requests for sexual favors and/or other verbal or physical conduct of a sexual nature that (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance.

**s.**   **Asbestos**

**(1)**   "Bodily injury" in any way arising out of the use by any person or organization of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

**(2)**   "Property damage" to real property arising out of the use by any person or organization of asbestos, asbestos products, asbestos fibers, asbestos dust, including without limitation the costs incurred with respect to the removal or abatement of asbestos, asbestos products, asbestos fibers or asbestos dust from or in such real property;

**(3)**   Any obligation of the insured to indemnify any party because of damages arising out of such "property damage", "bodily injury", sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury, at any time as a result of the manufacture of, mining of, use of, sale of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

**(4)**   Any obligation to defend any "suit" or claim against the insured alleging "bodily injury", sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury or "property damage" resulting from or contributed to, by any and all manufacture of, mining of, use of, sale of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

**t.**   **Lead**

**(1)**   "Bodily injury" or "property damage", for past, present or future claims arising in whole or in part, either directly or indirectly, out of the manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, replacement or handling of, exposure to, ingestion of or testing for, lead whether or not the lead is or was at any time airborne as a particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever;

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

(2)     The costs of clean up or removal of lead or products and materials containing lead;

(3)     The costs of such actions as may be necessary to monitor, assess and evaluate the release or threat of same, or lead or products and material containing lead;

(4)     The cost of disposal of lead substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result;

(5)     The cost of compliance with any law or regulation regarding lead.

u.     **Nuclear**

(1)     "Bodily injury" or "property damage":

(a)     With respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any such policy but for its termination upon exhaustion of its limit of liability; or

(b)     Resulting from the "hazardous properties" of "nuclear material" and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the insured is or, had this policy not been issued, would be entitled to indemnify from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof with any person or organization.

(2)     "Bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

(a)     The "nuclear material" (i) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (ii) has been discharged or dispersed therefrom:

(b)     The "nuclear material" is contained in "spent fuel" or "waste" at anytime possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the insured; or

(c)     The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions of Canada, this subparagraph (2) (c) applies only to "property damage" to such "nuclear facility" and any property thereat.

(3)     "Bodily injury" or "property damage" resulting from the intentional or unintentional detonation of any nuclear bomb or nuclear device.

(4)     As used in this exclusion, the following definitions apply;

(a)     "Hazardous properties" include radioactive, toxic or explosive properties.

(b)     "Nuclear material" means "source material", "special nuclear material" or "by-product material";

(c)     "Source material", "special nuclear material" and "by-product material" have the meanings given them in Atomic Energy Act of 1954 or in any law amendatory thereof;

(d)     "Spent fuel" means any fuel element of fuel component, solid or liquid which has been used or exposed to radiation in a "nuclear reactor";

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

(e) "Waste" means any waste material (i) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium form any ore processed primarily for its "source material" content, and (ii) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

(f) "Nuclear facility" means:

(i) Any "nuclear reactor";

(ii) Any equipment or device designed or used for (a) separating the isotopes or uranium or plutonium, (b) processing or utilizing "spent fuel", or (c) handling, processing or packaging "waste";

(iii) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more that 250 grams of uranium 235;

(iv) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**v.    Securities and Financial Interest**

(1) Any violation of any securities law or similar law or any regulation promulgated thereunder;

(2) The purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

(3) Any representation made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

(4) Any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

**w.    Silica**

(1) "Bodily injury", sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury, and/or any other type of injury, loss, cost, damage, or expense sustained by any person for the real or alleged emergence, contraction, aggravation or exacerbation of any form of silicosis or any other disease of the human body caused by, arising out of, or resulting from the manufacture, mining, use, sale, removal, or distribution by any person or organization of silica, silica products, silica fibers or silica dust, or the exposure to silica, silica products, silica fibers or silica dust; or

(2) Any obligation of the insured to defend and/or indemnify any party because of damages arising out of such "bodily injury", sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury, at any time caused by, arising out of, or resulting from the manufacture of, mining of, use of, sale of, removal of, distribution of, or exposure to silica, silica products, silica fibers or silica dust.

**x.    Violation of Statutes in Connection With Sending, Transmitting or Communicating Any Material or Information**

Any claim or "suit" alleging or asserting that any act or omission violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that includes, addresses or applies to the sending, transmitting or communicating of any material or information, by any means whatsoever.

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1.    Insuring Agreement**

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS-COVERAGES A AND B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury"

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.

This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission. All Rights Reserved.

j.  **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1)  Advertising, broadcasting, publishing or telecasting;

(2)  Designing or determining content of web-sites for others; or

(3)  An internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14. a.,.b and c of the definition of "personal and advertising injury" in SECTION IV. DEFINITIONS.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k.  **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l.  **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m.  **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage migration, release or escape of "pollutants" at any time.

n.  **Pollution-Related**

Any loss, cost or expense arising out of any:

(1)  Request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2)  Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**Exclusions i. War, q. Fungus/Mold, r. Employment Related Practices, s. Asbestos, t. Lead, u. Nuclear, v. Securities and Financial Interest, w. Silica and x. Violation of Statutes In Connection With Sending, Transmitting or Communicating Any Material or Information pertaining to "bodily injury" and "property damage" under COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY shall apply equally to "personal and advertising injury" under this COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY.**

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

1.  We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a.  All expenses we incur.

b.  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e.  All costs taxed against the insured in the "suit".

f.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. Interest on that part of any judgment we pay that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of SECTION I COVERAGES - COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in subparagraph 2. f. above, are no longer met.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission. All Rights Reserved.

    **c.**    A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.**    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    **e.**    A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.**    Each of the following is also an insured:

    **a.**    Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" is an insured for:

        **(1)**    "Bodily injury" or "personal and advertising injury":

            **(a)**    To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co"employee" while that co"employee" is either in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business, or to any claim or "suit" brought by the spouse, child, parent, brother or sister of that co"employee" or "volunteer worker" as a consequence of such injury.

            **(b)**    For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1) (a), above; or

            **(c)**    Arising out of his or her providing or failing to provide professional health care services.

        **(2)**    "Property damage" to property:

            **(a)**    Owned, occupied or used by;

            **(b)**    Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

            you, any of your "employees", or "voluntary workers"; or any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    **b.**    Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

    **c.**    Any person or organization having proper temporary custody of your property if you die, but only:

        **(1)**    With respect to liability arising out of the maintenance or use of that property; and

        **(2)**    Until your legal representative has been appointed.

    **d.**    Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Policy.

**3.**    Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    **a.**    Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.**    Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization.

**c.**    Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed or before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.**    The Limits of Insurance shown in the Declarations and the rules below establish the most we will pay regardless of the number of:

    **a.**    Insureds;

    **b.**    Claims made or "suits" brought; or

    **c.**    Persons or organizations making claims or bringing "suits".

**2.**    The General Aggregate Limit is the most we will pay for the sum of:

    **a.**    Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    **b.**    Damages under Coverage B.

**3.**    The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.**    Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.**    Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for damages under Coverage A because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.**    Subject to 5. above, the Damage To Premises Rented To You Limit Is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you, or in the case of a fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of this Policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV - DEFINITIONS**

**1.**    "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **a.**    Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **b.**    Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.**    "Auto" means:

    **a.**    A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    **b.**    Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission. All Rights Reserved.

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4.  "Coverage territory" means:

    a.  The United States of America, including its territories and possessions, Puerto Rico and Canada; or

    b.  Anywhere else in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America if the injury or damage arises out of:

        (1)  Goods or products made or sold by you in the territory described in a. above;

        (2)  The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

        (3)  "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

            provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a above or in a settlement we agree to.

        If coverage for a claim under this policy is in violation of any United States of America's economic or trade sanction, including, but not limited to, sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") then coverage for that claim shall be null and void.

5.  "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7.  "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because;

    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.  You have failed to fulfill the terms of a contract or agreement;

        if such property can be restored to use by:

    a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b.  Your fulfilling the terms of the contract or agreement.

9.  "Insured contract" means:

    a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b.  A sidetrack agreement;

    c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e.  An elevator maintenance agreement;

    f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

        Paragraph f. does not include that part of any contract or agreement:

(1)    That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2)    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (a)    Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (b)    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3)    Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10.    "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11.    "Loading or unloading" means the handling of property:

a.    After it is moved from the place where it is accepted for movement into an aircraft, watercraft or "auto";

b.    While it is in or on an aircraft, watercraft or "auto"; or

c.    While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

But "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12.    "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a.    Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b.    Vehicles maintained for use solely on or next to premises you own or rent;

c.    Vehicles that travel on crawler treads;

d.    Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    (1)    Power cranes, shovels, loaders, diggers or drills; or

    (2)    Road construction or resurfacing equipment such as graders, scrapers or rollers;

e.    Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    (1)    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    (2)    Cherry pickers and similar devices used to raise or lower workers;

f.    Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)**    Equipment designed primarily for:

        **(a)**    Snow removal;

        **(b)**    Road maintenance, but not construction or resurfacing; or

        **(c)**    Street cleaning;

    **(2)**    Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)**    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one "occurrence", and shall be deemed to occur only when such damage first commences.

**14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**    False arrest, detention or imprisonment;

    **b.**    Malicious prosecution;

    **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    **d.**    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**    Oral or written publication of material that violates a person's right of privacy.

    **f.**    The use of another's advertising idea in your "advertisement"; or

    **g.**    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.**    "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.**    "Products-completed operations hazard":

    **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)**    Products that are still in your physical possession; or

        **(2)**    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)**    When all of the work called for in your contract has been completed.

            **(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be deemed as completed.

    **b.**    Does not include "bodily injury" or "property damage" arising out of:

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

      (1)    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2)    The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3)    Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17.    "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or be deemed to occur at the time of the "occurrence" that caused it.

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18.    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a.    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19.    "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or shortterm workload conditions.

20.    "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21.    "Your product"

    a.    Means:

      (1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a)    You;

         (b)    Others trading under your name; or

         (c)    A person or organization whose business or assets you have acquired; and

      (2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b.    Includes:

      (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2)    The providing of or failure to provide warnings or instructions.

    c.    Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work"

    **a.**     Means:

        **(1)**     Work or operations performed by you or on your behalf; and

        **(2)**     Materials, parts or equipment furnished in connection with such work or operations.

    **b.**     Includes:

        **(1)**     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)**     The providing of or failure to provide warnings or instructions.

## SECTION V - CONDITIONS

**1.**     **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Policy.

**2.**     **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.**     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)**     How, when and where the "occurrence" or offense took place;

        **(2)**     The names and addresses of any injured persons and witnesses; and

        **(3)**     The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**     If a claim is made or "suit" is brought against any insured; you must:

        **(1)**     Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)**     Notify us as soon as practicable.

     You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.**     You and any other involved insured must:

        **(1)**     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)**     Authorize us to obtain records and other information;

        **(3)**     Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)**     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.**     No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other then for first aid, without our consent.

**3.**     **Legal Action Against Us**

No person or organization has a right under this Policy:

    **a.**     To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    **b.**     To sue us on this Policy unless all of its terms have been fully complied with.

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission. All Rights Reserved.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4.    Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Policy, our obligations are limited as follows:

**a.    Primary Insurance**

This insurance is primary except when b. Excess Insurance, below, applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. Method of Sharing, below.

**b.    Excess Insurance**

This insurance is excess over:

(1)    Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a)    That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b)    That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c)    That is insurance purchased by you to your cover liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner: or

(d)    If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY.

(2)    Any other primary insurance available to you covering liability for damages arising out of the premises or operations or the "products-completed operations hazard" for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1)    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)    The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Policy.

**c.    Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes an equal amount until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

OCC-GL
LX9641 (10/05)

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.
20

5. **Premium and Audit**

   a. We will compute all premiums for this Policy in accordance with our rules and rates.

   b. If the premium for this policy is a flat premium, it is not subject to adjustment, except that additional premiums may be required for any additional exposure and/or insureds, or as provided for in Condition 9 Cancellation.

   The Premium shown in Item 4. A. of the Declarations as the Total Advance Premium is a deposit premium only. If the policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Total Advance Premium, the first Named Insured will pay the difference to us due and payable upon notice. Subject to the Annual Minimum Premium shown in Item 4. B. of the Declarations, if the earned premium is less than the Total Advance Premium, we will return the difference to the first Named Insured.

   c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request. The first Named Insured shown on the Declarations is responsible for the payment of all premiums and will be the payee for any return premiums we pay.

6. **Representations**

   By accepting this policy, you agree that:

   a. The statements in the Declarations are accurate and complete;

   b. Those statements are based upon representations you made to us; and

   c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

   Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Policy to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

   If the insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **Cancellation**

   a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   b. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   (i) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   (ii) 30 days before the effective date of cancellation if we cancel for any other reason.

   c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**e.**   If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, earned premium will be calculated in accordance with the customary short-rate table and procedure, or the Minimum Earned Premium at inception of the policy shown in Item 4. c. of the Declarations, which ever is greater. The cancellation will be effective even if we have not made or offered a refund.

**f.**   If notice is mailed, proof of mailing will be sufficient proof of notice.

**10.    Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**11.    Examination of your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during this policy period and up to three years afterward.

**12.    Change In Control**

**a.**   If the first "Named Insured" designated in Item 1 of the Declarations consolidates with or merges into, or sells all or substantially all of its assets to any person or entity; or

**b.**   If any person or entity acquires an amount of the outstanding ownership interests representing more than 50% of the voting or designation power for the election of directors of the first "Named Insured" designated in Item 1 of the Declarations, or acquires the voting or designation rights of such an amount of ownership interests;

this policy will continue in full force and effect as to "bodily injury" and "property damage" that occur prior to the effective date of such transaction and "personal and advertising injury" caused by an "occurrence" that takes place prior to the effective date of such transaction. There will be no coverage afforded by this policy for "bodily injury" or "property damage" that occurs on or after the effective date such transaction and "personal and advertising injury" caused by an "occurrence" that takes place on or after the effective date of such transaction.

**13.    Inspections and Surveys**

We have the right but are not obligated to:

**a.**   Make inspections and surveys at any time;

**b.**   Give you reports on the conditions we find; and

**c.**   Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public, and we do not warrant that conditions:

**a.**   Are safe or healthful: or

**b.**   Comply with laws, regulations, codes or standards. This condition applies not only to us, but also to any rating advisory, rate service or similar organization which make insurance inspections, surveys, reports or recommendations.

**14.    Transfer of your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured. If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission. All Rights Reserved.

15. **Service Of Suit**

In the event of the failure of the Company to pay any amount claimed to be due hereunder, we, at the request of the Insured , will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver by us or our rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, Massachusetts, 02110-2103 or his or her representative, and that in any suit instituted us upon this policy, we will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, we hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance, and hereby designates the above named Counsel Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, MA 02110-2103, as the person to whom the said officer is authorized to mail such process or a true copy thereof.

16. **Arbitration**

Notwithstanding Condition 15. Service of Suit, above, in the event of a disagreement as to the interpretation of this policy (except with regard to whether this policy is void or voidable), it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) Arbitrators consisting of two (2) party-nominated (non-impartial) Arbitrators and a third (impartial) Arbitrator (hereinafter "umpire") as the sole and exclusive remedy.

The party desiring arbitration of a dispute shall notify the other party, said notice including the name, address and occupation of the Arbitrator nominated by the demanding party. The other party shall, within 30 days following receipt of the demand, notify in writing the demanding party of the name, address and occupation of the Arbitrator nominated by it. The two (2) arbitrators so selected shall, within 30 days of the appointment of the second Arbitrator, select an umpire. If the Arbitrators are unable to agree upon an umpire, the selection of the umpire shall be submitted to the Judicial Arbitration and Mediation Services (hereinafter, "JAMS"). The umpire shall be selected in accordance with Rule 15 (as may be amended from time to time) of the JAMS Comprehensive Arbitration Rules and Procedures for the selection of a sole arbitrator.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the umpire. Said hearings shall be held within 30 days of the selection of the umpire. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud and gross misconduct by the Arbitrators. The award will be issued within 30 days of the close of the hearings. Each party shall bear expenses of its designated Arbitrator and shall jointly and equally share with the other the expense of the umpire and the arbitration.

The arbitration proceeding shall take place in the vicinity of the first Named Insured's mailing address as shown in the Declarations or such other place as may be mutually agreed by the first Named Insured and us. The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the JAMS Comprehensive Arbitration Rules and Procedures.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in the Declarations by a duly authorized representative of the Company.

*Elizabeth M. Tuck*
**Secretary**

**Chairman of the Board and CEO**

OCC-GL
LX9641 (10/05)

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission. All Rights Reserved.

23

ENDORSEMENT # 001

**This endorsement, effective 12:01 AM** 01/01/2007

**Forms a part of policy no.:** 0350122

**Issued to:** MGA ENTERTAINMENT INC.

**By:** LEXINGTON INSURANCE COMPANY

**CROSS SUITS ENDORSEMENT**

The coverage afforded by this policy does not apply to any claim or "suit" or cross "suit" alleged, initiated, brought or caused to be brought by a Named Insured or Additional Named Insured covered by this policy against any other Named Insured or Additional Named Insured covered by this policy.

All other terms and conditions remain unchanged.

**Authorized Representative OR
Countersignature (In states where applicable)**

LEXCAS032
LX0586 (11/03)

EXHIBIT B - PAGE 102

ENDORSEMENT # 002

**This endorsement, effective 12:01 AM** 01/01/2007

**Forms a part of policy no.:** 0350122

**Issued to:** MGA ENTERTAINMENT INC.

**By:** LEXINGTON INSURANCE COMPANY

## TERRORISM PREMIUM CHARGE ENDORSEMENT

The "Terrorism" charge is $ 17,469    and is included in the Policy Premium shown on the Declarations Page of this policy.

DEFINITION - The following definition of terrorism shall apply:

"Terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

  (1) A government;
  (2) The civilian population of a country, state or community; or
  (3) To disrupt the economy of a country, state or community.

So long as the Terrorism Risk Insurance Act of 2002 (the "Act") is in effect, "Terrorism" includes a certified act of terrorism defined by Section 102. Definitions, of the Act and any revisions or amendments thereto.

All other terms and conditions of the policy are the same.

**Authorized Representative OR
Countersignature (In states where applicable)**

LX9827 (01/05)

EXHIBIT B - PAGE 103

**POLICY NUMBER:** 0350122    **ENDORSEMENT #** 003

# EMPLOYEE BENEFITS LIABILITY COVERAGE

### THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
### PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $1,000,000 | each employee | $100,000 | each employee | $ INCLUDED |
| | $1,000,000 | aggregate | | | |
| Retroactive Date: | 01 / 01 / 2006 | | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** The following is added to **Section I - Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Paragraph **E.** (Section III - Limits Of Insurance); and

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   **b.** This insurance applies to damages only if:

   **(1)** The act error or omission, is negligently committed in the "administration" of your "employee benefit program";

   **(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

   **(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **G.** of this endorsement.

   **c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

   **(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

**LX9606 (06/03)**    Includes copyrighted Information of the Insurance Services Offices, Inc., with its permission.  All rights reserved.    1

(2) When we make settlement in accordance with Paragraph 1.a. above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

d. All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

2. **Exclusions**

This insurance does not apply to:

a. **Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

b. **Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

c. **Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

d. **Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e. **Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

f. **Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

g. **ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

h. **Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

i. **Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

j. **Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

B. For the purposes of the coverage provided by this endorsement:

1. All references to Supplementary Payments – Coverages A and B are replaced by Supplementary Payments – Coverages A, B and Employee Benefits Liability.

2. Paragraphs 1.b. and 2. of the Supplementary Payments provision do not apply.

C. For the purposes of the coverage provided by this endorsement, Paragraphs 2. and 4. of Section II – Who Is An Insured are replaced by the following:

2. Each of the following is also an insured:

a. Each of your "employees" who is or was authorized to administer your "employee benefit program".

b. Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

LX9606 (06/03)    Includes copyrighted information of the Insurance Services Offices, Inc., with its permission. All rights reserved.

2

c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

   b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

D. For the purposes of the coverage provided by this endorsement, Paragraph 3. of Section II – Who Is An Insured does not apply.

E. For the purposes of the coverage provided by this endorsement, Section III – Limits Of Insurance is replaced by the following:

   1. Limits Of Insurance

      a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

         (1) Insureds;

         (2) "Claims" made or "suits" brought;

         (3) Persons or organizations making "claims" or bringing "suits";

         (4) Acts, errors or omissions; or

         (5) Benefits included in your "employee benefit program".

      b. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

      c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

         (1) An act, error or omission; or

         (2) A series of related acts, errors, or omissions

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

   2. Deductible

      a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

      b. The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

      c. The terms of this insurance, including those with respect to:

         (1) Our right and duty to defend any "suits" seeking those damages; and

         (2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

         apply irrespective of the application of the deductible amount.

      d. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

LX9606 (06/03)    Includes copyrighted Information of the Insurance Services Offices, Inc., with its permission.  All rights reserved.                                          3

F. For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV – Conditions** are replaced by the following:

2. **Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

   a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

      (1) What the act, error or omission was and when it occurred; and

      (2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

   b. If a "claim" is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

a. **Primary Insurance**

   This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. **Excess Insurance**

   (1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

      (a) No Retroactive Date is shown in the Schedule of this insurance; or

      (b) The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

   (2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

   (3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

   (4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

**G.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provision are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

1. You will have the right to purchase an Extended Reporting Period, as described below, if:

   a. This endorsement is canceled or not renewed; or

   b. We renew or replace this endorsement with insurance that:

      (1) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

      (2) Does not apply to an act, error or omission on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

   You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

a. The "employee benefit programs" insured;

b. Previous types and amounts of insurance;

c. Limits of insurance available under this endorsement for future payment of damages; and

d. Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**H.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the Definitions Section:

1. "Administration" means:

   a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   b. Handling records in connection with the "employee benefit program"; or

   c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

   However, "administration" does not include handling payroll deductions.

**LX9606 (06/03)**    Includes copyrighted Information of the Insurance Services Offices, Inc., with its permission.  All rights reserved.    5

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

I. For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. in the **Definitions** Section are replaced by the following:

5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

ENDORSEMENT # 004

**This endorsement, effective 12:01 AM** 01/01/2007

**Forms a part of policy no.:** 0350122

**Issued to:** MGA ENTERTAINMENT INC.

**By:** LEXINGTON INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED REQUIRED BY WRITTEN CONTRACT

**A.** **Section II - Who Is An Insured** is amended to include any person or organization you are required to include as an additional insured on this policy by a written contract or written agreement in effect during this policy period and executed prior to the "occurrence" of the "bodily injury" or "property damage."

**B.** The insurance provided to the above described additional insured under this endorsement is limited as follows:

1. COVERAGE A BODILY INJURY AND PROPERTY DAMAGE (Section I - Coverages) only.

2. The person or organization is only an additional insured with respect to liability arising out of "your work" or "your product" for that additional insured.

3. In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the written contract or written agreement, the insurance provided by this endorsement shall be limited to the Limits of Insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Insurance stated in the Declarations under Item 3. Limits of Insurance pertaining to the coverage provided herein.

4. The insurance provided to such additional insured does not apply to "bodily injury" or "property damage" arising out of an architect's, engineer's or surveyor's rendering of or failure to render any professional services including:

   I    The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   ii   Supervisory, inspection, architectural or engineering activities.

5. This insurance does not apply to "bodily injury" or "property damage" arising out of "your work" or "your product" included in the "products-completed operatons hazard" unless you are required to provide such coverage by written contract or written agreement and then only for the period of time required by the written contract or written agreement and in no event beyond the expiration date of the policy.

**Includes copyrighted information of the Insurance Services Offices, Inc. with its permission. All rights reserved.**

LX9466 (10/03)

Page 1 of 2

**6.** Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a written contract or written agreement specifically requires that this insurance apply on a primary or non-contributory basis.

**C.** Subparagraph (1)(a) of the Pollution exclusion paragraph 2.f., Exclusions of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages) does not apply to you if the "bodily injury" or "property damage" arises out of "your work" or "your product" performed on premises which are owned or rented by the additional insured at the time "your work" or "your product" is performed.

**D.** In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each additional insured must give us prompt notice of any "occurrence" which may result in a claim, forward all legal papers to us, cooperate in the defense of any actions, and otherwise comply with all of the policy's terms and conditions.

_____

**Authorized Representative OR**
**Countersignature (in states where applicable)**

Includes copyrighted information of the Insurance Services Offices, Inc. with its permission. All rights reserved.

EXHIBIT B - PAGE 111

POLICY NUMBER: 0350122          ENDORSEMENT # 005          COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization (Vendor):**
        AS PER ON FILE WITH COMPANY

**Your Products:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

CG 20 15 11 88          Copyright, Insurance Services Office, Inc., 1986, 1988
LX5201

Page 1 of 1

## ENDORSEMENT # 006

**This endorsement, effective 12:01 AM** 01/01/2007

**Forms a part of policy no.:** 0350122

**Issued to:** MGA ENTERTAINMENT INC.

**By:** LEXINGTON INSURANCE COMPANY

ADVERTISING, BROADCASTING PUBLISHING AND TELECASTING

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Advertising, Broadcasting, Publishing and Telecasting

This insurance does not apply to Personal Injury and Advertising Injury committed or alleged to have been committed in any advertising, advertisement, publicity article ,book, magazine, brochure, broadcast, written material or telecast in the conduct of the Insured's advertising, broadcasting, re-broadcasting, televising, re-televising, newspaper publishing or other publishing activities.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

**Authorized Representative OR**
**Countersignature (In states where applicable)**

ENDORSEMENT # 007

**This endorsement, effective 12:01 AM** 01/01/2007

**Forms a part of policy no.:** 0350122

**Issued to:** MGA ENTERTAINMENT INC.

**By:** LEXINGTON INSURANCE COMPANY

### SELF-INSURED RETENTION ENDORSEMENT

This endorsement modifies insurance provided by the policy:

COMMERCIAL GENERAL LIABILITY POLICY
PRODUCTS/COMPLETED OPERATIONS LIABILITY POLICY

**I.    LIMITS OF INSURANCE**

The LIMITS OF INSURANCE as set forth in Item 3 of the Declarations shall apply excess of a Self-Insured Retention (hereinafter referred to as the "Retained Limit") in the amount of :

$100,000        each "occurrence"

$                     per "claim"

$                     per claimant

and you agree to assume the Retained Limit.  The Retained Limit, or any part of it, shall not be insured without our prior written approval.

**II.   DEFENSE AND SETTLEMENT - COVERAGES A AND B**

The defense and settlement obligations as set forth in **Section I - Coverages A and B** are deleted and replaced by the following defense and settlement obligation:

**A.   WITHIN THE RETAINED LIMIT:**

We do not have the duty to investigate or defend any "occurrence", claim or "suit" unless and until the Retained Limit is exhausted with respect to that "occurrence", claim or "suit". However, we may, at our discretion and expense, participate with you in the investigation of any such "occurrence" and the defense of any such claim or "suit" that may result.

**B.   IN EXCESS OF THE RETAINED LIMIT:**

1.   Once the Retained Limit is exhausted, with respect to any specific "occurrence", claim or "suit", we shall thereafter have the right and duty to defend that "occurrence", claim or "suit".

2.   When we have the duty to investigate and/or defend pursuant to subparagraph **II. B.1.** above, we may, at our sole discretion, settle any such "occurrence", claim or "suit".

**C.   If you** refuse to agree to a settlement we recommend and the resulting judgment or settlement exceeds our recommended settlement, our liability for that "occurrence", claim or "suit", subject to the Limits of Insurance, will not exceed our recommended settlement amount (less any amount of the Retained Limit remaining).  In such event the company will have no further obligation with respect to "Allocated Loss Adjustment Expense" subsequent to the date of such refusal.

**D.   In no** event shall you agree to a settlement in excess of the Retained Limit without our prior written approval.

**E.   There** will be no reduction of the Retained Limit because of payment of claims or "suits" arising from claims or "suits" for which coverage is not afforded by the policy.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section III. **ALLOCATED LOSS ADJUSTMENT EXPENSES - COVERAGES A AND B** .

## III.  ALLOCATED LOSS ADJUSTMENT EXPENSES - COVERAGES A AND B

**SECTION I - COVERAGES, SUPPLEMENTARY PAYMENTS - COVERAGES A AND B** is deleted in its entirety and replaced with the following:

**ALLOCATED LOSS ADJUSTMENT EXPENSES - COVERAGES A AND B**

You are responsible for "Allocated Loss Adjustment Expenses" according to your election as indicated by an "X" below. If no election is indicated, election I. below shall apply.

[X]  I.  All "Allocated Loss Adjustment Expenses" up to the Retained Limit. However, the most you are responsible for with respect to damages and "Allocated Loss Adjustment Expenses" combined shall not exceed the Retained Limit.

[ ]  II.  A part of "Allocated Loss Adjustment Expenses". That part will be calculated by dividing the smaller of the Retained Limit or the damages by the damages. If we pay no damages you are responsible for all "Allocated Loss Adjustment Expenses".

[ ]  III.  All "Allocated Loss Adjustment Expenses".

If a Retained Limit is shown either on a per "claim" basis or a per "occurrence" basis in Section I. LIMITS OF INSURANCE above, your duty to pay for "Allocated Loss Adjustment Expenses" applies separately to each "occurrence" for "bodily injury" or "property damage", or to each offense for "personal and advertising injury". If the Retained Limit is shown on a per "occurrence" basis in Section I. LIMITS OF INSURANCE, above, we will apply the Retained Limit to each "occurrence" regardless of the number of persons or organizations who sustain damages as a result of any one "occurrence". If the Retained Limit is shown on a per "claim" basis in Section I. LIMITS OF INSURANCE, above, we will apply the Retained Limit to each and every "claim".

If a Retained Limit is shown on a per claimant basis in Section I. LIMITS OF INSURANCE, above, your duty to pay for "Allocated Loss Adjustment Expenses" applies separately to each and every claimant who makes a "claim" or brings a "suit" for "bodily injury", "property damage", or "personal and advertising injury". If multiple claimants are joined in one "claim" or "suit" or are members of a class action "suit", we will apply the Retained Limit separately to each and every claimant and your duty to pay "Allocated Loss Adjustment Expenses" will apply separately to each and every claimant (whether or not, in the case of a class action "suit", such claimant is a named class member).

## IV.  INDEMNITEE PROVISION

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

1.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

2.  This insurance applies to such liability assumed by the insured;

3.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

4.  The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

5.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

6.  The indemnitee:

   a.  Agrees in writing to:

      (1)  Cooperate with us in the investigation, settlement or defense of the "suit";

  (2) Immediately, send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

  (3) Notify any other insurer whose coverage is available to the indemnitee; and

  (4) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

 **b.** Provides us with written authorization to:

  (1) Obtain records and other information related to the "suit"; and

  (2) Conduct and control the defense of the indemnitee in such "suit".

"Allocated Loss Adjustment Expenses" pertaining to the defense of the indemnitee will be handled in accordance with the Named Insured's election in Section **III. ALLOCATED LOSS ADJUSTMENT EXPENSES - COVERAGES A AND B.** We will not provide a defense to the indemnitee if option **III.** in Section **III. ALLOCATED LOSS ADJUSTMENT EXPENSES - COVERAGES A AND B** is selected.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as "Allocated Loss Adjustment Expenses" ends when:

**1.** We have used up the applicable limit of insurance in the payment of judgments and/or settlements (and/or "Allocated Loss Adjustment Expenses", if defense is within the limits of insurance on the policy); or

**2.** The conditions set forth above, or the terms of the agreement described in Paragraph **6.** above, are no longer met.

## V. INSOLVENCY

Your bankruptcy, insolvency, inability to pay, failure to pay, or refusal to pay the Retained Limit will not increase our obligations under the policy. In the event there is insurance, whether or not applicable to an "occurrence", claim or "suit" within the Retained Limit, you will continue to be responsible for the full amount of the Retained Limit before the limits of insurance under this policy apply. In no case will we be required to pay the Retained Limit or any portion thereof.

## VI. NOTICE PROVISIONS

 **A.** You shall immediately notify us in writing, in accordance with the terms of the policy, of any "occurrence" or any offense which may result in a "claim" which:

  1. involves serious "bodily injury", including but not limited to, burns, spinal cord injury, amputation, brain damage, loss of eyesight or hearing, a fatality, or any claim which is likely to exceed 50% of the Retained Limit, or for which you have established a reserve (including Indemnity and "Allocated Loss Adjustment Expense") at or more than 50% of the Retained Limit;

  2. you receive notice of a "suit" in which the damage demand exceeds the Retained Limit; and/or

  3. you receive notice of a "suit" which requests Punitive Damages.

 **B.** On a quarterly basis, you must provide us with a written summary (loss run) of all "occurrences", offenses, claims, or "suits" which have or may result in payments within the Retained Limit.

 This written summary must show:

  1. The date of the "occurrence", offenses, claims or "suits"; and

  2. The name(s) of the injured person(s) or identification of the damaged property; and

  3. A description of the injury or damage; and

  4. The amount paid or reserved, including "allocated loss adjustment expense", resulting from the "occurrence", offenses, claim or "suit".

## VII. SPECIAL CONDITIONS

A. It is required that you contract with and pay, without reimbursement from us, a firm acceptable to us for the purpose of providing claims services (hereinafter, such firm is referred to as the "TPA"). You shall maintain a written service agreement with such TPA as named below. The service agreement shall require that all claims or "suits" shall be administered by the TPA.

B. You may not, without our written consent, cancel, amend, or suspend the service agreement between you and the TPA.

C. Loss settlements made by you or the TPA will be made in accordance with the terms and conditions of the policy.

TPA:      HERTZ CLAIM MANAGEMENT
Address:  225 BRAE BLVD.
          PARK RIDGE, NJ 07656

## VIII. ADDITIONAL DEFINITIONS

**SECTION IV - DEFINITIONS** of the policy is amended to include the following additional definitions:

1. "Allocated Loss Adjustment Expenses" means all fees for service of process and court costs and court expenses; pre- and post-judgment interest; attorneys' fees; cost of undercover operative and detective services; costs of employing experts; costs for legal transcripts, copies of any public records, and costs of depositions and court reported or recorded statements; costs and expenses of subrogation; and any similar fee, cost or expense reasonably chargeable to the investigation, negotiation, settlement or defense of a loss or a claim or "suit" against you or any insured under the policy, or for the protection and perfection of your or our subrogation rights.

    "Allocated Loss Adjustment Expenses" shall not include your or our general overhead, the salary and employee benefits of any of our employees, nor the fees of any attorney who is our employee or under our permanent retainer; nor the fees of any attorney we retain to provide counsel to us about our obligations, if any, under any policy issued by us or our affiliated company (ies), with respect to a claim or "suit" against you.

2. "Claim" means a written demand for monetary damages, and shall include service of suit or institution of arbitration proceedings against the insured.

All other terms and conditions of the policy remain the same.

*RH J. H*

**Authorized Representative OR
Countersignature (In states where applicable)**

EXHIBIT B - PAGE 117

POLICY NUMBER: 0350122          ENDORSEMENT # 008          COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED PRODUCTS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

SCHEDULE

**Designated Product(s):**
BATTERY POWERED RIDE-ON TOYS AND RECALLED FLASH LIGHTS

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of any of "your products" shown in the Schedule.

CG 21 33 11 85                    Copyright, Insurance Services Office, Inc., 1984
LX5176

ENDORSEMENT # 009

**This endorsement, effective 12:01 AM** 01/01/2007

**Forms a part of policy no.:** 0350122

**Issued to:** MGA ENTERTAINMENT INC.

**By:** LEXINGTON INSURANCE COMPANY

### SEXUAL & PHYSICAL ABUSE EXCLUSION

This policy does not apply to any injury sustained by any person arising out of or resulting from the physical and/or sexual abuse of any person by:

1.  any Insured;

2.  any employee of any Insured;

3.  any person performing volunteer services for or on behalf of any Insured.

The Company shall not have any duty to defend any suit against the Insured seeking damages on account of any such injury.

**Authorized Representative OR**
**Countersignature (In states where applicable)**

LEXOCC218(Ed.04/90)
LX0469

EXHIBIT B - PAGE 119

ENDORSEMENT # 010

**This endorsement, effective 12:01 AM** 01/01/2007

**Forms a part of policy no.:** 0350122

**Issued to:** MGA ENTERTAINMENT INC.

**By:** LEXINGTON INSURANCE COMPANY

**THIS ENDORSEMENT ADDS ACCIDENT INSURANCE TO THE POLICY UNDER THE TERMS AND CONDITIONS STATED HEREIN, PLEASE READ IT CAREFULLY.**

ACCIDENT INSURANCE ENDORSEMENT

**NOTICE: THIS ENDORSEMENT PROVIDES ACCIDENT ONLY COVERAGE. IT DOES NOT COVER SICKNESS OR DISEASE.**

**NOTICE: COVERAGE IS NOT PROVIDED TO ANY OTHERWISE ELIGIBLE PERSON IF THE FIRST NAMED INSURED IS DOMICILED IN INDIANA, IOWA, MASSACHUSETTS, MISSOURI, NORTH CAROLINA, PENNSYLVANIA, OR RHODE ISLAND.**

**The words we, us and our refer to the company providing this insurance as stated above. Other words and phrases that appear in bold face print in this endorsement have special meaning within this endorsement. Refer to the Accident Insurance Declarations and Accident Insurance Definitions below.**

The Policy is amended as follows:

I.   **ACCIDENT INSURANCE DECLARATIONS** - The following declarations are added to the Policy and apply only with respect to the coverage provided by this endorsement:

    **(a) Accident Insurance Effective Date:**   Same as Policy Effective Date

    **(b) Classification of Eligible Persons:**

        **Class 1:**   All third parties, excluding Class 2.  Class 1 does not otherwise include firefighters, police officers, emergency medical technicians or any other emergency services personnel who may be called to the venue or location(s) in the event of an emergency.

        **Class 2:**   All employees of the **First Named Insured** working at least 20 hours per week and who are permanently employed inside the U.S.

    **(c) Covered Activity(ies):** Coverage is provided for **Injury** sustained by a **Covered Person** while:

      **Covered Activity 1: (Class 1)** Lawfully in or on the **Covered Premises** of the **First Named Insured.**

      **Covered Activity 2: (Class 2)** Actively performing the duties of his or her occupation for the **First Named Insured.**

    **(d) Principal Sum Amount** (per **Covered Person**):   $50,000

    **(3) Accident Insurance Policy Aggregate Limit:**   $5,000,000 per occurrence

II.  **ACCIDENT INSURANCE** - The following  Accident Insurance Coverage is added  to the Policy. The provisions hereunder apply only with respect to the Accident Insurance provided by this endorsement:

## A. ACCIDENT INSURANCE INSURING AGREEMENT

We will pay a benefit to the **Covered Person** (or, in the event of death, to the **Covered Person's** beneficiary) if that **Covered Person** suffers a loss covered under this endorsement arising from an **Injury** that results from an accident that occurs on or after the **Accident Insurance Effective Date** and during a **Covered Activity**. The **Principal Sum Amount** and the **Covered Activity(ies)** applicable to each **Covered Person** are set out in the **Schedule**. The benefit amount payable is subject to the Accident Insurance Reduction Schedule found below.

**Accidental Death & Dismemberment and Paralysis Benefit.** If **Injury** to a **Covered Person** results, within 365 days of the date of the accident that caused the **Injury**, in that **Covered Person** suffering any one of the losses or any type of paralysis specified below, the benefit we will pay will be based upon the indicated percentage of the **Principal Sum Amount** shown below for that loss or paralysis:

| For Loss of: | Percentage of **Principal Sum Amount** Payable |
|---|---|
| Life | 100% |
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| One Hand and the Sight of One Eye | 100% |
| One Foot and the Sight of One Eye | 100% |
| Speech and Hearing in Both Ears | 100% |
| One Hand or One Foot | 50% |
| Sight of One Eye | 50% |
| Speech or Hearing in Both Ears | 50% |
| Hearing in One Ear | 25% |
| Thumb and Index Finger of Same Hand | 25% |
| **Quadriplegia** | 100% |
| **Paraplegia** | 50% |
| **Hemiplegia** | 25% |

Loss of a hand or foot means complete severance through or above the wrist or ankle joint. Loss of sight of an eye means total and irrecoverable loss of the entire sight in that eye. Loss of hearing in an ear means total and irrecoverable loss of the entire ability to hear in that ear. Loss of speech means total and irrecoverable loss of the entire ability to speak. Loss of thumb and index finger means complete severance through or above the metacarpophalangeal joint of both digits.

If more than one loss or paralysis is sustained by a **Covered Person** as a result of the same accident, only one amount, the largest, will be paid.

## B. ACCIDENT INSURANCE EXCLUSIONS

No coverage shall be provided under this endorsement and no payment shall be made for any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following excluded risks even if the proximate or precipitating cause of the loss is an accidental bodily injury:

1. suicide or any attempt at suicide or intentionally self-inflicted Injury or any attempt at intentionally self-inflicted Injury or any act of autoeroticism.

2. sickness or disease, or mental incapacity or bodily infirmity whether the loss results directly or indirectly from any of these.

3. the **Covered Person's** commission of or attempt to commit a crime.

4. declared or undeclared war, or any act of declared or undeclared war regardless of whether the Policy to which this endorsement is attached provides such coverage.

5. infections of any kind regardless of how contracted, except bacterial infections that are directly caused by botulism, ptomaine poisoning or an accidental cut or wound independent and in the absence of any underlying sickness, disease or condition including but not limited to diabetes.

6. participation in any team sport or any other athletic activity.

7. full-time active duty in the armed forces, National Guard or organized reserve corps of any country or international authority. (Loss caused while on short-term National Guard or reserve duty for regularly scheduled training purposes is not excluded).

8. travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, if the **Covered Person** is:

   a) riding as a passenger in any aircraft not intended or licensed for the transportation of passengers; or

   b) performing, learning to perform or instructing others to perform as a pilot or crew member of any aircraft; or

   c) riding as a passenger in an aircraft owned, leased or operated by the **First Named Insured** or the **Covered Person's** employer.

9. the **Covered Person** being under the influence of intoxicants.

10. the **Covered Person** being under the influence of drugs unless taken under the advice of and as specified by a **Physician**.

10. the medical or surgical treatment of sickness, disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from the treatment.

11. stroke or cerebrovascular accident or event; cardiovascular accident or event; myocardial infarction or heart attack; coronary thrombosis; aneurysm.

12. the **Covered Person** riding in or driving any type of motor vehicle as part of a speed contest or scheduled race, including testing such vehicle on a track, speedway or proving ground.

## C. ACCIDENT INSURANCE LIMITATIONS

**Accident Insurance Aggregate Limit** - The maximum amount payable under the Accidental Death & Dismemberment and Paralysis Benefit may be reduced if more than one **Covered Person** suffers a loss or paralysis as a result of the same occurrence. The maximum amount payable for all such losses and types of paralysis for all **Covered Persons** will not exceed the amount shown as the **Accident Insurance Aggregate Limit** in the **Schedule**. If the combined maximum amount otherwise payable for all **Covered Persons** must be reduced to comply with this provision, the reduction will be taken by applying the same percentage of reduction to the individual maximum amount otherwise payable for each **Covered Person** for all such losses and types of paralysis. The **Accident Insurance Aggregate Limit** is in addition to the Policy's General Aggregate Limit.

**Accident Insurance Reduction Schedule** - The amount payable for a loss will be reduced if a **Covered Person** is age 70 or older on the date of the accident causing the loss. The amount payable for that **Covered Person's** loss is a percentage of the amount that would otherwise be payable, according to the following schedule:

| AGE ON DATE OF ACCIDENT | PERCENTAGE OF AMOUNT OTHERWISE PAYABLE |
|---|---|
| 70-74 | 65% |
| 75-79 | 45% |
| 80-84 | 30% |
| 85 and older | 15% |

Premium for a **Covered Person** age 70 or older is based on 100% of the coverage that would be in effect if the **Covered Person** were under age 70.

"Age" as used above refers to the age of the **Covered Person** on the **Covered Person's** most recent birthday, regardless of the actual time of birth.

## D. ACCIDENT INSURANCE DEFINITIONS

**Covered Activity(ies) -** means those activities set out as **Covered Activity(ies)** in the **Schedule** with respect to which **Covered Persons** are provided coverage under this endorsement.

**Covered Person** - means a person: (1) who is a member of an eligible class of persons as described in the Classification of Eligible Persons section of the Schedule; (2) for whom premium has been paid; and (3) while such person's coverage under this endorsement is in force.

**Covered Premises** - means the physical location of all premises owned by, rented to, leased to or controlled by the **First Named Insured**. Covered Premises does not include any vehicle or mode of transportation once it has left the premises of the First Named Insured.

**First Named Insured** - means the Named Insured first shown in the Declarations of the Policy to which this endorsement is attached.

**Hemiplegia** - means the complete and irreversible paralysis of the upper and lower **Limbs** of the same side of the body.

**Immediate Family Member** means a person who is related to the **Covered Person** in any of the following ways: spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister), or child (includes legally adopted or stepchild).

**Injury** - means an injury to the body: (1) which is sustained as a direct result of an unintended, unanticipated accident that is external to the body and that occurs while the injured person's accident coverage is in force; (2) which occurs under the circumstances described in a **Covered Activity** applicable to that person; and (3) which directly (independent of sickness, disease, mental incapacity, bodily infirmity or any other cause) causes a covered loss under this endorsement.

**Limb** - means entire arm or entire leg.

**Paraplegia** - means the complete and irreversible paralysis of both lower **Limbs**.

**Physician** - means a licensed practitioner of the healing arts acting within the scope of his or her license who is not: (1) the **Covered Person**; (2) an **Immediate Family Member**; or (3) retained by the **First Named Insured.**

**Quadriplegia** - means the complete and irreversible paralysis of both upper and both lower **Limbs**.

**Schedule** - means the Accident Insurance Declarations section of this endorsement.

## E. ACCIDENT INSURANCE CLAIMS PROVISIONS

**Notice of Claim.** Written notice of a claim for benefits must be given to us within 20 days after a **Covered Person's** loss, or as soon thereafter as reasonably possible. Such written notice given by or on behalf of the claimant to us in care of AIG Claim Services, P.O. Box 15701, Wilmington, DE 19850-5701, or by calling 1-800-551-0824 with information sufficient to identify the **Covered Person**, is deemed notice to us.

**Claim Forms.** We will send claim forms to the claimant upon receipt of a written notice of claim. If such forms are not sent within 15 days after the giving of notice of a claim, the claimant will be deemed to have met the proof of loss requirements upon submitting, within the time fixed herein for filing proof of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include the **Covered Person's** name, the **First Named Insured's** name and the Policy number.

**Proof of Loss.** Written proof of loss must be furnished to us within 90 days after the date of the loss. If the loss is one for which this endorsement requires continuing eligibility for periodic benefit payments, subsequent written proofs of eligibility must be furnished at such intervals as we may reasonably require. Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

**Payment of Claims.** Upon receipt of due written proof of death, payment for loss of life of a **Covered Person** will be made, in equal shares, to the survivors in the first surviving class of those that follow: the **Covered Person's** (1) spouse; (2) children; (3) parents; or (4) brothers and sisters. If no class has a survivor, the beneficiary is the **Covered Person's** estate.

Upon receipt of due written proof of loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the **Covered Person** suffering the loss. If a **Covered Person** dies before all payments due have been made, the amount still payable will be paid as described above for loss of life.

4

If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property.  If the payee has no  legal guardian for his or her property, a payment not exceeding $1,000 may be made, at our option, to any relative by blood or connection by marriage of the payee, who, in our opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

Any payment we make in good faith fully discharges our liability to the extent of the payment made.

**Time of Payment of Claims.**    Benefits payable for any loss other than loss for which this endorsement provides any periodic payment will be paid immediately upon our receipt of due written proof of the loss.  Subject to our receipt of due  written proof of  loss, all accrued benefits for loss  for  which this endorsement provides periodic payment will be paid at the expiration of each month during the continuance of the period for which we are-cliable and any balance remaining unpaid upon termination of liability will be paid immediately upon receipt of such proof.

**Physical Examination and Autopsy.**  We at our own expense have the right and opportunity to examine the person of any individual whose loss is the basis of claim hereunder when and as often as we may reasonably require during the pendency of the claim and to make an autopsy in  case of death where it is not forbidden by law.

## F.    ACCIDENT INSURANCE ADDITIONAL PROVISIONS

**Accident Insurance Termination Date.**  This coverage terminates automatically on the date the Policy terminates.  Termination takes effect at 12:01 AM Standard Time at the address of the **First Named Insured** on the date of termination.

**Covered Person's Effective Date.**  A **Covered Person's** coverage under this endorsement begins on the latest of: (1) the **Accident Insurance Effective Date**; (2) the date the person becomes a member of an eligible class of persons as described in the **Classification of Eligible Persons** section of the **Schedule**; or (3) the date the appropriate premium is paid for the **Covered Person**.

**Covered Person Termination Date.**  A **Covered Person's** coverage under this endorsement ends on the earliest of: (1) the date the Policy is terminated; (2) the date this endorsement is terminated; or (3) the date the **Covered Person** ceases to be a member of any eligible class of persons as described in the **Classification of Eligible Persons** section of the **Schedule**.

Termination of coverage will not affect a claim for a covered loss that occurred while the **Covered Person's** coverage under this endorsement was in force.

**All other terms, conditions, and exclusions of the Policy shall remain unchanged.**

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

EXHIBIT B - PAGE 124

# Exhibit C

EXHIBIT C - PAGE 125

**AIG** **AMERICAN INTERNATIONAL COMPANIES**
**UMBRELLA ELITE**[SM]
**COMMERCIAL UMBRELLA LIABILITY POLICY**



**DECLARATIONS**

☐ American International South Insurance Company
☐ Illinois National Insurance Company
☐ American Home Assurance Company
☒ National Union Fire Insurance Company of Pittsburgh, PA
☐ National Union Fire Insurance Company of Louisiana

(each of the above being a capital stock company)
Executive Offices: 70 Pine Street, New York, NY 10270

POLICY NUMBER:  BE    7408285

RENEWAL OF:  7393137

ITEM 1.   NAMED INSURED:    ABC INTERNATIONAL TRADERS, INC. ISAAC LARIAN

MAILING ADDRESS:  16730 SCHOENBORN STREET
NORTH HILLS, CA 91343

ITEM 2.   POLICY PERIOD:    FROM:  January 1, 2001          TO:  January 1, 2002
(at 12:01 A.M. standard time at the address of the Named Insured stated above)

ITEM 3.   LIMITS OF INSURANCE - COVERAGE A AND COVERAGE B

The Limits of Insurance, subject to the terms of this policy, are:

A.  $15,000,000          Each Occurrence

B.  $15,000,000          General Aggregate (in accordance with Section IV. Limits of Insurance)

C.  $15,000,000          Products-Completed Operations Aggregate (in accordance with Section IV. Limits of Insurance)

ITEM 4.   SELF-INSURED RETENTION - COVERAGE B:  $0                    Each Occurrence

ITEM 5.   PREMIUM AND PREMIUM COMPUTATION

ESTIMATED TOTAL ANNUAL EXPOSURE  $7,709,671
RATES PER                                            FLAT
MINIMUM PREMIUM
ADVANCE PREMIUM                        $24,380

ITEM 6.   THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE:
SEE ATTACHED SCHEDULE

PRODUCER NAME:  MARSH USA INC.
ADDRESS:            777 SO. FIGUEROA STREET, 12TH FLOOR
LOS ANGELES, CA 90017

Authorized Representative
Or Countersignature (In States
Where Applicable)

Date

73757 (2/99)
AH0031

Issue Date:  01/06/01

EXHIBIT C - PAGE 126

# UMBRELLA ELITE [SM]
## COMMERCIAL UMBRELLA LIABILITY POLICY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word Insured means any person or organization qualifying as such under Section V. Definitions.

Other words and phrases that appear in bold print have special meaning. See Section V. Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

## I. INSURING AGREEMENT - COVERAGE A: EXCESS FOLLOW FORM INSURANCE

A.  We will pay on behalf of the Insured those sums in excess of the total applicable limits of Scheduled Underlying Insurance that the Insured becomes legally obligated to pay as damages provided the damages would be covered by Scheduled Underlying Insurance, except for exhaustion of the total applicable limits of Scheduled Underlying Insurance by the payment of Loss.

B.  Coverage A shall follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. If any provisions of Scheduled Underlying Insurance conflict with any provisions of this policy, the provisions of this policy will apply.

C.  Coverage A of this policy will not, in any event, provide broader coverage than that provided by Scheduled Underlying Insurance.

D.  If we are prevented by law or statute from paying damages on behalf of the Insured, then we will indemnify the Insured for those sums in excess of the total applicable limits of Scheduled Underlying Insurance.

E.  The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

## II. INSURING AGREEMENT - COVERAGE B: UMBRELLA LIABILITY INSURANCE

A.  We will pay on behalf of the Insured those sums in excess of the Self-Insured Retention that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury not covered by Scheduled Underlying Insurance, provided that:

1.  the Bodily Injury or Property Damage is caused by an Occurrence happening anywhere; and the Bodily Injury or Property Damage occurs during the Policy Period.

2.  the Personal Injury or Advertising Injury is caused by an Occurrence happening anywhere; and the Occurrence takes place during the Policy Period.

B.  Coverage B will not apply to damages that would have been covered by Scheduled Underlying Insurance even if the total applicable limits of Scheduled Underlying Insurance have been exhausted by the payment of Loss.

Page 1 of 20
© 1999 American International Group, Inc.

EXHIBIT C - PAGE 127

C.    If we are prevented by law or statute from paying damages on behalf of the Insured, then we will indemnify the Insured for those sums in excess of the Self-Insured Retention.

D.    The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

---

**III.  DEFENSE PROVISIONS**

A.    We shall have the right and duty to defend any **Suit** against the **Insured** that seeks damages covered by this policy:

1.    under Coverage A, when the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss**.

2.    under Coverage B, when the damages sought because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** would not be covered by **Scheduled Underlying Insurance.**

We shall have the right and duty to defend any **Suit** against the **Insured** that seeks damages covered by this policy, even if the **Suit** is groundless, false or fraudulent.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B.    When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

1.    investigate, negotiate and settle the **Suit** as we deem expedient; and

2.    pay the following supplementary payments to the extent that such payments are not covered by **Scheduled Underlying Insurance:**

a.    premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

b.    premiums on appeal bonds required by law to appeal the **Suit,** but we are not obligated to apply for or furnish any such bond;

c.    all costs taxed against the **Insured** in the **Suit;**

d.    pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make a settlement offer within the applicable Limits of Insurance of this policy that is acceptable to the claimant, we will not pay any pre-judgment interest accruing after we make such offer;

e.    post-judgment interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

f.    the **Insured's** expenses incurred at our request or with our consent.

C.    Except as provided in Paragraph A. above, we shall have no duty to defend any **Suit** against the **Insured.** We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

D.    We will not defend any **Suit** or investigate any claim after the exhaustion of the applicable Limits of Insurance of this policy by the payment of **Loss.**

EXHIBIT C - PAGE 128

## IV.  LIMITS OF INSURANCE

A.  With respect to Coverages A and B, the Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

1.  Insureds;

2.  claims made or Suits brought against any or all Insureds;

3.  persons or organizations making claims or bringing Suits; or

4.  coverages provided under this policy.

B.  The General Aggregate Limit stated in Item 3 of the Declarations is the most we will pay for all damages under Coverage A and separately under Coverage B, except for:

1.  damages covered by the Products-Completed Operations Hazard; and

2.  damages covered by Scheduled Underlying Insurance to which no aggregate limit applies.

In addition, with respect to Coverage A only, if Scheduled Underlying Insurance contains an aggregate limit, other than an aggregate applying to the Products-Completed Operations Hazard, the General Aggregate Limit stated in Item 3 of the Declarations will apply in the same manner as the aggregate limit of any such Scheduled Underlying Insurance.

C.  The Products-Completed Operations Aggregate Limit stated in Item 3 of the Declarations is the most we will pay for all damages included in the Products-Completed Operations Hazard for Coverage A and Coverage B combined.

D.  Subject to Paragraphs B. and C. above, the Each Occurrence Limit stated in Item 3 of the Declarations is the most we will pay for the sum of all damages under Coverage A and Coverage B combined arising out of any one Occurrence.

E.  Coverage A applies only in excess of the total applicable limits of Scheduled Underlying Insurance. If, however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

1.  greater than the amount shown in such schedule, this policy will apply in excess of the greater amount; or

2.  less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

F.  Under Coverage A, if the total applicable limits of Scheduled Underlying Insurance are reduced or exhausted by the payment of Loss, we will:

1.  in the event of reduction, pay excess of the remaining total applicable limits of Scheduled Underlying Insurance; and

2.  in the event of exhaustion, continue in force as underlying insurance.

G.  Expenses incurred to defend any Suit or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy, unless otherwise provided by Scheduled Underlying Insurance.

H.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the Policy Period shown in the Declarations, unless the Policy Period is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

EXHIBIT C - PAGE 129

## V. DEFINITIONS

A.  **Advertisement** under Coverage B means a paid broadcast, publication or telecast to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

B.  **Advertising Injury** under Coverage B means injury, other than **Bodily Injury** or **Personal Injury**, arising solely out of your **Advertisement** as a result of one or more of the following offenses:

1.  slander or libel of a person or organization, or disparagement of a person's or organization's goods, products or services in your **Advertisement**;

2.  violation of a person's right of privacy in your **Advertisement**;

3.  misappropriation of another's advertising idea in your **Advertisement**; or

4.  infringement upon another's copyright, trademark or slogan in your **Advertisement**.

C.  **Auto** under Coverage B and under any exclusion in this policy applicable to Coverage A means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. **Auto** does not include **Mobile Equipment**.

D.  **Bodily Injury** under Coverage B and under any exclusion in this policy applicable to Coverage A means bodily injury, sickness, disability or disease, including death resulting from any of these at any time. **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

E.  **Hostile Fire** under Coverage B and under any exclusion in this policy applicable to Coverage A means a fire that becomes uncontrollable or breaks out from where it was intended to be.

F.  **Impaired Property** under Coverage B means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1.  it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.  you have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

1.  the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2.  your fulfilling the terms of the contract or agreement.

G.  **Insured** under Coverage A means:

1.  the Named Insured; and

2.  any person or organization that is an insured under **Scheduled Underlying Insurance**.

H.  **Insured** under Coverage B means:

1.  the Named Insured;

2.  if you are an individual, your spouse, but only with respect to the conduct of a business of which you are the sole owner;

3.  your partners, joint venture members, executive officers, employees, directors, stock-holders or volunteers while acting within the scope of their duties as such;

4.  any person or organization while acting as your real estate manager;

5.  your legal representative if you die, but only with respect to duties as such; and

EXHIBIT C - PAGE 130

6.    any person or organization to whom you are obligated by a written Insured Contract to provide insurance such as is afforded by this policy, but only with respect to their liability arising out of operations conducted by you or on your behalf.

Notwithstanding any of the above, no person or organization is an Insured with respect to the conduct of any current, past or newly formed partnership or joint venture that is not designated in Item 1 of the Declarations as a Named Insured.

I.    Insured Contract under Coverage B means that part of any contract or agreement pertaining to your business under which any Insured assumes the tort liability of another party to pay for Bodily Injury, Property Damage, Personal Injury or Advertising Injury to a third person or organization. However, the Bodily Injury, Property Damage, Personal Injury or Advertising Injury must arise out of an Occurrence that takes place subsequent to the execution of the Insured Contract. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Solely for the purposes of liability assumed under an Insured Contract, reasonable attorney's fees and necessary litigation expenses incurred by or for a party other than an Insured are deemed to be damages because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury, provided:

1.    liability to such party for that party's reasonable attorney's fees and necessary litigation expenses has also been assumed in the same Insured Contract; and

2.    such reasonable attorney's fees and necessary litigation expenses are for defense of that party against a Suit seeking damages covered by this policy.

J.    Loss under Coverages A and B means those sums actually paid as judgments and settlements and, under Coverage A if provided by Scheduled Underlying Insurance, expenses incurred to defend any Suit or to investigate any claim.

K.    Mobile Equipment under Coverage B and under any exclusion in this policy applicable to Coverage A means any of the following types of land vehicles, including any attached machinery or equipment:

1.    bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.    vehicles maintained for use solely on or next to premises you own or rent;

3.    vehicles that travel on crawler treads;

4.    vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

a.    power cranes, shovels, loaders, diggers or drills; or

b.    road construction or resurfacing equipment such as graders, scrapers or rollers;

5.    vehicles not described in Paragraph 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

a.    air compressors, pumps and generators including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

b.    cherry pickers and similar devices used to raise or lower workers;

6.    vehicles not described in Paragraph 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

EXHIBIT C - PAGE 131

However, self-propelled vehicles with the following types of permanently attached equipment are not Mobile Equipment, but will be considered Autos:

a.    equipment designed primarily for:

    i)    snow removal;

    ii)   road maintenance, but not construction or resurfacing; or

    iii)  street cleaning;

b.    cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c.    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

L.    **Named Insured under Coverage A** means any person or organization designated in Item 1 of the Declarations, and any person or organization that is a named insured or the equivalent thereof in **Scheduled Underlying Insurance**.

M.    **Named Insured under Coverage B** means:

1.    any person or organization designated in Item 1 of the Declarations;

2.    any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy and to which more specific insurance does not apply; and

3.    any organization, except for a partnership  or a joint venture, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%) and to which more specific insurance does not apply, provided that:

    a.    this policy does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury** or **Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization; and

    b.    you give us prompt notice after you acquire or form such organization.

A partnership or a joint venture that you acquire or form during the **Policy Period** may be added as an Insured only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

N.    **Occurrence under Coverage A** means the definition given to that term or the equivalent thereof in **Scheduled Underlying Insurance**.

O.    **Occurrence under Coverage B** means:

1.    as respects **Bodily Injury** or **Property Damage**, an accident, including continuous  or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially  the same general harmful conditions shall be deemed to arise out of one **Occurrence**.

2.    as respects **Personal Injury** or **Advertising Injury**, an offense arising out of your business that causes **Personal Injury** or **Advertising Injury**. All damages that arise from the same or related injurious material or act shall be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition  thereof, the number and kind of media used and the number of claimants.

P.    **Other Insurance under  Coverages A  and B** means a policy of insurance providing coverage for damages covered in whole or in part by this policy.

EXHIBIT C - PAGE 132

However, **Other Insurance** does not include Scheduled Underlying Insurance, the Self-Insured Retention or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

Q.  **Personal Injury** under Coverage B means injury arising out of your business, other than Bodily Injury or Advertising Injury, caused by one or more of the following offenses:

1.  false arrest, detention or imprisonment;

2.  malicious prosecution;

3.  the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4.  oral, written or electronic publication of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

5.  oral, written or electronic publication of material that violates a person's right of privacy; or

6.  discrimination or humiliation that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is:

    a.  not done intentionally by or at the direction of any Insured; and

    b.  not directly or indirectly related to the employment, prospective employment or termination of employment of any person or persons by any Insured.

R.  **Policy Period** under Coverages A and B means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of termination of this policy.

S.  **Pollutants** under Coverage B and under any exclusion in this policy applicable to Coverage A means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

T.  **Products-Completed Operations Hazard** under Coverage B and under any exclusion in this policy applicable to Coverage A means all Bodily Injury and Property Damage occurring away from premises you own or rent and arising out of Your Product or Your Work except:

1.  products that are still in your physical possession; or

2.  work that has not yet been completed or abandoned. However, Your Work will be deemed completed at the earliest of the following times:

    a.  when all of the work called for in your contract has been completed;

    b.  when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

    c.  when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**Products-Completed Operations Hazard** does not include Bodily Injury or Property Damage arising out of:

EXHIBIT C - PAGE 133

1.   the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any Insured; or

2.   the existence of tools, uninstalled equipment or abandoned or unused materials.

U.   **Property Damage** under Coverage B and under any exclusion in this policy applicable to Coverage A means:

1.   physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.   loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **Occurrence** that caused it.

V.   **Scheduled Underlying Insurance** under Coverages A and B means:

1.   the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy; and

2.   automatically any renewal or replacement of any policy in Paragraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

W.   **Self-Insured Retention** under Coverage B means the amount applicable to each occurrence for which the Insured is responsible that is shown in Item 4 of the Declarations.

X.   **Suit** under Coverages A and B means a civil proceeding seeking damages covered by this policy. **Suit** includes:

1.   an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

2.   any other alternative dispute resolution proceeding in which such damages are claimed and to which the Insured submits with our consent.

Y.   **Your Product** under Coverage B and under any exclusion in this policy applicable to Coverage A means:

1.   any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a.   you;

   b.   others trading under your name; or

   c.   a person or organization whose business or assets you have acquired; and

2.   containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1.   warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2.   the providing of or failure to provide warnings or instructions.

73756 (5/99)
AH0048

EXHIBIT C - PAGE 134

Your Product does not include vending machines or other property rented to or located for the use of others but not sold.

Z.   Your Work under Coverage B and under any exclusion in this policy applicable to Coverage A means:

1.   work or operations performed by you or on your behalf; and

2.   materials, parts or equipment furnished in connection with such work or operations.

Your Work includes:

1.   warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of Your Work; and

2.   the providing of or failure to provide warnings or instructions.

---

## VI.  EXCLUSIONS

A.   Asbestos

Under Coverages A and B, this insurance does not apply to any liability arising out of:

1.   the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

2.   any obligation of the Insured to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.   any obligation to defend any Suit or claim against the Insured that seeks damages if such Suit or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

B.   Various Laws

Under Coverages A and B, this insurance does not apply to any obligation of the Insured under any of the following:

1.   the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revision thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world; or

2.   any Workers' Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law.

C.   Securities

Under Coverages A and B, this insurance does not apply to any liability arising out of:

1.   the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

2.   any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

3.   any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

Page 9 of 20
© 1999 American International Group, Inc.

EXHIBIT C – PAGE 135

D.   **Employment Practices**

Under Coverages A and B, this insurance does not apply to any liability arising out of:

1.   failure to hire any prospective employee or any applicant for employment;

2.   termination of any employee;

3.   failure to promote or advance any employee; or

4.   employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at a present, past, future or prospective employee.

This exclusion applies:

1.   whether the Insured may be liable as an employer or in any other capacity; and

2.   to any obligation to share damages with or repay someone else who must pay damages because of the injury.

E.   **Care, Custody and Control**

Under Coverages A and B, this insurance does not apply to Property Damage to:

1.   property you own, rent or occupy;

2.   premises you sell, give away or abandon if the Property Damage arises out of any part of those premises;

3.   property loaned to you;

4.   personal property in the care, custody or control of the Insured;

5.   that particular part of real property on which you or any contractors working directly or indirectly on your behalf are performing operations if the Property Damage arises out of those operations; or

6.   that particular part of any property that must be restored, repaired or replaced because Your Work was incorrectly performed on it.

Paragraph 2. of this exclusion does not apply if the premises are Your Work and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to Property Damage included in the Products-Completed Operations Hazard.

F.   **Nuclear Liability**

Under Coverages A and B, this insurance does not apply to:

1.   any liability:

a.   with respect to which the Insured is also an Insured under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability;

b.   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2)

73756 (5/99)
AH0048

© 1999 American International Group, Inc.

EXHIBIT C - PAGE 136

the Insured is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

c.  resulting from the hazardous properties of nuclear material if:

i)  the nuclear material (1) is at any nuclear facility owned by the Insured or operated by the Insured or on the Insured's behalf or (2) has been discharged or dispensed therefrom;

ii)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the Insured or on the Insured's behalf; or

iii)  the injury or damage arises out of the furnishing by the Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion iii. applies only to Property Damage to such nuclear facility and any property thereat.

2.  As used in this exclusion:

a.  "hazardous properties" includes radioactive, toxic or explosive properties;

b.  "nuclear material" means source material, special nuclear material or by-product material;

c.  "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

d.  "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

e.  "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

f.  "nuclear facility" means:

i)  any nuclear reactor;

ii)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

iii)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the Insured's custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

iv)  any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

g.  "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

EXHIBIT C - PAGE 137

h.    **Property Damage** includes all forms of radioactive contamination of property.

G.    **Pollution - Coverage A**

Under Coverage A, this insurance does not apply to:

1.    any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**:

    a.    at or from any premises, site or location that is or was at any time owned or occupied by, or rented or loaned to, any **Insured**;

    b.    at or from any premises, site or location that is or was at any time used by or for any **Insured** or others for the handling, storage, disposal, processing or treatment of waste;

    c.    that are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **Insured** or any person or organization for whom you may be legally responsible;

    d.    at or from any premises, site or location on which any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured's** behalf are performing operations if the **Pollutants** are brought on or to the premises, site or location in connection with such operations by such **Insured**, contractor or subcontractor;

    e.    at or from any premises, site or location on which any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured's** behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of **Pollutants**;

    f.    that are contained in any property that is:

        i)    being transported or towed by, handled or handled for movement into, onto or from an **Auto** covered by **Scheduled Underlying Insurance**;

        ii)    otherwise in the course of transit by or on behalf of the **Insured**; or

        iii)    being stored, disposed of, treated or processed in or upon an **Auto** covered by **Scheduled Underlying Insurance**;

    g.    i)    before the **Pollutants** or any property in which the **Pollutants** are contained are moved from the place where they are accepted by the **Insured** for movement into or onto an **Auto** covered by **Scheduled Underlying Insurance**; or

        ii)    after the **Pollutants** or any property in which the **Pollutants** are contained are moved from the **Auto** covered by **Scheduled Underlying Insurance** to the place where they are finally delivered, disposed of or abandoned by the **Insured**.

2.    any loss, cost or expense arising out of any:

    a.    request, demand order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **Pollutants**; or

    b.    claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of **Pollutants**.

EXHIBIT C - PAGE 138

However, the following exceptions to Paragraph 1. of this Pollution exclusion for Coverage A shall apply:

1) **Products-Completed Operations Hazard:** Paragraphs 1a through 1d of this exclusion do not apply with respect to Bodily Injury or Property Damage included within the Products-Completed Operations Hazard provided that Your Product or Your Work has not at any time been:

   a)   discarded, dumped, abandoned, thrown away; or

   b)   treated or handled as waste;

   by anyone.

2) **Hostile Fire:** Paragraphs 1a and 1d do not apply with respect to Bodily Injury or Property Damage arising out of heat, smoke or fumes from a Hostile Fire.

3) **Equipment to Heat the Building and Contractor/Lessee Operations:** Paragraph 1a of this exclusion does not apply to:

   a)   Bodily Injury sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat the building; or

   b)   Bodily Injury or Property Damage for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional Insured with respect to your ongoing operations performed for that additional Insured at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any Insured, other than the additional Insured.

4) **Fuels, Lubricants and Other Operating Fluids - Mobile Equipment:** Paragraph 1d of this exclusion does not apply to:

   a)   Bodily Injury or Property Damage arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of Mobile Equipment or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the Bodily Injury or Property Damage arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor; or

   b)   Bodily Injury or Property Damage sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5) **Fuels, Lubricants, Fluids, etc. - Auto:** Paragraph 1f of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar Pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an Auto covered by Scheduled Underlying Insurance or its parts if:

   a)   the Pollutants escape, seep, migrate or are discharged, dispersed or released directly from an Auto part designed by its manufacturer to hold, store, receive or dispose of such Pollutants; and

EXHIBIT C - PAGE 139

> b) the **Bodily Injury** or **Property Damage** does not arise out of the operation of any equipment listed in Paragraphs 6b and 6c of the definition of **Mobile Equipment**.

6) **Upset, Overturn or Damage of an Auto**: Paragraph 1g of this exclusion does not apply to **Occurrences** that take place away from premises owned by or rented to an **Insured** with respect to **Pollutants** not in or upon an **Auto** covered by **Scheduled Underlying Insurance** if:

> a) the **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **Auto** covered by **Scheduled Underlying Insurance**; and

> b) the discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

**H.** **Pollution - Coverage B**

Under Coverage B, this insurance does not apply to:

1. **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Liability** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere in the world;

2. any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or assess the effects of **Pollutants**; or

3. any loss, cost or expense, including but not limited to costs of investigation or attorney's fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**.

**I.** **Damage to Impaired Property**

Under Coverage B, this insurance does not apply to **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1. a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

**J.** **Damage to Your Product**

Under Coverage B, this insurance does not apply to **Property Damage** to **Your Product** arising out of it or any part of it.

**K.** **Damage to Your Work**

Under Coverage B, this insurance does not apply to **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**L.** **Product Recall**

Under Coverage B, this insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**EXHIBIT C - PAGE 140**

   1.    **Your Product**

   2.    **Your Work; or**

   3.    **Impaired Property;**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

M.   **Employee to Employee**

Under Coverage B, this insurance does not apply to liability of any employee with respect to **Bodily Injury** or **Personal Injury** to another employee of the same employer injured in the course of such employment.

N.   **Willful Violation, Falsity, Prior Publication, Criminal, Assumed Liability**

Under Coverage B, this insurance does not apply to **Personal Injury** or **Advertising Injury:**

   1.    caused by or at the direction of any **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury** or **Advertising Injury;**

   2.    arising out of oral, written or electronic publication of material if done by or at the direction of any **Insured** with knowledge of its falsity;

   3.    arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the **Policy Period;**

   4.    arising out of a criminal act committed by or at the direction of any **Insured;** or

   5.    for which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

O.   **Various Advertising**

Under Coverage B, this insurance does not apply to **Advertising Injury:**

   1.    arising out of a breach of contract, except an implied contract to use another's advertising idea;

   2.    arising out of the failure of goods, products or services to conform with any statement of quality or performance made;

   3.    arising out of the wrong description of the price of goods, products or services; or

   4.    committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

P.   **Watercraft, Aircraft**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

Q.   **War**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

73756 (5/99)
AH0048

EXHIBIT C - PAGE 141

R.  **Expected or Intended**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the Insured. However, this exclusion does not apply to:

1.  **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property; or

2.  liability of the Named Insured for damages as the result of an act committed by the Named Insured's employee(s), which results in **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the Named Insured's employee(s), provided such act was not committed at the direction of the Named Insured.

S.  **Liquor Liability**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** for which any Insured may be held liable by reason of:

1.  causing or contributing to the intoxication of any person;

2.  the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.  any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

T.  **"No-Fault," "Uninsured Motorist" or "Underinsured Motorist" Laws**

Under Coverage B, this insurance does not apply to any obligation of the Insured under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law.

---

**VII.  CONDITIONS - APPLICABLE TO COVERAGES A AND B**

A.  **Appeals**

If the Insured or the Insured's underlying insurers do not appeal a judgment in excess of the total applicable limits of Scheduled Underlying Insurance, we may elect to do so. If we appeal, we shall be liable for, in addition to the applicable Limits of Insurance of this policy, all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal.

B.  **Audit**

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three (3) years after the expiration or termination of this policy.

C.  **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of Loss covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under Scheduled Underlying Insurance.

D.  **Cancellation**

1.  You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

EXHIBIT C - PAGE 142

2.    We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.    The Policy Period will end on the day and hour stated in the cancellation notice.

4.    If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final Premium will not be less than the pro rata share of the Minimum Premium shown in Item 5 of the Declarations.

5.    If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium shown in Item 5 of the Declarations.

6.    Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

7.    The first Named Insured in Item 1 of the Declarations shall act on behalf of all other Insureds with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.    Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy Is changed by this statement to comply with that law.

E.    **Changes**

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy. This policy can be changed only by a written endorsement that we make to this policy.

F.    **Duties In the Event of an Occurrence, Claim or Suit**

1.    You must see to it that we are notified as soon as practicable of an Occurrence that may result in a claim or Suit under this policy. To the extent possible, notice should include:

    a.    how, when and where the Occurrence took place;

    b.    the names and addresses of any injured persons and any witnesses; and

    c.    the nature and location of any injury or damage arising out of the Occurrence.

2.    If a claim is made or Suit is brought against any Insured which is reasonably likely to involve this policy, you must notify us in writing:

    a.    under Coverage A, as soon as practicable and in accordance with the reporting provisions of Scheduled Underlying Insurance.

    b.    under Coverage B, as soon as practicable.

Written notice should be mailed or delivered to: AIG Excess Casualty Claim Department, 70 Pine Street, New York, NY 10270.

3.    You and any other involved Insured must:

    a.    immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or Suit;

EXHIBIT C - PAGE 143

   b. authorize us to obtain records and other information;

   c. cooperate with us in the investigation, settlement or defense of the claim or Suit; and

   d. assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the Insured because of injury or damage to which this insurance may also apply.

  4. No Insureds will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

**G.** Headings

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

**H.** Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions that we find. We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

**I.** Knowledge of Occurrence or Claim

Knowledge of an Occurrence, claim or Suit by your agent, servant or employee shall not in itself constitute knowledge by you, unless a principal of yours shall have received notice of such Occurrence, claim or Suit from said agent, servant or employee.

**J.** Legal Actions Against Us

There will be no right of action against us under this insurance unless:

  1. you have complied with all the terms of this policy; and

  2. the amount you owe has been determined with our consent or by actual trial and final judgment.

**K.** Maintenance of Scheduled Underlying Insurance

During the Policy Period, you agree:

  1. to keep Scheduled Underlying Insurance in full force and effect;

  2. that the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance will not materially change;

  3. that the total applicable limits of Scheduled Underlying Insurance shall not decrease, except for any reduction or exhaustion of aggregate limits by payment of Loss; and

  4. that any renewals or replacements of Scheduled Underlying Insurance will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have had you fully complied with these requirements.

EXHIBIT C - PAGE 144

**L.**  **Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the Other Insurance. However, this provision will not apply if the **Other Insurance** is specifically written to be excess of this policy.

**M.**  **Premium**

The first Named Insured designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

The premium for this policy shall be computed on the basis set forth in Item 5 of the Declarations. At the beginning of the **Policy Period**, you must pay us the Advance Premium shown in Item 5 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event, we shall retain the Minimum Premium as shown in Item 5 of the Declarations for each twelve months of the **Policy Period**.

**N.**  **Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first Named Insured designated in Item 1 of the Declarations, this insurance applies:

1.  as if each Named Insured were the only Named Insured; and

2.  separately to each Insured against whom claim is made or Suit is brought.

**O.**  **Transfer of Rights of Recovery**

1.  If any Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The Insured must do nothing after loss to impair these rights and must help us enforce them.

2.  Any recoveries shall be applied as follows:

    a.  any person or organization, including the Insured, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

    b.  we then will be reimbursed up to the amount we have paid; and

    c.  lastly, any person or organization, including the Insured that has paid an amount over which this policy is excess is entitled to claim the remainder.

    Expenses incurred in the exercise of rights of recovery shall be apportioned among the persons or organizations, including the Insured, in the ratio of their respective recoveries as finally settled.

3.  If, prior to the time of an Occurrence, you and the insurer of Scheduled **Underlying Insurance** waive any right of recovery against a specific person or organization for injury or damage as required under an Insured Contract, as that term is defined under Coverage B, we will also waive any rights we may have against such person or organization.

**P.**  **Transfer of Your Rights and Duties**

Your rights and duties under this policy may not be transferred without our written consent.

EXHIBIT C - PAGE 145

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first Named Insured designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

Q.    **Unintentional Failure to Disclose**

Your failure to disclose all hazards existing as of the inception date of the policy shall not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

R.    **When Damages are Payable**

We will not make any payment under this policy unless and until:

1.    under Coverage A, the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss**.

2.    under Coverage B, the Self-Insured Retention has been exhausted by the payment of **Loss.**

When the amount of Loss has finally been determined, we will promptly pay on behalf of the Insured the amount of such Loss within the applicable Limits of Insurance of this policy.

You shall promptly reimburse us for any amount within the Self-Insured Retention paid by us on behalf of the Insured.

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives, where required by law.

President
American Home Assurance Company

President
American International South
Insurance Company

President
National Union Fire Insurance
Company of Pittsburg, PA

President
Illinois National Insurance Company

President
National Union Fire Insurance
Company of Louisiana

Secretary
American Home Assurance Company
American International South
Insurance Company
National Union Fire Insurance
Company of Pittsburg, PA
Illinois National Insurance Company
National Union Fire Insurance
Company of Louisiana

73756 (5/99)
AH0048

Page 20 of 20
© 1999 American International Group, Inc.

**EXHIBIT C - PAGE 146**

## FORMS SCHEDULE

Named Insured:      ABC INTERNATIONAL TRADERS, INC. ISAAC LARIAN
Policy Number:      BE    7408285
Effective 12:01 AM:    January 1, 2001

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | AMERICAN INTERNATIONAL CO'S | 73757 | (02/99) |
| | UMB ELITE COMM UMB LIAB POL FORM | 73756 | (05/99) |
| 1 | CA AMEND | 72815 | (06/99) |
| 2 | CRISIS RESPONSE AND EXCESS CASUALTY FUND | 72728 | (11/99) |
| 3 | EMPLOYEE BENEFITS LIABILITY EXCLUSION / COV B | 72850 | (01/00) |
| 4 | EMPLOYERS LIAB EXCL APP TO COV B | 72741 | (03/99) |
| 5 | FOREIGN LIAB EXCL APP COV B | 72756 | (03/99) |
| 6 | PROFESSIONAL SERVICES EXCL APP COV A&B | 72781 | (03/99) |
| 7 | AUTOMOBILE LIAB EXCL APP COV B | 72722 | (03/99) |

CIFMSC
CI0226

EXHIBIT C - PAGE 147

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: ABC INTERNATIONAL TRADERS, INC. ISAAC LARIAN          Policy Number: BE    7408285

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| GENERAL LIABILITY | EVANSTON INSURANCE CO. 00GLP1005176 01/01/01 01/01/02 | $1,000,000 EACH OCCURRENCE $2,000,000 GENERAL AGGREGATE $1,000,000 PRODUCTS/COMPLETED OPERATIONS AGGREGATE |
| FOREIGN GENERAL LIABILITY | FIDELITY & CASUALTY CO. OF NY PST194233686 01/01/01 01/01/02 | $1,000,000 POLICY LIMIT |
| AUTO LIABILITY | THE HARTFORD 72UUNGJ4408 01/01/01 01/01/02 | $1,000,000 COMBINED SINGLE LIMIT |
| FOREIGN AUTO LIABILITY | FIDELITY & CASUALTY CO. OF NY PST194233686 01/01/01 01/01/02 | $1,000,000 COMBINED SINGLE LIMIT |
| EMPLOYERS LIABILITY | LEGION WC1-1528813 01/01/01 01/01/02 | $1,000,000 EACH ACCIDENT $1,000,000 POLICY LIMIT $1,000,000 EACH EMPLOYEE |
| FOREIGN EMPLOYERS LIABILITY | FIDELITY & CASUALTY CO. OF NY PST194233686 01/01/01 01/01/02 | $1,000,000 EACH ACCIDENT $1,000,000 EACH EMPLOYEE $1,000,000 POLICY LIMIT FOR DISEASE |

UNDSCH (5/99)
AH0006

EXHIBIT C - PAGE 148

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: ABC INTERNATIONAL TRADERS, INC. ISAAC LARIAN          Policy Number: BE    7408285

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| EMPLOYEE BENEFITS LIABILITY | EVANSTON 00GLP1005176 01/01/01 01/01/02 | $1,000,000 EACH CLAIM $1,000,000 AGGREGATE |

AUTHORIZED REPRESENTATIVE

UNDSCH (5/99)
AH0006

EXHIBIT C - PAGE 149

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: ABC INTERNATIONAL TRADERS, INC. ISAAC LARIAN          Policy Number: BE     7408285

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

| TYPE OF POLICY OR COVERAGE | LIMITS |
|---|---|
| GENERAL LIABILITY | $1,000,000 EACH OCCURRENCE $2,000,000 GENERAL AGGREGATE $1,000,000 PRODUCTS/COMPLETED OPERATIONS AGGREGATE |
| FOREIGN GENERAL LIABILITY | $1,000,000 POLICY LIMIT |
| AUTO LIABILITY | $1,000,000 COMBINED SINGLE LIMIT |
| FOREIGN AUTO LIABILITY | $1,000,000 COMBINED SINGLE LIMIT |
| EMPLOYERS LIABILITY | $1,000,000 EACH ACCIDENT $1,000,000 POLICY LIMIT $1,000,000 EACH EMPLOYEE |
| FOREIGN EMPLOYERS LIABILITY | $1,000,000 EACH ACCIDENT $1,000,000 EACH EMPLOYEE $1,000,000 POLICY LIMIT FOR DISEASE |

UNDSCH (5/99)
AH0651

EXHIBIT C - PAGE 150

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: ABC INTERNATIONAL TRADERS, INC. ISAAC LARIAN          Policy Number:  BE    7408285

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

TYPE OF POLICY
OR COVERAGE                                   LIMITS

EMPLOYEE BENEFITS LIABILITY                   $1,000,000
                                             EACH CLAIM
                                             $1,000,000
                                             AGGREGATE

_____
AUTHORIZED REPRESENTATIVE

UNDSCH (5/99)
AH0651

EXHIBIT C - PAGE 151

ENDORSEMENT No. 1

**This endorsement, effective 12:01 AM:** January 1, 2001

Forms a part of policy no.:  BE    7408285

Issued to:  ABC INTERNATIONAL TRADERS, INC. ISAAC LARIAN

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**UMBRELLA ELITE℠**
**Commercial Umbrella Liability Policy**

**California Amendatory Endorsement**
**Applicable to Coverages A and B**

This policy is amended as follows:

I.    Section VII. Conditions Applicable to Coverages A and B, Condition D. Cancellation is deleted in its entirety and replaced by the following:

D.    Cancellation

1.    You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.    New Policies in Effect for Sixty (60) Days or Less:

We may cancel this policy. If we cancel because of non-payment of premium, we must mail to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations shall be sufficient to prove notice. Such notice will include the reason or reasons for cancellation.

3.    New Policies in Effect for More Than Sixty (60) Days and Any Renewal Policy:

We may not cancel this policy unless the cancellation is based on one or more of the following reasons:

a.    Non-payment of premium, including payment due on a prior policy issued by us and due during the **Policy Period** covering the same risks;

b.    A judgment by a court or an administrative tribunal that you have violated any law of this state or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against;

c.    Discovery of fraud or material misrepresentation by either of the following:

i.    You or other Insureds or your representative in obtaining this policy; or

ii.    You or your representative in pursuing a claim under this policy.

d.    Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or other Insureds or a representative of same, which materially increase any of the risks insured against;

EXHIBIT C - PAGE 152

e.  Failure by you or other Insureds or a representative of same to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan if the failure materially increases any of the risks insured against;

f.  A determination by the commissioner that the loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency;

g.  A determination by the commissioner that a continuation of this policy's coverage could place us in violation of the laws of this state or the state of our domicile or that the continuation of coverage would threaten our solvency;

h.  A change by you or other Insureds or a representative of same in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk or a materially changed risk, unless the added, increased or changed risk is included in this policy;

i.  A material change in limits, type or scope of coverage or exclusions in Scheduled Underlying Insurance;

j.  Cancellation or nonrenewal of any Scheduled Underlying Insurance where such insurance is not replaced without lapse; or

k.  A reduction in financial rating or grade of one or more insurers issuing any Scheduled Underlying Insurance based on an evaluation obtained from a recognized financial rating organization.

If we cancel because of non-payment of premium or fraud, we must mail or deliver to you and to the producer of record not less then ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any of the other reasons listed above, we must mail or deliver to you and to the producer of record not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice. Such notice will include the reason or reasons for cancellation.

4.  The Policy Period will end on the day and hour stated in the cancellation notice.

5.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 5 of the Declarations.

6.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 5 of the Declarations.

7.  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

8.  The first Named Insured in Item 1 of the Declarations shall act on behalf of all other Insureds with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

72815 (6/99)
AH0563

Page 2 of 3

**EXHIBIT C - PAGE 153**

9.    Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

II.    Section VII. Conditions-Applicable to Coverages A and B, is amended to include the following provision:

**Nonrenewal**

If we decide not to renew this policy, we shall mail or deliver to the producer of record and to you at the mailing address shown in the policy a notice of nonrenewal at least sixty (60) days, but no more than one hundred twenty (120) days prior to the end of the **Policy Period**. The notice shall contain the reason or reasons for nonrenewal of this policy.

III.    Section VII. Conditions-Applicable to Coverages A and B, is amended to include the following provision:

**Increase In Premium, Reduction In Limits or Change In Conditions of Coverage**

If this policy has been in effect for more than sixty (60) days or if this policy is a renewal, effective immediately no increase in premium, reduction in limits, or change in the conditions of coverage shall be effective during the **Policy Period** unless based upon one of the following reasons:

1.    Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards by you or other **Insureds** which materially increase any of the risks or hazards insured against;

2.    Failure by you or other **Insureds** to implement reasonable loss control requirements which were agreed to by you as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan, if the failure materially increases any of the risks insured against;

3.    A determination by the commissioner that loss of or changes in our reinsurance covering all or part of the risk covered by the policy would threaten our financial integrity or solvency unless the change in the terms or conditions or rate upon which the premium is based is permitted; or

4.    A change by you or other **Insureds** in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk, or a materially changed risk, unless the added, increased, or changed risk is included in this policy.

Written notice shall be mailed or delivered to the producer of record and to you at the mailing address shown in this policy at least thirty (30) days prior to the effective date of any increase, reduction or change.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (in States Where
Applicable)

72815 (6/99)                          Page 3 of 3
AH0563

EXHIBIT C - PAGE 154

ENDORSEMENT No. 2

This endorsement, effective 12:01 AM:   January 1, 2001

Forms a part of policy no.:  BE     7408285

Issued to:   ABC INTERNATIONAL TRADERS, INC. ISAAC LARIAN

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE** SM
**Commercial Umbrella Liability Policy**

CrisisResponse SM **and Excess Casualty CrisisFund** SM

(Advancement of CrisisResponse Costs during a Crisis Management Event and
Crisis Communications Management Insurance)

---

Additional Declarations

| | | |
|---|---|---|
| Item 1. | CrisisResponse Sublimit of Insurance: $250,000 | Each Crisis Management Event And Aggregate |
| Item 2. | Crisis Management Limit of Insurance: $50,000 | Each Crisis Management Event And Aggregate |
| Item 3. | Premium:                                    INCLUDED | |

---

This policy is amended to provide for Advancement of CrisisResponse Costs during a Crisis Management Event and Crisis Communications Management Insurance pursuant to the terms, definitions, conditions and exclusions set forth below:

**I.   INSURING AGREEMENTS** - CrisisResponse and Excess Casualty CrisisFund

The following insuring agreements section is added to this policy for the purpose of the coverage provided by this endorsement:

A.   Advancement of CrisisResponse Costs during a CrisisManagement Event

We will advance on behalf of the Named Insured CrisisResponse Costs that may be associated with damages covered by this policy arising from a Crisis Management Event first commencing during the Policy Period, up to the amount of the CrisisResponse Sublimit of Insurance.

We will advance CrisisResponse Costs that may be associated with damages covered by this policy directly to third parties.

B.   Crisis Communications Management Insurance

We will pay on behalf of the Named Insured Crisis Management Loss arising from a Crisis Management Event first commencing during the Policy Period, up to the amount of the Crisis Management Limit of Insurance.

C.   A Crisis Management Event shall first commence at the time during the Policy Period when a Key Executive first becomes aware of an Occurrence that gives rise to a Crisis Management Event and shall end at the earliest of the time when we determine

72728 (11/99)
AH0540

© 1999 American International Group, Inc.

Page 1 of 5

EXHIBIT C - PAGE 155

that a crisis no longer exists or when the CrisisResponse Sublimit of Insurance and/or the Crisis Management Limit of Insurance, whichever applies, has been exhausted.

D.    There shall be no Scheduled Underlying Insurance or Self-Insured Retention amount applicable to CrisisResponse Costs or Crisis Management Loss. We shall pay such CrisisResponse Costs or Crisis Management Loss from first dollar, subject to the other terms and conditions of this endorsement.

## II. LIMITS OF INSURANCE

The following provisions are added to Section IV. Limits of Insurance for the purpose of the coverage provided by this endorsement:

A.    The CrisisResponse Sublimit of Insurance is the most we will pay for all CrisisResponse Costs under this policy, regardless of the number of Crisis Management Events first commencing during the Policy Period. This CrisisResponse Sublimit of Insurance shall be part of, not in addition to, the Limits of Insurance shown in Item 3 of the Declarations of this policy.

B.    The Crisis Management Limit of Insurance is the most we will pay for all Crisis Management Loss under this policy, regardless of the number of Crisis Management Events first commencing during the Policy Period. This Crisis Management Limit of Insurance shall be in addition to the Limits of Insurance shown in Item 3 of the Declarations of this policy.

C.    We will have no obligation to advance CrisisResponse Costs or to pay Crisis Management Loss from the earliest of the time when we determine that a Crisis Management Event has ended or when the CrisisResponse Sublimit of Insurance and/or the Crisis Management Limit of Insurance, whichever applies, has been exhausted.

## III. DEFINITIONS

The following definitions are added to Section V. Definitions for the purpose of the coverage provided by this endorsement:

A.    Crisis Management Event means an Occurrence that in the good faith opinion of a Key Executive of the Named Insured, in the absence of Crisis Management Services, has reasonably been associated with or may be associated with:

1.    damages covered by this policy under Coverage A that are in excess of the applicable limits of Scheduled Underlying Insurance shown in the Schedule of Underlying Insurance forming a part of this policy or under Coverage B that are in excess of the Self-Insured Retention; and

2.    significant adverse regional or national media coverage.

Crisis Management Event shall include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals.

B.    Crisis Management Firm means any public relations firm or crisis management firm approved by us that is hired by the Named Insured to perform Crisis Management Services in connection with a Crisis Management Event. Attached to and forming a part of this endorsement is a Schedule of firms that have been pre-approved by us and may be hired by the Named Insured without further approval by us.

EXHIBIT C - PAGE 156

C.   Crisis Management **Limit of** Insurance means the Crisis Management Limit of Insurance shown in Item 2 of the Additional Declarations of this endorsement.

D.   Crisis Management Loss means the following amounts incurred during a Crisis Management Event:

1.   Amounts for the reasonable and necessary fees and expenses incurred by a Crisis Management **Firm** in the performance of Crisis Management Services for the Named Insured solely arising from a covered Crisis Management Event; and

2.   Amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the Named Insured or a Crisis Management **Firm** incurred at the direction of a Crisis Management Firm, solely arising from a covered Crisis Management Event.

E.   Crisis Management **Services** means those services performed by a Crisis Management Firm In advising the Named Insured on minimizing potential harm to the Named Insured from a covered Crisis Management Event by maintaining and restoring public confidence in the Named Insured.

F.   CrisisResponse Costs means the following reasonable and necessary expenses incurred during a Crisis Management Event directly caused by a Crisis Management Event, provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

1.   Medical expenses;

2.   Funeral expenses;

3.   Psychological counseling;

4.   Travel expenses;

5.   Temporary living expenses;

6.   Expenses to secure the scene of a Crisis Management Event; and

7.   Any other expenses pre-approved by the Company.

CrisisResponse Costs will not include defense costs or Crisis Management Loss.

G.   CrisisResponse **Sublimit** of Insurance means the CrisisResponse Sublimit of Insurance shown in Item 1 of the Additional Declarations of this endorsement.

H.   Key **Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the Named Insured is a partnership) of the Named Insured or sole proprietor (if the Named Insured is a sole proprietorship). A Key Executive also means any other person designated as such and scheduled by written endorsement.

## IV.   EXCLUSIONS

The following exclusions are added to Section VI. Exclusions for the purpose of the coverage provided by this endorsement:

This insurance shall not apply to any CrisisResponse Costs or Crisis Management Loss in connection with a Crisis Management Event:

A.   arising out of, based upon or attributable to the facts alleged, or to the same or related acts alleged or contained, in any crisis or claim that has been reported, or in any

EXHIBIT C - PAGE 157

circumstances where notice has been given, under any policy of which (i) this policy is a renewal or replacement or which it may succeed in time, or (ii) any underlying policy, which is listed in the Schedule of Underlying Insurance, is a renewal or replacement or which it may succeed in time;

B.   arising out of, based upon or attributable to any pending or prior crisis, claim, or Suit as of the inception date of this policy;

C.   arising directly or indirectly out of:

    1.   any actual or alleged failure, malfunction or inadequacy of:

        a.   any of the following, whether belonging to any Named Insured or to others:

            (1)   computer hardware, including microprocessors;

            (2)   computer application software;

            (3)   computer operating systems and related software;

            (4)   computer networks;

            (5)   microprocessors (computer chips) not part of any computer system; or

            (6)   any other computerized or electronic equipment or components; or

        b.   any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph C1a of this exclusion

        due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

    2.   any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or on behalf of the Insured to determine, rectify or test for any potential or actual problems described in Paragraph C1 of this exclusion.

---

**V.   CONDITIONS**

The following conditions are added to Section VII. Conditions-Applicable to Coverages A and B for the purpose of the coverage provided by this endorsement:

A.   You must report any Crisis Management Event to us within twenty-four (24) hours of the time that a Key Executive first becomes aware of an Occurrence that gives rise to a Crisis Management Event to be eligible for the advancement of CrisisResponse Costs and the payment of Crisis Management Loss.

Notice of a Crisis Management Event may be given by calling 1-877-AIG-3100. If notice is given by telephone, written notice shall be given as soon as practicable thereafter. Written notice should include:

    1:   how, when and where the Crisis Management Event is taking or took place;

    2.   the names and addresses of any injured persons and any witnesses; and

    3.   the nature and location of any injury or damage arising out of the Crisis Management Event.

Written notice should be mailed or delivered to:

EXHIBIT C - PAGE 158

AIG Excess Casualty Claim Department
175 Water Street
New York, NY 10038

B.  There shall be no requirement that you obtain prior written approval from us before incurring any Crisis Management Loss, provided that the Crisis Management Firm selected by you to perform the Crisis Management Services has been approved by us. If you choose to retain a firm that does not appear in the Schedule attached to and forming a part of this endorsement, you must obtain our consent, which shall remain in our sole discretion, prior to retaining the services of such firm.

C.  Any payments for Crisis Management Loss or advancement of CrisisResponse Costs that we make under this endorsement:

1.  shall not be deemed to be a determination of the Insured's liability with respect to any claim or Suit that results from a Crisis Management Event; and

2.  shall not create any duty to defend any Suit or to investigate any claim arising from a Crisis Management Event, nor any coverage obligations under this policy.

D.  If the Crisis Communications Management Insurance provided by this endorsement and any other insurance issued to the Named Insured by us or any of our affiliated companies shall apply to the same crisis or claim, the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy or endorsement. This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically to apply as excess insurance over this endorsement.

E.  In the event of a dispute between the Named Insured and us as to whether a Crisis Management Event has occurred, the Named Insured may, at its own cost, retain the services of an approved Crisis Management Firm and/or advance CrisisResponse Costs. Provided, however, if the Named Insured elects to retain an approved Crisis Management Firm or to advance CrisisResponse Costs, we shall have no obligation to reimburse under this endorsement the Named Insured for such costs or expenses. The right to reimbursement shall be arbitrated pursuant to the rules of the American Arbitration Association in New York, New York or in the state indicated in Item 1 of the Declarations of this policy as the Named Insured's principal place of business.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
Authorized Representative
or countersignature (in states where applicable)

EXHIBIT C - PAGE 159

**Excess Casualty Crisis Fund** [SM]
(Crisis Communications Management Insurance)

*Pre-Approved Crisis Management Firms*
*as of January 10, 2000*

---

### Abernathy MacGregor Frank

| | | |
|---|---|---|
| New York Office<br>501 Madison Avenue<br>New York, NY 10022 | Contact: James T. MacGregor<br>(212) 371-5999<br>(212) 593-1845 fax<br>jtm@abmac.com | *Emergency*<br>(212) 688-0926<br>(917) 593-1845   cell phone |
| | Contact: Andrew H. Brimmer<br>(212) 371-5999<br>(212) 593-1845 fax<br>ahb@abmac.com | *Emergency*<br>(212) 727-9599<br>(917) 860-2656   cell phone |
| Los Angeles Office<br>611 West Sixth Street<br>Suite 1880<br>Los Angeles, CA 90017 | Contact: Ian D. Campbell<br>(213) 630-6550<br>(213) 489-3443 fax<br>idc@abmac.com | *Emergency*<br>(818) 957-5650<br>(917) 940-3476   cell phone |

---

### Edelman Public Relations Worldwide

| | | |
|---|---|---|
| New York Office<br>1500 Broadway<br>New York, NY 10036 | Contact: Jon Goldberg<br>(212) 704-8115<br>(212) 704-0129 fax<br>jon__goldberg@edelman.com | *Emergency*<br>(212) 768-0550<br>*Operator will page contact* |
| | Contact: Mitch Baranowski<br>(212) 704-4441<br>(212) 704-0129 fax<br>mitch__baranowski@edelman.com | *Emergency*<br>(212) 768-0550<br>*Operator will page contact* |

*Additional United States/Canada Offices:*
  Atlanta; Austin; Chicago; Dallas; Houston; Los Angeles; Miami; Milwaukee; Montreal; Sacramento; San Francisco; Seattle; Silicon Valley; Toronto; Washington, D.C.

*International Offices:*
  *Latin America:* Buenos Aires; Mexico City; Sao Paulo
  *Europe:* Barcelona; Brussels; Dublin; Frankfurt; Hamburg; London; Madrid; Milan; Paris
  *Asia Pacific:* Beijing; Guangzhou; Hong Kong; Kuala Lumpur; Seoul; Shanghai; Singapore; Sydney; Taipei

---

### Hill & Knowlton

| | | |
|---|---|---|
| New York Office<br>466 Lexington Avenue<br>3rd Floor<br>New York, NY 10017 | Contact: Richard C. Hyde<br>(212) 885-0372<br>(212) 885-0570 fax | *Emergency*<br>Contact switchboard @<br>(212) 885-0300 |
| | Contact: Arthur Foster<br>(212) 885-0442<br>(212) 885-0570 fax | *Emergency*<br>Contact switchboard @<br>(212) 885-0300 |

AH0559

Page 1 of 3

EXHIBIT C - PAGE 160

## Hill & Knowlton (continued)

Contact: Denise DeShane
(212) 885-0390
(212) 885-0570 fax

*Emergency*
Contact switchboard @
(212) 885-0300

Contact: Alex Goldsmith
(212) 885-0467
(212) 885-0570 fax

*Emergency*
Contact switchboard @
(212) 885-0300

**Additional United States/Canada Offices:**
Atlanta; Chicago; Detroit; Ft. Lauderdale; Houston; Irvine; Los Angeles; Pittsburgh; Montreal; Ottawa; Sacramento; San Francisco; San Juan; Tampa; Toronto; Washington, D.C.

**International Offices:**
**Latin America:** Buenos Aires; Mexico City; Sao Paulo
**Europe, Middle East, Africa:** Amsterdam; Athens; Barcelona; Brussels; Budapest; Dubai; Frankfurt; Helsinki; Jeddah; London; Madrid; Manama; Milan; Moscow; Paris; Prague; Riga; Stockholm; Tallinn
**Asia Pacific:** Auckland; Beijing; Canberra; Guangzhou; Hong Kong; Kuala Lumpur; Melbourne; Shanghai; Singapore; Sydney; Taipei; Tokyo; Wellington

## Kekst and Company

**New York Office**
437 Madison Avenue
19th Floor
New York, NY 10022

Contact: Ruth E. Pachman
(212) 521-4819
(212) 521-4900 fax

*Emergency*
Leave voice mail or
contact operator @
(212) 521-4800

## Kroll Associates

**New York Office**
900 Third Avenue
New York, NY 10022

Contact: Mary Jo Phillips
(212) 833-3246
(212) 644-5794 fax

*Emergency*
1-800-GET-KROL
World Wide Crisis Division
*24 hours/7 days*

## Lexicon Communications Corp.

**Los Angeles Office**
333 South Grand Avenue
Suite 3560
Los Angeles, CA 90071

Contact: Steven B. Fink
(213) 346-1212
(213) 346-1210 fax
sfink@lexiconcorp.com

*Emergency*
Contact switchboard @
(213) 346-1200

## Robinson Lerer & Montgomery

**New York Office**
75 Rockefeller Plaza
6th Floor
New York, NY 10019

Contact: Michael J. Gross
(212) 484-6100
(212) 484-7411 fax

*Emergency*
Contact switchboard @
(212) 484-6100

AH0559

EXHIBIT C - PAGE 161

**Sard Verbinnen & Co.**

New York Office
630 Third Avenue
New York, NY 10017

Contact: George Sard
(212) 687-8080
(212) 687-8344 fax

*Emergency*
Contact switchboard @
(212) 687-8080

**Sitrick and Company Inc.**

Los Angeles Office
2029 Century Park East
Suite 1750
Los Angeles, CA 90067

Contact: Michael S. Sitrick
(310) 788-2850
(310) 788-2855 fax

*Emergency*
*(310) 319-2786*
*24 hours/7 days*

*Additional United States Offices: New York and Washington, D.C.*

AH0559

Page 3 of 3

EXHIBIT C - PAGE 162

ENDORSEMENT No. 3

This endorsement, effective 12:01 AM:   January 1, 2001

Forms a part of policy no.: BE   7408285

Issued to:   ABC INTERNATIONAL TRADERS, INC. ISAAC LARIAN

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE**[SM]
Commercial Umbrella Liability Policy

Employee Benefits Liability Exclusion
Applicable to Coverage B

This policy is amended as follows:

Section VI. Exclusions is amended to include the following additional exclusion:

Under Coverage B, this insurance does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of:

1.   any violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by ERISA or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2.   any act, error or omission committed by or on behalf of the Insured solely in the performance of one or more of the following administrative duties or activities:

    a.   giving counsel to employees with respect to a plan;

    b.   interpreting a plan;

    c.   handling of records in connection with a plan;

    d.   effecting enrollment, termination or cancellation of employees under a plan; or

    e.   any matter claimed against an Insured solely by reason of his, her or its status as an administrator, the plan or you as sponsor of the plan.

ERISA as used in this endorsement means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revisions thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world to which a plan is subject.

Plan as used in this endorsement means any plan, fund or program established anywhere in the world, regardless of whether it is subject to regulation under Title 1 of ERISA or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended and which is:

1.   a welfare plan, as defined in ERISA or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2.   a pension plan as defined in ERISA or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

3.   a combination of 1. and 2. above.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

                                                     ————————————————
                                              Authorized Representative
72850 (1/00)                            or Countersignature (In States Where Applicable)
AH067O

EXHIBIT C - PAGE 163

ENDORSEMENT No. 4

This endorsement, effective 12:01 AM:   January 1, 2001

Forms a part of policy no.:  BE    7408285

Issued to:   ABC INTERNATIONAL TRADERS, INC. ISAAC LARIAN.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE℠**
**Commercial Umbrella Liability Policy**

**Employers Liability Exclusion**
**Applicable to Coverage B**

This policy is amended as follows:

Under Coverage B, this insurance does not apply to **Bodily Injury** to any employee of the **Insured** arising out of and in the course of his or her employment by the **Insured**, or performing duties related to the conduct of the **Insured's** business.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (in States Where
Applicable)

72741 (3/99)
AH0451

EXHIBIT C - PAGE 164

ENDORSEMENT No. 5

This endorsement, effective 12:01 AM:  January 1, 2001

Forms a part of policy no.:  BE    7408285

Issued to:  ABC INTERNATIONAL TRADERS, INC. ISAAC LARIAN

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE**[SM]
Commercial Umbrella Liability Policy

Foreign Liability Exclusion
Applicable to Coverage B

It is agreed that this policy is amended as follows:

Under Coverage B, this insurance does not apply to Bodily Injury, Property Damage, Personal Injury, or Advertising Injury that is caused by an Occurrence happening outside the United States of America, its territories or possessions or Canada.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
**Authorized Representative or
Countersignature (in States Where
Applicable)**

72756 (3/99)
AH0465

EXHIBIT C - PAGE 165

ENDORSEMENT No. 6

This endorsement, effective 12:01 AM:   January 1, 2001

Forms a part of policy no.:  BE    7408285

Issued to:   ABC INTERNATIONAL TRADERS, INC. ISAAC LARIAN

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE**[SM]
**Commercial Umbrella Liability Policy**

**Professional Services Exclusion**
**Applicable to Coverages A and B**

This policy is amended as follows:

Under Coverages A and B, this insurance does not apply to any liability  arising out of any act, error or omission committed by or on behalf of the Insured in performing or failing to perform professional services.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____

Authorized Representative or
Countersignature (in States Where
Applicable)

72781 (3/99)
AH0490

EXHIBIT C - PAGE 166

ENDORSEMENT No. 7

This endorsement, effective 12:01 AM:  January 1, 2001

Forms a part of policy no.:  BE    7408285

Issued to:   ABC INTERNATIONAL TRADERS, INC. ISAAC LARIAN

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE**℠
**Commercial Umbrella Liability Policy**

**Automobile Liability Exclusion**
**Applicable to Coverage B**

This policy is amended as follows:

Under Coverage B, this insurance does not apply to **Bodily Injury, Property Damage, Personal Injury or Advertising Injury** arising out of the ownership, maintenance, operation, use, loading  or unloading, or entrustment to others of any **Auto.**

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (in States Where
Applicable)

72722 (3/99)
AH0433

EXHIBIT C - PAGE 167

# FORMS SCHEDULE

Named Insured:    ABC INTERNATIONAL TRADERS, INC. ISAAC LARIAN
Policy Number:    BE    7408285
Effective 12:01 AM:    January 1, 2001

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | AMERICAN INTERNATIONAL CO'S | 73757 | (02/99) |
| | UMB ELITE COMM UMB LIAB POL FORM | 73756 | (05/99) |
| 1 | CA AMEND | 72815 | (06/99) |
| 2 | CRISIS RESPONSE AND EXCESS CASUALTY FUND | 72728 | (11/99) |
| 3 | EMPLOYEE BENEFITS LIABILITY EXCLUSION / COV B | 72850 | (01/00) |
| 4 | EMPLOYERS LIAB EXCL APP TO COV B | 72741 | (03/99) |
| 5 | FOREIGN LIAB EXCL APP COV B | 72756 | (03/99) |
| 6 | PROFESSIONAL SERVICES EXCL APP COV A&B | 72781 | (03/99) |
| 7 | AUTOMOBILE LIAB EXCL APP COV B | 72722 | (03/99) |

*Draft Copy - 01/03/2001*

CIFMSC
CI0226

EXHIBIT C - PAGE 168

ENDORSEMENT No. 8

This endorsement, effective 12:01 AM:   January 1, 2001

Forms a part of policy no.:   BE     7408285

Issued to:   ABC INTERNATIONAL TRADERS, INC. ISAAC LARIAN

By:   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

UMBRELLA ELITE [SM]
Commercial Umbrella Liability Policy

It is agreed that ITEM 1. NAMED INSURED of the DECLARATIONS PAGE, is hereby amended to read as follows:

ITEM 1.  NAMED INSURED:        ABC INTERNATIONAL TRADERS, INC.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
Authorized Representative
or countersignature (where required by law)

EXHIBIT C - PAGE 169

# Exhibit D

# COMMERCIAL UMBRELLA DECLARATIONS

## American International Specialty Lines Insurance Company

A Capital Stock Company
175 Water Street
New York, NY 10038

NOTICE: This Insurer is not licensed in the State of New York and is not subject to its supervision

**POLICY NUMBER:** BE  7413666                    **RENEWAL OF:** 7408285

**PRODUCER NAME:** MARSH USA, INC.

**ADDRESS:**     777 S. FIGUEROA STREET
LOS ANGELES, CA.  90017

**ITEM 1.**   **NAMED INSURED:**   ABC INTERNATIONAL TRADERS, INC.

**ADDRESS:**        16730 SCHOENBORN STREET
NORTH HILLS, CA 91343-6108

**ITEM 2.**   **POLICY PERIOD:   FROM:** January 1, 2002        **TO:**  January 1, 2003
AT 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE.

**ITEM 3.**   **LIMITS OF INSURANCE:**

The Limits of Insurance, subject to all the terms of this policy, are:

| | | |
|---|---|---|
| A. | $15,000,000 | Each Occurrence |
| B. | $15,000,000 | General Aggregate (in accordance with Section III, Limits of Insurance) |
| C. | $15,000,000 | Products-Completed Operations Aggregate (in accordance with Section III, Limits of Insurance) |
| D. | $0 | Self Insured Retention |

**ITEM 4.**   **PREMIUM COMPUTATION**

| ESTIMATED EXPOSURE | RATE / PER | ADVANCE PREMIUM | MINIMUM PREMIUM |
|---|---|---|---|
| N/A | FLAT | $54,007.00 | $54,007.00 |

**ITEM 5.**   **ENDORSEMENTS ATTACHED:**   <u>SEE ATTACHED SCHEDULE</u>

COUNTERSIGNED _____          BY _____
                      **DATE**                                    **AUTHORIZED REPRESENTATIVE**

60817 (8/94)
AH0027

## NOTICE

1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NON-ADMITTED" OR "SURPLUS LINE" INSURERS.

2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT WHICH APPLIES TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. CALIFORNIA MAINTAINS A LIST OF ELIGIBLE SURPLUS LINE INSURERS APPROVED BY THE INSURANCE COMMISSIONER. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST.

5. FOR ADDITIONAL INFORMATION ABOUT THE INSURER YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357.

___BE 7413666___
POLICY NUMBER

ABC INTERNATIONAL TRADERS, INC.
INSURED NAME

___01/01/2002___
EFFECTIVE DATE

NOTICE D-2 FORM

# American International Specialty Lines Insurance Company

## Commercial Umbrella Policy Form

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured as defined in Insuring Agreement IV, Definitions. The words "we", "us" and "our" refer to the Company providing this insurance. The word "Insured" means any person or organization qualifying as such in Insuring Agreement IV, Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

### Insuring Agreements

I.   **Coverage**

We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of **Bodily Injury, Property Damage, Personal Injury or Advertising Injury** that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

If we are prevented by law or statute from paying on behalf of the Insured, then we will, where permitted by law or statute, indemnify the Insured for those sums in excess of the Retained Limit.

I.   **Defense**

A.   We shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions of this policy when:

    1.   The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the Insured have been exhausted by payment of claims to which this policy applies; or

    2.   Damages are sought for **Bodily Injury, Property Damage, Personal Injury or Advertising Injury** covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the Insured.

B.   When we assume the defense of any claim or suit:

    1.   We will defend any suit against the Insured seeking damages on account of **Bodily Injury, Property Damage, Personal Injury or Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

    2.   We will pay the following, to the extent that they are not included in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the Insured:

        a.   premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

        b.   premiums on appeal bonds required by law to appeal any claim or suit we defend, but we are not obligated to apply for or furnish any such bond;

        c.   all costs taxed against the Insured in any claim or suit we defend;

60818 (8/94)  
AH0044

(1)

    d.    pre-judgment interest awarded against the Insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

    e.    all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

    f.    the Insured's expenses incurred at our request.

We will not defend any suit or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of any suit or claim are in addition to our Limits of Insurance.

**C.**    In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the Insured. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, suits or proceedings relative to any Occurrence which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

**III.    Limits of Insurance**

**A.**    The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

    1.    Insureds;

    2.    Claims made or suits brought; or

    3.    Persons or organizations making claims or bringing suits.

**B.**    The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement I except:

    1.    Damages included in the **Products-Completed Operations Hazard**; and

    2.    Coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

**C.**    The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the **Products-Completed Operations Hazard**.

**D.**    Subject to B. and C. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages covered under Insuring Agreement I because of all **Bodily Injury, Property Damage, Personal Injury and Advertising Injury** arising out of any one **Occurrence**.

If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the Insured are reduced or exhausted by payment of one or more claims that would be insured by our policy we will:

    1.    In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

    2.    In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

60818 (8/94)                   (2)
AH0044

Ca

We will be liable only for that portion of damages in excess of the **Insured's** Retained Limit which is defined as the greater of either:

1.  The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the **Insured**; or

2.  The amount stated in the Declarations as Self Insured Retention as a result of any one **Occurrence** not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the **Insured**;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

IV.    **Definitions**

A.    **Advertising Injury** means injury arising solely out of your advertising activities as a result of one or more of the following offenses:

1.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2.  Oral or written publication of material that violates a person's right of privacy;

3.  Misappropriation of advertising ideas or style of doing business; or

4.  Infringement of copyright, title or slogan.

B.    **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But **auto** does not include **mobile equipment**.

C.    **Bodily Injury** means bodily injury, sickness, disability or disease. **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

D.    **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1.  It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.  You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.  The repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2.  Your fulfilling the terms of the contract or agreement.

E.    **Insured** means each of the following, to the extent set forth:

1.  The Named Insured, meaning:

    a.  any person or organization listed in Item 1 of the Declarations, and any company that is your subsidiary as of the effective date of this policy and any company you own or control as of the effective date of this policy; and

    b.  any organization newly acquired, controlled or formed by you during the policy period but only:

60818 (8/94)
AH0044                                    (3)

1)    as respects Occurrences taking place after you acquire, take control or form such organization;

2)    if such organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance; and

3)    if you give us prompt notice after you acquire, take control or form such organization.

We may make an additional premium charge for any additional organizations you acquire, form or take control of during the period of this policy.

2.    If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner.

3.    If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

No person or organization is an Insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

4.    Any person or organization, other than the Named Insured, included as an additional insured in the policies listed in the Schedule of Underlying Insurance but not for broader coverage than is available to such person or organization under such underlying policies.

5.    Any of your partners, executive officers, directors, stockholders or employees but only while acting within their duties.

However, the coverage granted by this provision 5. does not apply to the ownership, maintenance, use, loading or unloading of any autos, aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

6.    Any person, other than one of your employees, or organization while acting as your real estate manager.

7.    Any person, organization, trustee or estate to whom you are obligated by a written Insured Contract to provide insurance such as is afforded by this policy but only with respect to:

a.    liability arising out of operations conducted by you or on your behalf; or

b.    facilities owned or used by you.

8.    Any person (other than your partners, executive officers, directors, stockholders or employees) or organization with respect to any auto owned by you, loaned to you or hired by you or on your behalf and used with your permission.

However, the coverage granted by this provision 8. does not apply to any person using an auto while working in a business that sells, services, repairs or parks autos unless you are in that business.

F.    Insured Contract means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party to pay for Bodily Injury, Property Damage, Personal Injury or Advertising Injury to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

G.    Mobile Equipment means any of the following types of land vehicles, including any attached machinery or equipment:

1.    Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.    Vehicles maintained for use solely on or next to premises you own or rent;

60818 (8/94)
AH0044

(4)

**EXHIBIT D - PAGE 176**

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a. power cranes, shovels, loaders, diggers or drills; or

    b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b. cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not mobile equipment but will be considered autos:

    a. equipment designed primarily for:

        1) snow removal;

        2) road maintenance, but not construction or resurfacing; or

        3) street cleaning;

    b. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

H. Occurrence means:

1. As respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured**. All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence**;

2. As respects **Personal Injury**, an offense arising out of your business that results in **Personal Injury**. All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants; and

3. As respects **Advertising Injury**, an offense committed in the course of advertising your goods, products and services that results in **Advertising Injury**. All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

I. **Personal Injury** means injury other than **Bodily Injury** or **Advertising Injury** arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    4.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    5.  Oral or written publication of material that violates a person's right of privacy.

**J. 1.**  **Products-Completed Operations Hazard** includes all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

    a.  products that are still in your physical possession; or

    b.  work that has not yet been completed or abandoned.

  **2.**  **Your Work** will be deemed completed at the earliest of the following times:

    a.  When all of the work called for in your contract has been completed.

    b.  When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    c.  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **3.**  This hazard does not include **Bodily Injury** or **Property Damage** arising out of:

    a.  the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

    b.  the existence of tools, uninstalled equipment or abandoned or unused materials.

**K.**  **Property Damage** means:

  **1.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **2.**  Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **Occurrence** that caused it.

**L.**  **Suit** means a civil proceeding in which **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** to which this insurance applies is alleged. **Suit** includes:

  **1.**  An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

  **2.**  Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**M.**  **Your Product** means:

  **1.**  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    a.  you;

    b.  others trading under your name; or

    c.  a person or organization whose business or assets you have acquired; and

2.   Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

Your Product includes:

1.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of Your Product; and

2.   The providing of or failure to provide warnings or instructions.

Your Product does not include vending machines or other property rented to or located for the use of others but not sold.

N.   Your Work means:

1.   Work or operations performed by you or on your behalf; and

2.   Materials, parts or equipment furnished in connection with such work or operations.

O.   Your Work includes:

1.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of Your Work; and

2.   The providing of or failure to provide warnings or instructions.

V.   Exclusions

This insurance does not apply to:

A.   Any obligation of the Insured under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law.

B.   Any obligation of the Insured under the Employees' Retirement Income Security Act of 1974 or any amendments to that act.

C.   Any obligation of the Insured under a "No Fault", "Uninsured Motorist" or "Underinsured Motorist" law.

D.   Property Damage to :

1.   Property you own, rent, occupy or use;

2.   Personal property in the care, custody or control of the Insured.

E.   Property Damage to Impaired Property or property that has not been physically injured, arising out of:

1.   A defect, deficiency, inadequacy or dangerous condition in Your Product or Your Work; or

2.   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to Your Product or Your Work after it has been put to its intended use.

F.   Property Damage to Your Product arising out of it or any part of it.

G.   Property Damage to Your Work arising out of it or any part of it and included in the Products-Completed Operations Hazard.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

60818 (8/94)                                      (7)
AH0044

H.   Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

   1.   Your Product;

   2.   Your Work; or

   3.   Impaired Property

   if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I.   Liability of any employee with respect to **Bodily Injury** or **Personal Injury** to another employee of the same employer injured in the course of such employment.

   However, if insurance for such liability is provided by a policy listed in the Schedule of Underlying Insurance:

   1.   This exclusion shall not apply; and

   2.   The insurance provided by our policy will not be broader than the insurance coverage provided to the employee by the policy listed in the Schedule of Underlying Insurance.

J.   **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

   However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

   1.   This exclusion shall not apply; and

   2.   The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

K.   **Personal Injury** or **Advertising Injury**:

   1.   Arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

   2.   Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   3.   Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **Insured**; or

   4.   For which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

L.   **Advertising Injury** arising out of:

   1.   Breach of contract, other than misappropriation of advertising ideas under an implied contract;

   2.   The failure of goods, products or services to conform with advertised quality or performance;

   3.   The wrong description of the price of goods, products or services; or

   4.   An offense committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

60818 (8/94)                                         (8)
AH0044

**EXHIBIT D – PAGE 180**

M.  1.  Bodily Injury, Property Damage or Personal Injury arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

2.  Any loss, cost or expense arising out of any governmental direction or request that we, the Insured or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

3.  Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

This exclusion M. shall not apply to Bodily Injury, Property Damage or Personal Injury arising out of:

a.  Heat, smoke or fumes from a hostile fire;

b.  The upset, overturn or collision of a motor vehicle; or

c.  The Products-Completed Operations Hazard;

if insurance for such Bodily Injury, Property Damage or Personal Injury is provided by a policy listed in the Schedule of Underlying Insurance.  However, the insurance provided by our policy for such Bodily Injury, Property Damage or Personal Injury will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

As used in this exclusion:

a.  Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material.  Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed;

b.  A hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

N.  Bodily Injury or Property Damage due to war, whether or not declared, or any act or condition incident to war.  War includes civil war, insurrection, rebellion or revolution.  This exclusion applies only to liability assumed under a contract or agreement.

O.  Bodily Injury or Property Damage expected or intended from the standpoint of the Insured.

However, this exclusion does not apply to Bodily Injury resulting from the use of reasonable force to protect persons or property.

P.  1.  Bodily Injury, Property Damage or Personal Injury arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

2.  Any obligation of the Insured to indemnify any party because of damages arising out of such Bodily Injury, Property Damage or Personal Injury as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.  Any obligation to defend any suit or claim against the Insured alleging Bodily Injury, Property Damage or Personal Injury and seeking damages, if such suit or claim arises from Bodily Injury, Property Damage or Personal Injury as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

Q.    Bodily Injury or Personal Injury to:

    1.    A person arising out of any:

        a.    Refusal to employ that person;

        b.    Termination of that person's employment; or

        c.    Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    2.    The spouse, child, parent, brother or sister of that person as a consequence of Bodily Injury or Personal Injury to that person at whom any of the employment-related practices described in paragraph a., b. or c. above is directed.

This exclusion applies:

    1.    Whether the Insured may be liable as an employer or in any other capacity; and

    2.    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

R.    Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of or by reason of:

    1.    The purchase, sale, offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument;

    2.    Any representations made at any time in relation to the price or value of any security, debt, bank deposit or financial interest or instrument; or

    3.    Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument.

S.    Bodily Injury or Property Damage for which any Insured may be held liable by reason of:

    1.    Causing or contributing to the intoxication of any person;

    2.    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    3.    Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, if insurance for such Bodily Injury or Property Damage is provided by a policy listed in the Schedule of Underlying Insurance:

    1.    This exclusion shall not apply; and

    2.    The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

T.    Bodily Injury or Property Damage:

    1. a.    with respect to which the Insured is also an Insured under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Assoc., Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

1. b.    resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, (2) the Insured is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2.    Bodily Injury or Property Damage resulting from the hazardous properties of nuclear material, if:

    a.    the nuclear material (1) is at any nuclear facility owned by the Insured or operated by the Insured or on the Insured's behalf, or (2) has been discharged or dispensed therefrom;

    b.    the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the Insured or on the Insured's behalf; or

    c.    the Bodily Injury or Property Damage arises out of the furnishing by the Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to Property Damage to such nuclear facility and any property thereat.

3.    As used in this exclusion:

    a.    "hazardous properties" includes radioactive, toxic or explosive properties;

    b.    "nuclear material" means source material, special nuclear material or by-product material;

    c.    "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

    d.    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    e.    "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

    f.    "nuclear facility" means:

        1)    any nuclear reactor;

        2)    any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging wastes;

        3)    any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the Insured's custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

        4)    any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

    g)    "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h)    Property Damage includes all forms of radioactive contamination of property.

## VI.    Conditions

### A.    Appeals

If the Insured or the Insured's underlying insurers do not appeal a judgment in excess of the Retained Limit, we have the right to make such an appeal.  If we elect to appeal, our liability on such an award or judgment shall not exceed our Limits of Insurance as stated in Item 3 of the Declarations plus the cost and expense of such appeal.

### B.    Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

### C.    Bankruptcy or Insolvency

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of any claim covered by this policy.

But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the Retained Limit or assume any obligation within the Retained Limit area.

### D.    Cancellation

1.    You may cancel this policy.  You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.    We may cancel this policy.  If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect.  If we cancel for any other reason , we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.    The policy period will end on the day and hour stated in the cancellation notice.

4.    If we cancel, final premium will be calculated pro rata based on the time this policy was in force.  Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

5.    If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.  Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

6.    Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you.  Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

7.    The first Named Insured in Item 1 of the Declarations shall act on behalf of all other Insureds with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.    Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

60818 (8/94)
AH0044

(12)

C

E.    Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy.  This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

F.    Duties In The Event Of An Occurrence, Claim Or Suit

1.    You must see to it that we are notified as soon as practicable of an Occurrence which may result in a claim under this policy.  To the extent possible, notice should include:

   a.    how, when and where the Occurrence took place;

   b.    the names and addresses of any injured persons and witnesses; and

   c.    the nature and location of any injury or damage arising out of the Occurrence.

2.    If a claim is made or suit is brought against any Insured that is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3.    You and any other involved Insured must:

   a.    immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

   b.    authorize us to obtain records and other information;

   c.    cooperate with us in the investigation, settlement or defense of the claim or suit; and

   d.    assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

4.    No Insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

G.    Notice hereunder shall be given in writing to Michael Mitrovic, Esq., Attorney At Law, P.O. Box 2603, Jersey City, NJ  07303.

H.    Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time.  Our inspections are not safety inspections.  They relate only to the insurability of your premises and operations and the premiums to be charged.  We may give you reports on the conditions we find.  We may also recommend changes.  While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public.  We do not warrant that your premises or operations are safe or healthful or that they comply with laws, regulations, codes or standards.

I.    Legal Actions Against Us

There will be no right of action against us under this insurance unless:

1.    You have complied with all the terms of this policy; and

2.    The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

60818 (8/94)                                     (13)
AH0044

**EXHIBIT D - PAGE 185**

J.   Maintenance of Underlying Insurance

During the period of this policy, you agree:

1.   To keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

2.   That any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

3.   That the limits of insurance of the policies listed in the Schedule of Underlying Insurance shall not change except for any reduction or exhaustion of aggregate limits by payment of claims for Occurrences covered by this policy; and

4.   That the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not materially change during the period of this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

K.   Other Insurance

If other valid and collectible insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance.  However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

L.   Premium

The first Named Insured designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

The premium for this policy shall be computed on the basis set forth in Item 4 of the Declarations.  At the beginning of the policy period, you must pay us the Advance Premium shown in Item 4 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force.  If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium.  If the earned premium is greater than the Advance Premium, you will promptly pay us the difference.  If the earned premium is less than the Advance Premium, we will return the difference to you.  But in any event we shall retain the Minimum Premium as shown in Item 4 of the Declarations for each twelve months of our policy period.

M.   Prior Insurance

If a loss covered by this policy is also covered in whole or in part under any other excess policy issued to the Insured prior to the effective date of this policy, our Limits of Insurance as stated in Item 3 of the Declarations will be reduced by any amounts due the Insured under such prior insurance.

N.   Separation of Insureds

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first Named Insured designated in Item 1 of the Declarations, this insurance applies:

1.   As if each Named Insured were the only Named Insured; and

2.   Separately to each Insured against whom claim is made or Suit brought.

O.   Subrogation

If any Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us.  The Insured must do nothing after loss to impair these rights and must help us enforce them.

60818 (8/94)                                          (14)
AH0044

Any recoveries shall be applied as follows:

1. Any interests, including the Insured, that have paid an amount in excess of our payment under this policy will be reimbursed first;

2. We then will be reimbursed up to the amount we have paid; and

3. Lastly, any interests, including the Insured, over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the exercise of rights of recovery shall be apportioned between the interests, including the Insured, in the ratio of their respective recoveries as finally settled.

P.    Transfer Of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first Named Insured designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

Q.    When Loss Is Payable

Coverage under this policy will not apply unless and until the Insured or the Insured's underlying insurer is obligated to pay the Retained Limit.

When the amount of loss has finally been determined, we will promptly pay on behalf of the Insured the amount of loss falling within the terms of this policy.

You shall promptly reimburse us for any amount within the Self Insured Retention paid by us on behalf of an Insured.

R.    Service of Suit.

It is agreed that in the event of our failure to pay any amount claim to be due hereunder, we, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, American International Specialty Lines Insurance Company, c/o American International Surplus Lines Agency, Inc., 175 Water Street, New York, NY 10038, or his or her representative, and that in any suit instituted against us upon this contract, we will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, we hereby designate the Superintendent, Commissioner, or Director of Insurance, other officer specified for that purpose in the statute, or his or her successor or successors in office as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this contract of insurance and hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless signed on the Declarations page by one of our duly authorized representatives.

_Elizabeth M. Tuck_
SECRETARY

_Susan Rivera_
PRESIDENT

60818 (8/94)
AH0044

(15)

# ENDORSEMENT

THIS ENDORSEMENT EFFECTIVE 12:01 A.M.    01/01/2002    FORMS PART OF

POLICY NO.    BE 7413666

ISSUED TO:    ABC INTERNATIONAL TRADERS, INC.

BY:    AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY

## SURPLUS LINES ENDORSEMENT

| | |
|---|---|
| PREMIUM | $54,007.00 |
| 3% CALIF. TAX | $1,620.21 |
| .25% SLA FILING FEE | $135.02 |
| | $55,762.23 |

AISLIC SLA BRKDN END 35%.XLS

| | |
|---|---|
| % CALIF. LOC : | 100.00% |
| CALIF. PREM: | $54,007.00 |

## FORMS SCHEDULE

Named Insured:     ABC INTERNATIONAL TRADERS, INC.

Policy Number:     BE    7413666
Effective 12:01 AM:    January 1, 2002

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | COMM UMB DEC AISL INS CO | 60817 | (08/94) |
| | AISL COMM UMB POL FORM | 60818 | (08/94) |
| 1 | EMPL BENFTS LIAB FOLLOW-FORM CLM MADE V2 | 62081 | (02/95) |
| 2 | CRISIS RESPONSE AND EXCESS CASUALTY CRISIS FUND | 74641 | (12/99) |
| 3 | PROFESSIONAL LIAB EXCL | 60458 | (05/94) |
| 4 | FOREIGN LIABILITY FOLLOW-FORM ENDR | 57710 | (06/93) |

CIFMSC
CI0226

EXHIBIT D - PAGE 189

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: ABC INTERNATIONAL TRADERS, INC.

Policy Number: BE    7413666

By: AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**TYPE OF POLICY
OR COVERAGE**

**LIMITS**

GENERAL LIABILITY

$1,000,000
EACH OCCURRENCE
$2,000,000
GENERAL AGGREGATE
$1,000,000
PRODUCTS/C. OPS. AGGREGATE

FOREIGN GL LIABILITY

$1,000,000
EACH OCCURRENCE
$2,000,000
GENERAL AGGREGATE
$1,000,000
PRODUCTS/C. OPS. AGGREGATE

AUTO LIABILITY

$1,000,000
COMBINED SINGLE LIMIT

FOREIGN AL LIABILITY

$1,000,000
COMBINED SINGLE LIMIT

EMPLOYERS LIABILITY

$1,000,000
EACH ACCIDENT
$1,000,000
DISEASE EACH EMPLOYEE
$1,000,000
DISEASE POLICY LIMIT

EMPLOYEE BENEFITS LIABILITY

$1,000,000
EACH CLAIM
$1,000,000
POLICY LIMIT

UNDSCH (5/99)
AH0651

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: ABC INTERNATIONAL TRADERS, INC.                    Policy Number: BE    7413666

By: AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

TYPE OF POLICY
OR COVERAGE                                        LIMITS


AUTHORIZED REPRESENTATIVE

UNDSCH (5/99)
AH0651

ENDORSEMENT No. 1

This endorsement, effective 12:01 AM:  January 1, 2002

Forms a part of policy no.:  BE    7413666

Issued to:  ABC INTERNATIONAL TRADERS, INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

## EMPLOYEE BENEFITS LIABILITY FOLLOW-FORM ENDORSEMENT
### (CLAIMS MADE VERSION 2)

### PROVIDES CLAIMS MADE COVERAGE - PLEASE READ CAREFULLY

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury or Advertising Injury** arising out of any negligent act, error or omission of the **Insured** or of any other person for whom the **Insured** is legally liable in the administration of the **Insured's** Employee Benefit Programs as defined herein.

However, if insurance for such **Bodily Injury, Property Damage, Personal Injury or Advertising Injury** is provided by a policy listed in the Schedule of Underlying Insurance:

1.    This exclusion shall not apply;

2.    The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance; and

3.    Solely as respects this endorsement, we will only provide coverage for a claim made against the **Insured** during our policy period.

If insurance provided by the policy listed in the Schedule of Underlying Insurance provides coverage for **Occurrences** occurring on or after a specified Retroactive Date or for claims made during an Extended Reporting Period, the insurance provided by our policy will also provide such coverage.

For the purposes of this endorsement, the following definitions apply:

1.    Employee Benefit Programs shall mean Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Profit Sharing Plans, Employee Stock Subscription Plans, Worker's Compensation, Unemployment Insurance, Social Security and Disability Benefits.

2.    Administration shall mean:

    a.    Giving counsel to employees with respect to Employee Benefit Programs;

    b.    Interpreting Employee Benefit Programs;

    c.    Handling of records in connection with Employee Benefit Programs; or

    d.    Effecting enrollment, termination or cancellation of employees under Employee Benefit Programs;

provided all such acts are authorized by you.

All other terms and conditions of this policy remain unchanged.

_____

**AUTHORIZED REPRESENTATIVE**

62081 (2/95)
AH0265

—.—

**EXHIBIT D - PAGE 192**

ENDORSEMENT No. 2

This endorsement, effective 12:01 AM:   January 1, 2002

Forms a part of policy no.:   BE    7413666

Issued to:   ABC INTERNATIONAL TRADERS, INC.

By:   AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

Commercial Umbrella Policy

CrisisResponse℠ and Excess Casualty CrisisFund℠

(Advancement of CrisisResponse Costs during a Crisis Management Event and
Crisis Communications Management Insurance)

## Additional Declarations

| | | |
|---|---|---|
| Item 1. | CrisisResponse Sublimit of Insurance:  $250,000. | Each Crisis Management Event And Aggregate |
| Item 2. | Crisis Management Limit of Insurance:  $50,000. | Each Crisis Management Event And Aggregate |
| Item 3. | Premium:                        INCLUDED | |

This policy is amended to provide for Advancement of CrisisResponse Costs during a Crisis Management Event and Crisis Communications Management Insurance pursuant to the terms, definitions, conditions and exclusions set forth below:

| I. | INSURING AGREEMENTS-CrisisResponse and Excess Casualty CrisisFund |
|---|---|

The following insuring agreements section is added to this policy for the purpose of the coverage provided by this endorsement:

A.    Advancement of CrisisResponse Costs during a Crisis Management Event

We will advance on behalf of the Named Insured CrisisResponse Costs that may be associated with damages covered by this policy arising from a Crisis Management Event first commencing during the Policy Period, up to the amount of the CrisisResponse Sublimit of Insurance.

We will advance CrisisResponse Costs that may be associated with damages covered by this policy directly to third parties.

B.    Crisis Communications Management Insurance

We will pay on behalf of the Named Insured Crisis Management Loss arising from a Crisis Management Event first commencing during the Policy Period, up to the amount of the Crisis Management Limit of Insurance.

EXHIBIT

C. A Crisis Management Event shall first commence at the time during the Policy Period when a Key Executive first becomes aware of an Occurrence that gives rise to a Crisis Management Event and shall end at the earliest of the time when we determine that a crisis no longer exists or when the CrisisResponse Sublimit of Insurance and/or the Crisis Management Limit of Insurance, whichever applies, has been exhausted.

D. There shall be no Retained Limit applicable to CrisisResponse Costs or Crisis Management Loss. We shall pay such CrisisResponse Costs or Crisis Management Loss from first dollar, subject to the other terms and conditions of this endorsement.

## II.    LIMITS OF INSURANCE

The following provisions are added to Section III. Limits of Insurance for the purpose of the coverage provided by this endorsement:

A. The CrisisResponse Sublimit of Insurance is the most we will pay for all CrisisResponse Costs under this policy, regardless of the number of Crisis Management Events first commencing during the Policy Period. This CrisisResponse Sublimit of Insurance shall be part of, not in addition to, the Limits of Insurance shown in Item 3 of the Declarations of this policy.

B. The Crisis Management Limit of Insurance is the most we will pay for all Crisis Management Loss under this policy, regardless of the number of Crisis Management Events first commencing during the Policy Period. This Crisis Management Limit of Insurance shall be in addition to the Limits of Insurance shown in Item 3 of the Declarations of this policy.

C. We will have no obligation to advance CrisisResponse Costs or to pay Crisis Management Loss from the earliest of the time when we determine that a Crisis Management Event has ended or when the CrisisResponse Sublimit of Insurance and/or the Crisis Management Limit of Insurance, whichever applies, has been exhausted.

## III.    DEFINITIONS

The following definitions are added to Section IV. Definitions for the purpose of the coverage provided by this endorsement:

A. Crisis Management Event means an Occurrence that in the good faith opinion of a Key Executive of the Named Insured, in the absence of Crisis Management Services, has reasonably been associated with or may be associated with:

1. damages covered by this policy that are in excess of the Retained Limit applicable to such damages; and

2. significant adverse regional or national media coverage.

Crisis Management Event shall include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals.

B. Crisis Management Firm means any public relations firm or crisis management firm approved by us that is hired by the Named Insured to perform Crisis Management Services in connection with a Crisis Management Event. Attached to and forming a part of this endorsement is a Schedule of firms that have been pre-approved by us and may be hired by the Named Insured without further approval by us.

C.  **Crisis Management Limit of Insurance** means the Crisis Management Limit of Insurance shown in Item 2 of the Additional Declarations of this endorsement.

D.  **Crisis Management Loss** means the following amounts incurred during a Crisis Management Event:

   1.  Amounts for the reasonable and necessary fees and expenses incurred by a Crisis Management Firm in the performance of **Crisis Management Services** for the Named Insured solely arising from a covered **Crisis Management Event**; and

   2.  Amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the Named Insured or a Crisis Management Firm incurred at the direction of a Crisis Management Firm, solely arising from a covered **Crisis Management Event**.

E.  **Crisis Management Service** means those services performed by a Crisis Management Firm in advising the Named Insured on minimizing potential harm to the Named Insured from a covered Crisis Management Event by maintaining and restoring public confidence in the Named Insured.

F.  **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a Crisis Management Event directly caused by a Crisis Management Event, provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

   1.  Medical expenses;

   2.  Funeral expenses;

   3.  Psychological counseling;

   4.  Travel expenses;

   5.  Temporary living expenses;

   6.  Expenses to secure the scene of a **Crisis Management Event**; and

   7.  Any other expenses pre-approved by the Company.

   **CrisisResponse Costs** will not include defense costs or **Crisis Management Loss**.

G.  **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 1 of the Additional Declarations of this endorsement.

H.  **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship). A **Key Executive** also means any other person designated as such and scheduled by written endorsement.

---

| IV. | EXCLUSIONS |
|-----|------------|

The following exclusions are added to Section V. Exclusions for the purpose of the coverage provided by this endorsement:

This insurance shall not apply to any **CrisisResponse** Costs or Crisis Management Loss in connection with a **Crisis Management Event**:

A.    arising out of, based upon or attributable to the acts alleged, or to the same or related acts alleged or contained, in any crisis or claim that has been reported, or in any circumstances where notice has been given, under any policy of which (i) this policy is a renewal or replacement or which it may succeed in time, or (ii) any underlying policy, which is listed in the Schedule of Underlying Insurance, is a renewal or replacement or which it may succeed in time;

B.    arising out of, based upon or attributable to any pending or prior crisis, claim, or Suit as of the inception date of this policy;

C.    arising directly or indirectly out of:

    1.    any actual or alleged failure, malfunction or inadequacy of:

        a.    any of the following, whether belonging to any Named Insured or to others:

            (1)    computer hardware, including microprocessors;

            (2)    computer application software;

            (3)    computer operating systems and related software;

            (4)    computer networks;

            (5)    microprocessors (computer chips) not part of any computer system; or

            (6)    any other computerized or electronic equipment or components; or

        b.    any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph C1a of this exclusion

        due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

    2.    any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or on behalf of the Insured to determine, rectify or test for any potential or actual problems described in Paragraph C1 of this exclusion.

---

| V. | CONDITIONS |
|----|------------|

The following conditions are added to Section VI. Conditions for the purpose of the coverage provided by this endorsement:

A.    You must report any Crisis Management Event to us within twenty-four (24) hours of the time that a Key Executive first becomes aware of an Occurrence that gives rise to a Crisis Management Event to be eligible for the advancement of CrisisResponse Costs and the payment of Crisis Management Loss.

Notice of a Crisis Management Event may be given by calling 1-877-AIG-3100. If notice is given by telephone, written notice shall be given as soon as practicable thereafter. Written notice should include:

    1.    how, when and where the Crisis Management Event is taking or took place;

    2.    the names and addresses of any injured persons and any witnesses; and

    3.    the nature and location of any injury or damage arising out of the Crisis Management Event.

Written notice should be mailed or delivered to:

AIG Excess Casualty Claim Department
70 Pine Street
New York, NY 10270

B.   There shall be no requirement that you obtain prior written approval from us before incurring any Crisis Management Loss, provided that the Crisis Management Firm selected by you to perform the Crisis Management Services has been approved by us. If you choose to retain a firm that does not appear in the Schedule attached to and forming a part of this endorsement, you must obtain our consent, which shall remain in our sole discretion, prior to retaining the services of such firm.

C.   Any payments for Crisis Management Loss or advancement of CrisisResponse Costs that we make under this endorsement:

1.   shall not be deemed to be a determination of the Insured's liability with respect to any claim or Suit that results from a Crisis Management Event; and

2.   shall not create any duty to defend any Suit or to investigate any claim arising from a Crisis Management Event, nor any coverage obligations under this policy.

D.   If the Crisis Communications Management Insurance provided by this endorsement and any other insurance issued to the Named Insured by us or any of our affiliated companies shall apply to the same crisis or claim, the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy or endorsement. This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically to apply as excess insurance over this endorsement.

E.   In the event of a dispute between the Named Insured and us as to whether a Crisis Management Event has occurred, the Named Insured may, at its own cost, retain the services of an approved Crisis Management Firm and/or advance CrisisResponse Costs. Provided, however, if the Named Insured elects to retain an approved Crisis Management Firm or to advance CrisisReponse Costs, we shall have no obligation to reimburse under this endorsement the Named Insured for such costs or expenses. The right to reimbursement shall be arbitrated pursuant to the rules of the American Arbitration Association in New York, New York or in the state indicated in Item 1 of the Declarations of this policy as the Named Insured's principal place of business.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
**or countersignature (in states where applicable)**

74641 (12/99)                1999 American International Group, Inc.               Page 5 of 5
AH0560

**Excess Casualty Crisis Fund** <sup>SM</sup>
(Crisis Communications Management Insurance)

*Pre-Approved Crisis Management Firms*
*as of January 10, 2000*

---

**Abernathy MacGregor Frank**
---

<u>New York Office</u>
501 Madison Avenue
New York, NY 10022

Contact: James T. MacGregor
(212) 371-5999
(212) 593-1845 fax
jtm@abmac.com

*Emergency*
(212) 688-0926
(917) 593-1845    cell phone

Contact: Andrew H. Brimmer
(212) 371-5999
(212) 593-1845 fax
ahb@abmac.com

*Emergency*
(212) 727-9599
(917) 860-2656    cell phone

<u>Los Angeles Office</u>
611 West Sixth Street
Suite 1880
Los Angeles, CA 90017

Contact: Ian D. Campbell
(213) 630-6550
(213) 489-3443 fax
idc@abmac.com

*Emergency*
(818) 957-5650
(917) 940-3476    cell phone

---

**Edelman Public Relations Worldwide**
---

<u>New York Office</u>
1500 Broadway
New York, NY 10036

Contact: Jon Goldberg
(212) 704-8115
(212) 704-0129 fax
jon__goldberg@edelman.com

*Emergency*
(212) 768-0550
*Operator will page contact*

Contact: Mitch Baranowski
(212) 704-4441
(212) 704-0129 fax
mitch__baranowski@edelman.com

*Emergency*
(212) 768-0550
*Operator will page contact*

**Additional United States/Canada Offices:**
*Atlanta; Austin; Chicago; Dallas; Houston; Los Angeles; Miami; Milwaukee; Montreal; Sacramento; San Francisco; Seattle; Silicon Valley; Toronto; Washington, D.C.*
**International Offices:**
*Latin America: Buenos Aires; Mexico City; Sao Paulo*
*Europe: Barcelona; Brussels; Dublin; Frankfurt; Hamburg; London; Madrid; Milan; Paris*
*Asia Pacific: Beijing; Guangzhou; Hong Kong; Kuala Lumpur; Seoul; Shanghai; Singapore; Sydney; Taipei*

---

**Hill & Knowlton**
---

<u>New York Office</u>
466 Lexington Avenue
3rd Floor
New York, NY 10017

Contact: Richard C. Hyde
(212) 885-0372
(212) 885-0570 fax

*Emergency*
Contact switchboard @
(212) 885-0300

Contact: Arthur Foster
(212) 885-0442
(212) 885-0570 fax

*Emergency*
Contact switchboard @
(212) 885-0300

AH0559

Page 1 of 3

**Hill & Knowlton** *(continued)*

Contact: Denise DeShane
(212) 885-0390
(212) 885-0570 fax

*Emergency*
Contact switchboard @
(212) 885-0300

Contact: Alex Goldsmith
(212) 885-0467
(212) 885-0570 fax

*Emergency*
Contact switchboard @
(212) 885-0300

**Additional United States/Canada Offices:**
*Atlanta; Chicago; Detroit; Ft. Lauderdale; Houston; Irvine; Los Angeles; Pittsburgh; Montreal; Ottawa; Sacramento; San Francisco; San Juan; Tampa; Toronto; Washington, D.C.*

**International Offices:**
*Latin America: Buenos Aires; Mexico City; Sao Paulo*
*Europe, Middle East, Africa: Amsterdam; Athens; Barcelona; Brussels; Budapest; Dubai; Frankfurt; Helsinki; Jeddah; London; Madrid; Manama; Milan; Moscow; Paris; Prague; Riga; Stockholm; Tallinn*
*Asia Pacific: Auckland; Beijing; Canberra; Guangzhou; Hong Kong; Kuala Lumpur; Melbourne; Shanghai; Singapore; Sydney; Taipei; Tokyo; Wellington*

**Kekst and Company**

New York Office
437 Madison Avenue
19th Floor
New York, NY 10022

Contact: Ruth E. Pachman
(212) 521-4819
(212) 521-4900 fax

*Emergency*
Leave voice mail or
contact operator @
(212) 521-4800

**Kroll Associates**

New York Office
900 Third Avenue
New York, NY 10022

Contact: Mary Jo Phillips
(212) 833-3246
(212) 644-5794 fax

*Emergency*
1-800-GET-KROL
World Wide Crisis Division
*24 hours/7 days*

**Lexicon Communications Corp.**

Los Angeles Office
333 South Grand Avenue
Suite 3560
Los Angeles, CA 90071

Contact: Steven B. Fink
(213) 346-1212
(213) 346-1210 fax
sfink@lexiconcorp.com

*Emergency*
Contact switchboard @
(213) 346-1200

**Robinson Lerer & Montgomery**

New York Office
75 Rockefeller Plaza
6th Floor
New York, NY 10019

Contact: Michael J. Gross
(212) 484-6100
(212) 484-7411 fax

*Emergency*
Contact switchboard @
(212) 484-6100

AH0559

Page 2 of 3

**EXHIBIT D - PAGE 199**

**Sard Verbinnen & Co.**

<u>New York Office</u>
630 Third Avenue
New York, NY 10017

Contact: George Sard
(212) 687-8080
(212) 687-8344 fax

*Emergency*
Contact switchboard @
(212) 687-8080

**Sitrick and Company Inc.**

<u>Los Angeles Office</u>
2029 Century Park East
Suite 1750
Los Angeles, CA 90067

Contact: Michael S. Sitrick
(310) 788-2850
(310) 788-2855 fax

*Emergency*
*(310) 319-2786*
*24 hours/7 days*

*Additional United States Offices: New York and Washington, D.C.*

AH0559

Page 3 of 3

**EXHIBIT D - PAGE 200**

ENDORSEMENT No. 3

This endorsement, effective 12:01 AM:    January 1, 2002

Forms a part of policy no.:  BE    7413666

Issued to:    ABC INTERNATIONAL TRADERS, INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

<u>PROFESSIONAL LIABILITY EXCLUSION</u>

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury or Advertising Injury** arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the **Insured** or any person for whom the **Insured** is legally responsible.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

60458 (5/94)
AH0203

ENDORSEMENT No. 4

This endorsement, effective 12:01 AM:   January 1, 2002

Forms a part of policy no.:  BE    7413666

Issued to:   ABC INTERNATIONAL TRADERS, INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

## FOREIGN LIABILITY FOLLOW-FORM ENDORSEMENT

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** is provided by a policy listed in the Schedule of Underlying Insurance:

1.     This exclusion shall not apply; and

2.     The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

57710 (6/93)
AH0109

EXHIBIT D - PAGE 202

# Exhibit E



**Crum&Forster**
WE'RE EARNING YOUR TRUST

# COMMERCIAL GENERAL LIABILITY POLICY

## DECLARATIONS

POLICY NUMBER:  GLO 000 0222

| DATE ISSUED: 1/29/03 | RENEWAL OR REPLACEMENT OF: New |
|---|---|

| ITEM 1. | NAMED INSURED & ADDRESS: MGA Entertainment, Inc. |
|---|---|

    16730 Schoenborn Street
    Sepulveda, CA 91343-6122

Named Insured's Business: Toy/Game Mfg/Sales    Form of Business: Corporation

**2.** POLICY PERIOD:  POLICY COVERS FROM: 1/1/03    TO: 1/1/04

    12:01 a.m. Standard Time at the Named Insured's address stated above

**3.**  COVERAGE IS PROVIDED BY:

Crum & Forster Specialty Insurance Company
    ( A Stock Company)

REPRESENTATIVE:
Number:  79623

Broker:    Marsh USA, Inc.
Telephone Number: (213) 624-5555
Office Address:    777 South Figueroa Street
Town, State & Zip:    Los Angeles, CA 90017-5822

**4.**  LIMITS OF INSURANCE:    (The Limits of Insurance are the amounts shown below.)

    (a)  Each Occurrence Limit:  $1,000,000
    (b)  General Aggregate Limit: $2,000,000
    (c)  Personal & Advertising Injury Limit:  $1,000,000 Any One Person or Organization
    (d)  Products-Completed Operations Aggregate Limit: $1,000,000
    (e)  Damage to Premises Rented To You Limit:  $50,000 Any One Premise
    (f)  Medical Expense Limit:  $ Excluded

**5.**  DEDUCTIBLE:    $10,000
    See Endorsement #FM101.0.1539

    Applies  ☒  Per Claimant
    Applies  ☐  Per Occurrence

**6.**  POLICY JACKET, SCHEDULES, FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT INCEPTION (Number and Edition Date) AS PER MASTER FORMS LIST ATTACHED.

Location of All Premises You Own, Rent or Occupy:  See Schedule of Locations on file with Company.

**7.**  PREMIUM: $308,000    MINIMUM EARNED PREMIUM $308,000

PREMIUM SUBJECT TO ADJUSTMENT: Yes ☒  No ☐

RECEIVED
FEB 1 0 2003

Countersigned by _____
MARSH/Los Angeles
Insurance Services Department

THESE DECLARATIONS, TOGETHER WITH THE POLICY JACKET, MASTER FORMS LIST, SCHEDULES AND ENDORSEMENTS, IF ANY, ARE ISSUED AS PART OF THE ABOVE NUMBER POLICY

Under California law, property and casualty insurance business in California are required to participate in the California Insurance Guarantee Association. If a member insurer becomes insolvent, the California Insurance Guaranty Association settles unpaid claims and assesses each insurance company for its fair share. California law requires all companies to surcharge policies to recover these assessments. If your policy is surcharged, a "CA Surcharge" with an amount will be displayed on your premium notice.

CGLDecDedOcc 03 01 02



# Crum & Forster Specialty Insurance Company
## An Arizona Corporation
## Home Office: Phoenix, Arizona

(A Stock Company)

SIGNATURE

Douglas M. Libby
President

SIGNATURE

Valerie J. Gasparik
Secretary



FM 206.0.30  10/01

**EXHIBIT E - PAGE 205**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MASTER FORMS LIST**

The following forms and endorsements are attached to this policy effective at inception:

| FORM TITLE | FORM NUMBER |
|---|---|
| Absolute Asbestos Exclusion | FM101.0.1252 |
| Additional Insured-Owners, Lessees or Contractors | FM600.0.942 (8/96) |
| Additional Insured Vendors | CG 2015 |
| Commercial General Liability Coverage Form | CG 0001 10 01 |
| Common Policy Conditions | IL 0017 1198 |
| Declarations Page | CGLDecOccDed 03 01 02 |
| Deductible Liability Endorsement | FM101.0.1539 |
| Definition of Gross Sales | CFSGEN1 |
| Earned Premium & Composite Rate Endorsement | CFS GEN12 01 01 |
| Employee Benefits Liability | CG 0435 |
| Employment-Related Practices Exclusion | CG 2147 0798 |
| Exclusion – Coverage C Medical Payments | CG2135 (1093) |
| Exclusion – Testing Or Consulting E&O | CG 2233 |
| Exclusion-Year 2000 Computer-Related and Other Electronic Problems | CG2160 0498 |
| Fungi or Bacteria Exclusion | CG 2167 |
| Lead Exclusion | FM600.0.955 9/99 |
| Master Forms List | GEN 0001 |
| Nuclear Energy Liability Exclusion Endorsement | IL0021 0498 |
| Pollution Exclusion – Limited Exception | CG 0430 |
| Punitive or Exemplary Damages Exclusion | FM101.0.1203 11 89 |
| Service of Process Clause | GEN 0002 |
| Signature Page -- Crum & Forster Specialty | FM206.0.30 10 01 |
| Waiver of Transfer of Rights of Recovery | CG 2404 (1093) |





GEN 0001



# ABSOLUTE ASBESTOS EXCLUSION

It is agreed that:

1. This policy does not apply to "bodily injury", "property damage", or "personal or advertising injury" in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

2. This policy does not apply to "economic loss", "diminution of property", "abatement costs", or any other loss, cost, or expense including "Equitable Relief", in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

3. This policy provides no coverage for any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or "suit" arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

For the purpose of this exclusion only, the following additional terms are defined:



"Abatement costs" means any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal or replacement.

"Diminution of property" means the diminishing or lessening in value of property.

"Economic loss" means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture or utilization of a good or product.

"Equitable relief" means any remedy or relief, including restitution or injunctive relief, sought in a court with equitable powers.



FM 101.0.1252  05 00



Policy Number:  GLO 000 0222

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## BROAD ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Name of Person or Organization:



Any person or organization required by written contract to be named as an additional insured under this policy, and, for whom operations are being performed by or on behalf of the named insured.

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the SCHEDULE, but only with respect to liability arising out of your ongoing operations performed for the additional insured at the job indicated by the written contract.



FM 600.0.942 (8/96)



POLICY NUMBER:  GLO 000 0222                              COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization (Vendor):**

**Your Products:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)



WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.



**CG 20 15 11 88**          Copyright, Insurance Services Office, Inc., 1986, 1988          Page 1 of 1     □

**EXHIBIT E - PAGE 209**



IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.



**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.



**THIS ENDORSEMENT CHANGES. THE POLICY. PLEASE READ IT CAREFULLY.**

## GENERAL LIABILITY DEDUCTIBLE LIABILITY INSURANCE INDEMNITY AND DEFENSE COMBINED

This endorsement modifies insurance provided under the following:

### SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| Bodily Injury Liability, and/or Property Damage Liability, and Medical Payments, Combined | $10,000 | per claim |
| | | or |
| | $ --- | per occurrence |
| Personal Injury and/or Advertising Injury Liability Combined | $10,000 | per claim |
| | | or |
| | $ --- | per occurrence |



**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury", "property damage", "personal injury", and "advertising injury", however caused):

1. Our obligation to pay damages under the Bodily Injury and Property Damage Liability Coverage and the Personal Injury and Advertising Injury Liability Coverage, to defend any claim or "suit", to investigate any "occurrence", to settle any claim or "suit", and to pay benefits under Medical Payments applies only to the amount of damages, benefits, and/or "defense expense" incurred in excess of any deductible amounts stated in the Schedule above as applicable to such coverage.

   The limits of insurance applicable to each "occurrence" for Bodily Injury and Property Damage Liability Coverage and Personal Injury and Advertising Injury Liability Coverage shall not be reduced by the application of any deductible amount stated as being applicable to such coverage.

   The limits of insurance applicable to each "occurrence" for Medical Payments Coverage shall be reduced by the amount of any deductible amount stated in the Schedule above as applicable to such coverage.



FM 101.0.1539 10 96

Page 1 of 4

**EXHIBIT E - PAGE 211**



"Aggregate" limits for any coverage shall not be reduced by the application of any deductible amount.

2. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amounts stated in the Schedule above apply as follows:

    **A. PER CLAIM BASIS** – if the deductible amount indicated in the Schedule above is on a "per claim" basis, that deductible amount applies as follows:

        (1) Under Personal Injury and/or Advertising Injury Liability Combined, to all damages because of "personal injury" and "advertising injury" and "defense expense" because of "personal injury and "advertising injury", combined, sustained by any one person because of any one "occurrence" or offense.

        (2) Under Bodily Injury Liability and/or Property Damage Liability and Medical Payments combined, to all damages and "defense expense" sustained by any one person because of "bodily injury" and "property damage" combined as the result of any one "occurrence".

        If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

    With respect to "property damage", person includes an organization.

    **B. PER OCCURRENCE BASIS** – if the deductible amount is on a "per occurrence" basis, that deductible amount applies:

        (1) Under Personal Injury and/or Advertising Injury Liability expense because of "personal injury", "advertising injury" because of any one "occurrence" or offense regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.



        (2) Under Bodily Injury Liability and/or Property Damage Liability and Medical Payments combined, to all damages and "defense expense" because of "bodily injury" and "property damage" because of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

3. The terms of this insurance, including those with respect to:

    (a) our right and duty to defend any "suits" seeking those damages;

    (b) our right to select counsel and maintain control of the defense; and

    (c) your duties in the event of an "occurrence", claim or suit;

    any irrespective of the application of the deductible amount.

FM 101.0.1539 10 96

Page 2 of 4



4.  We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Reimbursement of the deductible amount shall be applied in the following order:

a.  First, to benefits paid under Medical Payments.

b.  Second, to any "defense expense" incurred by us regardless of whether there was any payment for actual damages.

c.  Third, to damages paid by us on your behalf.

5.  As used in this endorsement "defense expense" means expenses we incur to investigate, defend and/or settle a specific claim or "suit", including:

a.  Fees and salaries of attorneys and paralegals we retain, including attorneys and paralegals who are our employees.  If the attorneys or paralegals are our employees then only those fees and salaries that can be attributed to the specific claim or "suit" will be counted.

b.  Fees of attorneys the insured retains when by mutual agreement or by law the insured is given the right to select defense counsel to defend a "suit".

c.  All other litigation expenses.

"Defense expense" does not include salaries and expenses of our employees (other than those described in 5.a. above) or the insured's employees and does not include fees and expenses of independent adjusters we hire.



6.  If any dispute shall arise between you and us with reference to this endorsement such dispute, upon written request of either party, shall be submitted to arbitration in accordance with the Commercial Rules of the American Arbitration Association.  Said arbitration shall be conducted in the County of the mailing address of the first named insured by a panel of three arbitrators, one to be chosen by each party and the third by the two so chosen.  If either party refuses or neglects to appoint an arbitrator within thirty days after receipt of written notice from the other party requesting it to do so, the requesting party may appoint two arbitrators.  If the two arbitrators fail to agree in the selection of a third arbitrator within thirty days of their appointment, each of them shall name two, of whom the other shall decline one, and the decision shall be made by drawing lots.  All arbitrators shall be executive officers or former executive officers of insurance or reinsurance companies domiciled in the United States not under the control of either party to this Agreement.  The arbitrators shall interpret this Agreement as an honorable engagement and not merely a legal obligations; they are relieved of al judicial formalities and may abstain from following the strict rules of law; and they shall make their award with a view of effecting the general purposes of this Agreement in a reasonable manner rather than in accordance with a literal interpretation of the language.

FM 101.0.1539 10 96                                                                 Page 3 of 4

Each party shall submit its case to its arbitrator within thirty days of the appointment of the third arbitrator.  The decision in writing of any two arbitrators, when filed with the parties hereto, shall be final and binding on both parties, and judgment may thereafter be entered thereon in any court of competent jurisdiction.  Each Party shall bear the expenses of its own arbitrator and shall jointly and equally bear with the other party the expense of the third arbitrator.

7.   If any money is recovered under Rights of Recovery Against Others it will be dispersed in the following order so long as funds remain:

    a.   First, all expenses incurred in making the recovery will be repaid; and

    b.   Second, we will be repaid to the extent of our actual loss payments; and

    c.   Third, the insured will be repaid for any deductible reimbursements made.

    If our recovery attempt is unsuccessful, we will bear all of the recovery expenses.



FM 101.0.1539 10 96                                                        Page 4 of 4



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

<u>DEFINITION OF GROSS SALES</u>

1.  **Definition**

    The gross amount charged by the Named Insured, concessionaires of the Named Insured or by others trading under the Insured's name for:

    a.  All goods or products sold or distributed during the Policy Period;
    b.  Operations performed during the Policy Period; and
    c.  Rentals during the Policy Period;
    d.  Dues or fees during the Policy Period.

2.  **Inclusions**

    The following items shall not be deducted from gross sales as determined above:

    a.  Foreign exchange discounts;
    b.  Freight allowance to customers;
    c.  Total sales of consigned goods and warehouse receipts;
    d.  Trade or cash discounts;
    e.  Bad debts; and
    f.  Repossession of items sold on installments (amounts actually collected).

3.  **Exclusions**

    The following items shall be deducted from gross sales:

    a.  Sales or excise taxes which are collected and submitted to a governmental division;
    b.  Credits for repossessed merchandise and products returned. Allowances for damaged and spoiled goods;
    c.  Finance charges for items sold on installments;
    d.  Freight charges on sales if freight is charged as a separate item on customer's invoice; and
    e.  Royalty income from patent rights or copyrights which are not product sales.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy. |
| :-- |
| Policy # _____ |
| Effective on and after _____ 12:01 am standard time |
| Issued to _____ |

Countersigned by_____ Date:_____

                        Authorized Representative



CFSGEN1





# ENDORSEMENT

This endorsement, issued by **CRUM & FORSTER SPECIALTY INSURANCE COMPANY,** forms a part of the policy to which it is attached.

## EARNED PREMIUM AND COMPOSITE RATE ENDORSEMENT

In consideration of Crum & Forster's acceptance of this insurance, the Named Insured hereby agrees that the minimum earned premium(s) due for this policy shall be calculated in accordance with the following:

1. In the event of cancellation of this policy by the Named Insured after this policy has been in effect for more than thirty (30) days, the return premium due, if any, shall be computed at a rate equal to ninety percent (90%) of the pro-rata unearned policy premium, subject however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy. Within the first thirty (30) days of coverage under this insurance, a twenty-five percent (25%) absolute minimum earned premium is applicable, unless another higher premium is designated specifically as a minimum premium in the declarations.

2. Failure by the Named Insured to remit premium payments when due shall be considered a request by the Named Insured for the Company to cancel this policy. Cancellation shall be computed in accordance with paragraph 1 above.

3. In the event of cancellation of this policy by the Company for reasons other than nonpayment of premium, the earned premium for this policy shall be computed on a pro-rata basis, subject, however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy.

4. The premium entered on the Declarations page of this policy as ADVANCE PREMIUM is a provisional premium only and is subject to upward adjustment only in accordance with our rules, rates and the Premium Audit provisions of this policy. Premium adjustments effected as a result of premium audits will be done after the policy is no longer in effect, but may be done by the Company while the policy is in effect.

5. The amount entered as ADVANCE PREMIUM on the Declarations page of this policy has been computed on a composite rate basis for both "bodily injury" and "property damage" as follows:

| Exposure Basis | Estimated Exposure | x | Composite Rate | = | ADVANCE PREMIUM |
|---|---|---|---|---|---|
| Gross Sales | $280,000,000 | X | $1.10 | = | $308,000 |

If the Exposure Basis is Payroll, then the Composite Rate shall be applied per hundred dollars of Payroll. If the Exposure Basis is Gross Sales, then the Composite Rate shall be applied per thousand dollars of Gross Sales.



CFS GEN 12 (01/01)



POLICY NUMBER:   GLO 000 0222

COMMERCIAL GENERAL LIABILITY
CG 04 35 02 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYEE BENEFITS LIABILITY COVERAGE

### THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
### PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $1,000,000 | each employee | $1,000 | each employee | $ Included |
| | $1,000,000 | aggregate | | | |
| Retroactive Date: | | | | | |



(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Paragraph E. (Section III – Limits Of Insurance); and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b. This insurance applies to damages only if:

(1) The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

(2) The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

(3) A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph c. below, during the policy period or an Extended Reporting Period we provide under Paragraph G. of this endorsement.

c. A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

(1) When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or



(2) When we make settlement in accordance with Paragraph 1.a. above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

d. All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

2. **Exclusions**

This insurance does not apply to:

a. **Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

b. **Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

c. **Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

d. **Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e. **Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

f. **Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

g. **ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

h. **Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

i. **Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

j. **Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

B. For the purposes of the coverage provided by this endorsement:

1. All references to Supplementary Payments — Coverages A and B are replaced by Supplementary Payments — Coverages A, B and Employee Benefits Liability.

2. Paragraphs 1.b. and 2. of the Supplementary Payments provision do not apply.

C. For the purposes of the coverage provided by this endorsement, Paragraphs 2. and 4. of Section II – Who Is An Insured are replaced by the following:

2. Each of the following is also an insured:

a. Each of your "employees" who is or was authorized to administer your "employee benefit program".

b. Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

© ISO Properties, Inc., 2001

CG 04 35 02 02





4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

D. For the purposes of the coverage provided by this endorsement, Paragraph 3. of Section II – Who Is An Insured does not apply.

E. For the purposes of the coverage provided by this endorsement, Section III – Limits Of Insurance is replaced by the following:

1. Limits Of Insurance

a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

(1) Insureds;

(2) "Claims" made or "suits" brought;

(3) Persons or organizations making "claims" or bringing "suits";

(4) Acts, errors or omissions; or

(5) Benefits included in your "employee benefit program".

b. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

(1) An act, error or omission; or

(2) A series of related acts, errors or omissions

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

2. Deductible

a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

b. The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

c. The terms of this insurance, including those with respect to:

(1) Our right and duty to defend any "suits" seeking those damages; and

(2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

apply irrespective of the application of the deductible amount.

d. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.





F. For the purposes of the coverage provided by this endorsement, Conditions 2. and 4. of Section IV – Conditions are replaced by the following:

2. **Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

   a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

      (1) What the act, error or omission was and when it occurred; and

      (2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

   b. If a "claim" is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

   a. **Primary Insurance**

      This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

   b. **Excess Insurance**

      (1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

         (a) No Retroactive Date is shown in the Schedule of this insurance; or

         (b) The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

      (2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

      (3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

      (4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.



© ISO Properties, Inc., 2001

CG 04 35 02 02    □



**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

G. For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

1. You will have the right to purchase an Extended Reporting Period, as described below, if:

   a. This endorsement is canceled or not renewed; or

   b. We renew or replace this endorsement with insurance that:

      (1) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

      (2) Does not apply to an act, error or omission on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

   You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   a. The "employee benefit programs" insured;

   b. Previous types and amounts of insurance;

   c. Limits of insurance available under this endorsement for future payment of damages; and

   d. Other related factors.

   The additional premium will not exceed 100% of the annual premium for this endorsement.

   The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4. If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

   The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

   Paragraph **E.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **E.1.c.**

H. For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

1. "Administration" means:

   a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   b. Handling records in connection with the "employee benefit program"; or

   c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

   However, "administration" does not include handling payroll deductions.



CG 04 35 02 02                    © ISO Properties, Inc., 2001                    Page 5 of 6



2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;



   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

I. For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. in the Definitions Section are replaced by the following:

   5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

      a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

      b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.



© ISO Properties, Inc., 2001

CG 04 35 02 02      ☐

**EXHIBIT E - PAGE 222**



COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

   **(1)** A person arising out of any:

      **(a)** Refusal to employ that person;

      **(b)** Termination of that person's employment; or

      **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

   **(1)** Whether the insured may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

   **(1)** A person arising out of any:

      **(a)** Refusal to employ that person;

      **(b)** Termination of that person's employment; or

      **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

   **(1)** Whether the insured may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.





POLICY NUMBER:  GLO 000 0222

COMMERCIAL GENERAL LIABILITY
CG 21 35 10 01

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| Description And Location Of Premises Or Classification: |
|---|
|  |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)



With respect to any premises or classification shown in the Schedule:

1. Section I – Coverage C – Medical Payments does not apply and none of the references to it in the Coverage Part apply; and

2. The following is added to Section I – Supplementary Payments:

   h. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.



CG 21 35 10 01                    © ISO Properties, Inc., 2000

**EXHIBIT E – PAGE 224**



COMMERCIAL GENERAL LIABILITY
CG 22 33 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – TESTING OR CONSULTING ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Para- graph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising in- jury" arising out of:

**1.** An error, omission, defect or deficiency in:

    **a.** Any test performed; or

    **b.** An evaluation, a consultation or advice given,

by or on behalf of any Insured;

**2.** The reporting of or reliance upon any such test, evaluation, consultation or advice; or

**3.** An error, omission, defect or deficiency in experi- mental data or the Insured's interpretation of that data.





**CG 22 33 07 98**        Copyright, Insurance Services Office, Inc., 1997        Page 1 of 1    ☐





COMMERCIAL GENERAL LIABILITY
CG 21 60 04 98

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising directly or indirectly out of:

a. Any actual or alleged failure, malfunction or inadequacy of:

(1) Any of the following, whether belonging to any insured or to others:

(a) Computer hardware, including microprocessors;

(b) Computer application software;

(c) Computer operating systems and related software;

(d) Computer networks;

(e) Microprocessors (computer chips) not part of any computer system; or

(f) Any other computerized or electronic equipment or components; or

(2) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph 2.a.(1) of this endorsement

due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

b. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph 2.a. of this endorsement.





CG 21 60 04 98

Copyright, Insurance Services Office, Inc., 1997

Page 1 of 1    □



COMMERCIAL GENERAL LIABILITY
CG 21 67 04 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.,** Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph **2.,** Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.



CG 21 67 04 02

© ISO Properties, Inc., 2001

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## LEAD EXCLUSION

This policy does not apply to:

1. "Bodily Injury", "Property Damage", or "Personal and Advertising Injury" in any way or to any extent arising out of the actual, alleged or threatened exposure to lead or any substance containing lead.

2. "Economic Loss", "Diminution of Property", "Abatement Costs", or any other loss, cost, or expense including "Equitable Relief", in any way or to any extent arising out of or involving lead or any substance containing lead.

3. Any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any "Claim" or "Suit" arising out of or involving lead or any substance containing lead.

For the purpose of this exclusion, the following additional terms are defined:

"Abatement Costs" mean any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal, replacement, or treatment.

"Diminution of Property" means the diminishing or lessening in value of property.

"Economic Loss" means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture, utilization, or existence of a substance or product.

"Equitable Relief" means any remedy or relief, including restitution or injunctive relief, sought in a court with equitable powers.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| |
|---|
| Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy. |
| Policy No. _____ |
| Effective on and after _____ 12:01a.m. standard time |
| Issued to _____ |

Countersigned by: _____
                         Authorized Representative

FM 600.0.955 (0999)



INTERLINE
IL 00 21 04 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY
# EXCLUSION ENDORSEMENT

## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.



   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties;

   "Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

IL 00 21 04 98

Copyright, Insurance Services Office, Inc., 1997

Page 1 of 2 ☐





"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium; (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nu-

clear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.



Page 2 of 2

Copyright, Insurance Services Office, Inc., 1997

IL 00 21 04 98  ☐



POLICY NUMBER:   GLO 000 0222

COMMERCIAL GENERAL LIABILITY
CG 04 30 09 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLLUTION EXCLUSION – LIMITED EXCEPTION FOR DESIGNATED POLLUTANT(S)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Designated "Pollutant(s)" | |
|---|---|
| | |

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)



The following exception to Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is added:

Subparagraphs (1)(a) and (1)(d) do not apply to "bodily injury" or "property damage" arising out of the discharge, dispersal, seepage, migration, release or escape of the "pollutant(s)" listed in the Schedule of this endorsement and used in connection with the insured's operations.

This exception does not apply to the discharge, dispersal, seepage, migration, release or escape of a "pollutant" listed in the schedule of this endorsement which takes place while such "pollutant" is being:

(a)  Transported, handled, stored, treated, disposed of, or processed as waste; or

(b)  Transported or stored for others.



CG 04 30 09 99                    Copyright, Insurance Services Office, Inc., 1998                    Page 1 of 1    □

**EXHIBIT E – PAGE 231**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION

This policy does not apply to punitive or exemplary damages, fines or penalties.





This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| Complete only when this endorsement is not prepared with the policy **or** is not to be effective with the policy. |
|---|
| Policy # _____ |
| Effective on and after _____ 12:01 am standard time |
| Issued to _____ |

Countersigned by _____
                              **Authorized Representative**

FM 101.0.1203  (1189)



## SURPLUS LINES FILING AND POLICY ISSUANCE CRITERIA

### SERVICE OF PROCESS CLAUSE

The Commissioner, Director or Superintendent of Insurance of the State (or other office specified for the following purpose) in the State of California is hereby designated as the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit, or proceeding arising our of this policy.  The Company further designates:



NAME:                    Robert Elster

Name of Company or Firm:    Apollo General Insurance Agency, Inc.

Mailing Address:           P.O. Box 1508, Sonoma, CA 95476

As its agent in (state) to whom such process shall be forwarded by the Commissioner, Director, or Superintendent of Insurance.



GEN 0002

**EXHIBIT E - PAGE 233**



POLICY NUMBER:   GLO 000 0222

COMMERCIAL GENERAL LIABILITY
CG 24 04 10 93

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Name of Person or Organization:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.





CG 24 04 10 93

Copyright, Insurance Services Office, Inc., 1992

Page 1 of 1   ☐



COMMERCIAL GENERAL LIABILITY
CG 00 01 10 01

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.







e.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2.  **Exclusions**

This insurance does not apply to:

a.  **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.  **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)  That the insured would have in the absence of the contract or agreement; or

(2)  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c.  **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1)  Causing or contributing to the intoxication of any person;

(2)  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d.  **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e.  **Employer's Liability**

"Bodily injury" to:

(1)  An "employee" of the insured arising out of and in the course of:

(a)  Employment by the insured; or

(b)  Performing duties related to the conduct of the insured's business; or

(2)  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1)  Whether the insured may be liable as an employer or in any other capacity; and

(2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".




© ISO Properties, Inc., 2000

CG 00 01 10 01

**EXHIBIT E - PAGE 236**



**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

*See CG 04 30*

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

*See CG 04 30*

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".



CG 00 01 10 01                    © ISO Properties, Inc., 2000                    Page 3 of 16



(e). At or from any premises, site or location, on which, any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g.  Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h.  Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in, practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i.  War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j.  Damage To Property

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or



© ISO Properties, Inc., 2000

CG 00 01 10 01




(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.





No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.



© ISO Properties, Inc., 2000
CG 00 01 10 01

EXHIBIT E – PAGE 240



**l.** **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.** **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n.** **Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".



**COVERAGE C MEDICAL PAYMENTS** *excluded*

**1.** **Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2.** **Exclusions**

We will not pay expenses for "bodily injury":

**a.** **Any Insured**

To any insured, except "volunteer workers".

**b.** **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** **Athletics Activities**

To a person injured while taking part in athletics.

**f.** **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g.** **Coverage A Exclusions**

Excluded under Coverage A.

**h.** **War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.





b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.



© ISO Properties, Inc., 2000 CG 00 01 10 01

**EXHIBIT E - PAGE 242**



**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.



CG 00 01 10 01                    © ISO Properties, Inc., 2000                    Page 9 of 16

EXHIBIT E – PAGE 243



4.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b.  Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c.  Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a.  Insureds;

b.  Claims made or "suits" brought; or

c.  Persons or organizations making claims or bringing "suits".

2.  The General Aggregate Limit is the most we will pay for the sum of:

a.  Medical expenses under Coverage C;

b.  Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c.  Damages under Coverage B.

3.  The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4.  Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5.  Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a.  Damages under Coverage A; and

b.  Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6.  Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7.  Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1.  Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit

a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)  How, when and where the "occurrence" or offense took place;

(2)  The names and addresses of any injured persons and witnesses; and

(3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.



© ISO Properties, Inc., 2000  CG 00 01 10 01



**b.** If a claim is made or "suit" is brought against any insured, you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

    **(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

        **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

        **(b)** That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

        **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

        **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

    **(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.





When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".



EXHIBIT E – PAGE 246





3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.





10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".



© ISO Properties, Inc., 2000

CG 00 01 10 01



15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or.

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.



EXHIBIT E - PAGE 249



b. Includes:

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and.

    (2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

    (1) Work or operations performed by you or on your behalf; and

    (2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    (2) The providing of or failure to provide warnings or instructions.



© ISO Properties, Inc., 2000

CG 00 01 10 01

# Exhibit F

Nov 23 04 05:53p    Michelle Barringer    (661) 397-3275    p.2



**Crum Forster**

# COMMERCIAL GENERAL LIABILITY POLICY

## DECLARATIONS

POLICY NUMBER: GLO 011079

| DATE ISSUED: January 7, 2004 | REPLACEMENT OF: GLO 000 0222 |
|---|---|

| ITEM | | |
|---|---|---|
| 1. | NAMED INSURED & ADDRESS: MGA Entertainment, Inc.<br>16730 Schoenborn Street<br>North Hills, CA 91343<br><br>Named Insured's Business: Toys & Game Manufacturer & Sales    Form of Business: Corporation | |
| 2. | POLICY PERIOD: POLICY COVERS FROM: 01/01/04    TO: 01/01/05<br>12:01 a.m. Standard Time at the Named Insured's address stated above | |
| 3. | COVERAGE IS PROVIDED BY:<br><br>Crum & Forster Specialty Insurance Company<br>( A Stock Company)<br>305 Madison Avenue<br>Morristown, NJ 07962 | REPRESENTATIVE:<br>Number: 79623<br><br>Broker:    Marsh USA, Inc.<br>Telephone Number: (213) 346-5721<br>Office Address:    777 South Figueroa Street<br>Town, State & Zip:    Los Angeles, CA 90017-5822 |
| 4. | LIMITS OF INSURANCE:    (The Limits of Insurance are the amounts shown below.)<br><br>(a) Each Occurrence Limit:   $1,000,000<br>(b) General Aggregate Limit: $2,000,000<br>(c) Personal & Advertising Injury Limit: $1,000,000 Any One Person or Organization<br>(d) Products-Completed Operations Aggregate Limit: $2,000,000<br>(e) Damage to Premises Rented To You Limit: $50,000 Any One Premise<br>(f) Medical Expense Limit:  $ Excluded | |
| 5. | DEDUCTIBLE:    $10,000, *<br>See FM 101.0.1539<br>Applies ☒ Per Claim<br>Applies ☐ Per Occurrence<br>* Applies to all coverages and products except for Sporting Good Products, wherein a $100,000. Deductible shall apply. | |
| 6. | POLICY JACKET, SCHEDULES, FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT INCEPTION (Number and Edition Date) AS PER MASTER FORMS LIST ATTACHED.<br><br>Location of All Premises You Own, Rent or Occupy: See Schedule of Locations on file with Company. | |
| 7. | PREMIUM: $504,000.    MINIMUM EARNED PREMIUM: $504,000.<br><br>PREMIUM SUBJECT TO ADJUSTMENT: Yes ☒  No ☐ | |

Countersigned by _____

THESE DECLARATIONS, TOGETHER WITH POLICY JACKET, MASTER FORMS LIST, SCHEDULES AND ENDORSEMENTS, IF ANY, ARE ISSUED AS PART OF, AND IN THE COMPLETION OF THE ABOVE NUMBER POLICY.

CGLDecDedOcc 03 01 02



## Crum & Forster Specialty Insurance Company
### An Arizona Corporation
### Home Office: Phoenix, Arizona

(A Stock Company)

SIGNATURE                                   SIGNATURE

Douglas M. Libby                            Valerie J. Gasparik
President                                   Secretary

FM 206.0.30  10/01



Nov 23 04 05:54p      Michelle Darringer        (661) 397-3275        p.4

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

MASTER FORMS LIST

The following forms and endorsements are attached to this policy effective at inception:



| FORM TITLE | FORM NUMBER |
|---|---|
| Absolute Asbestos Exclusion | FM 101.0.1252 (0500) |
| Absolute Silica/Silicosis | FM 101.0.2115 (0703) |
| Additional Insured – Owners, Lessees or Contractors | FM 600.0.942 (8/96) |
| Additional Insured – Vendors | CG 2015 (1188) |
| Commercial General Liability Coverage Form | CG 0001 1001 |
| Common Policy Conditions | IL 0017 1198 |
| Computer Related and Other Electronic Problems Exclusion | FM 101.0.2112 (0503) |
| Declarations Page | CGLDecOccDed 03 01 02 |
| Deductible Liability Endorsement | FM 101.0.1539 (0202) |
| Definition of Gross Sales | CFSGEN1 |
| Earned Premium & Composite Rate Endorsement | CFS GEN12 (01/01) |
| Employment Related Practices Exclusion | CG 2147 0798 |
| Exclusion of Certified Acts of Terrorism | CG 2175 (1202) |
| Exclusion – Coverage C Medical Payments | CG 2135 (1001) |
| Exclusion – Testing or Consulting | CG 2233 (0798) |
| Fungi or Bacteria Exclusion | CG 2167 (0402) |
| Lead Exclusion | FM 600.0.955 9/99 |
| Master Forms List | GEN 0001 |
| Multi-Media Professional Liability | CFSGL 116 |
| Nuclear Energy Liability Exclusion Endorsement | IL0021 0498 |
| Punitive or Exemplary Damages | FM 101.0.1203 (1189) |
| Service of Process Clause | GEN 0002 |
| Signature Page – Crum & Forster Specialty | FM 206.0.30  10 01 |
| Waiver of Transfer of Rights of Recovery | CG2404 (1093) |
| War Liability Exclusion | CG 0062 (1202) |



GEN 0001

EXHIBIT F - PAGE 254



## ABSOLUTE ASBESTOS EXCLUSION

It is agreed that:

1. This policy does not apply to "bodily injury", "property damage", or "personal or advertising injury" in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

2. This policy does not apply to "economic loss", "diminution of property", "abatement costs", or any other loss, cost, or expense including "Equitable Relief", in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

3. This policy provides no coverage for any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or "suit" arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

For the purpose of this exclusion only, the following additional terms are defined:



"Abatement costs" means any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal or replacement.

"Diminution of property" means the diminishing or lessening in value of property.

"Economic loss" means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture or utilization of a good or product.

"Equitable relief" means any remedy or relief, including restitution or injunctive relief, sought in a court with equitable powers.



FM 101.0.1252 05 00



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## ABSOLUTE SILICA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART:

It is agreed that:

1. This policy does not apply to "bodily injury", "property damage", or "personal and advertising injury" in any way or to any extent arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica, or any product or action used or taken to protect any person from exposure to silica in any form.

2. This policy does not apply to "economic loss", "diminution of property", "abatement costs", or any other loss, cost, or expense including "Equitable Relief", in any way or to any extent arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica or any product or action used or taken to protect any person from exposure to silica in any form.

3. This policy provides no coverage for any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or "suit" arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica or any product or action used or taken to protect any person from exposure to silica in any form.

For the purpose of this exclusion only, the following additional terms are defined:

"Abatement costs" means any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal or replacement.

"Diminution of property" means the diminishing or lessening in value of property.

"Economic loss" means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture or utilization of a good or product.

"Equitable relief" means any remedy or relief, including restitution or injunctive relief, sought in a court with equitable powers.



FM 101.0.2115 07 03



Policy Number: GLO 011079

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## BROAD ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following.

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

Any person or organization required by written contract to be named as an additional insured under this policy, and, for whom operations are being performed by or on behalf of the named insured.



WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the SCHEDULE, but only with respect to liability arising out of your ongoing operations performed for the additional insured at the job indicated by the written contract.

FM 600.0.942 (8/96)

Nov 23 04 05:54p    Michelle Darringer          (661) 397-3275        p.8



POLICY NUMBER: GLO 011079                                    COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED -- VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization (Vendor):**

    Any Vendor of the Named Insured

**Your Products:**

    Your products manufactured or sold by the Named Insured

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)



WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.



CG 20 15 11 88          Copyright, Insurance Services Office, Inc., 1986, 1988          Page 1 of 1          □

**EXHIBIT F – PAGE 258**

Nov 23 04 05:54p    Michelle Darringer    (661) 397-3275    p.8



COMMERCIAL GENERAL LIABILITY
CG 00 01 10 01

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    c.  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.



**UNIFORM**
**CG 00 01 10 01**

© ISO Properties, Inc., 2000

Page 1 of 16



e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".





      © ISO Properties, Inc., 2000      CG 00 01 10 01

**EXHIBIT F - PAGE 260**



**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".



CG 00 01 10 01                    © ISO Properties, Inc., 2000                    Page 3 of 16



(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any;

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

© ISO Properties, Inc., 2000





(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it:

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III — Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III — Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.



© ISO Properties, Inc., 2000

Nov 23 04 05:55p       Michelle Darringer           (661) 397-3275       p.14



No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions

This insurance does not apply to:

a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. Material Published With Knowledge Of Falsity

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. Material Published Prior To Policy Period

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. Breach Of Contract

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. Quality Or Performance Of Goods – Failure To Conform To Statements

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. Wrong Description Of Prices

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. Insureds In Media And Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. Electronic Chatrooms Or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.



EXHIBIT F - PAGE 264



l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**COVERAGE C MEDICAL PAYMENTS**

1. **Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while taking part in athletics.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

h. **War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.



Nov 23 04 05:56p    Michelle Darringer         (661) 397-3275          p.16



b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of Insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section 3 – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.



© ISO Properties, Inc., 2000              CG 00 01 10 01

EXHIBIT F – PAGE 266



## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insured, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.





Nov 23 04 05:56p    Michelle Darringer        (661) 397-3275        p.18

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.



Page 10 of 16                    © ISO Properties, Inc., 2002



b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I — Coverage A — Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.



Nov 23 04 05:57p   Michelle Barringer        (661) 397-3275        p.20



When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".



EXHIBIT F – PAGE 270



3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

     (1) Goods or products made or sold by you in the territory described in a. above;

     (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

     (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

     (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

     (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.





10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".



**Page 14 of 16**          © ISO Properties, Inc., 2000          CG 00 01 10 01



15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.



CG 00 01 10 01                © ISO Properties, Inc., 2000                Page 15 of 16

Nov 23 04 05:58p    Michelle Darringer          (661) 397-3275          p.24



b.  Includes
   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
   (2) The providing of or failure to provide warnings or instructions.

c.  Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":
   a.  Means:
      (1) Work or operations performed by you or on your behalf; and
      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b.  Includes
      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
      (2) The providing of or failure to provide warnings or instructions.





EXHIBIT F - PAGE 274

Nov 23 04 05:58p    Michelle Darringer         (661) 397-3275        p.25



IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.



IL 00 17 11 98          Copyright, Insurance Services Office, Inc., 1998          Page 1 of 1    □

Nov 23 04 05:58p    Michelle Darringer         (661) 397-3275        p.26



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMPUTER RELATED AND OTHER ELECTRONIC PROBLEMS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability:

2.  Exclusions

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of:

1.  any actual or alleged failure, malfunction or inadequacy of:

    a.  any of the following, whether belonging to any insured or to others:
        (1) Computer hardware, including microprocessors;
        (2) Computer application software;
        (3) Computer operating systems and related software;
        (4) Computer networks
        (5) Microprocessors (computer chips) not part of any computer system; or
        (6) Any other computerized or electronic equipment or components; or

    b.  any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in paragraph a. above due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times, including the year 2000 and beyond.

2.  any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or for any insured to determine, rectify or test for, any potential or actual problems described in paragraph 1.above.

Countersigned by _____

                 Authorized Representative



FM 101.0.2112 05 03

Nov 23 04 05:58p     Michelle Darringer        (661) 397-3275       p.27



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**GENERAL LIABILITY**
**DEDUCTIBLE LIABILITY INSURANCE - INDEMNITY AND DEFENSE COMBINED**

This endorsement modifies insurance provided under the following:

I.

### SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| Bodily Injury Liability, and/or Property Damage Liability, and Medical Payments, Combined | $ 10,000. | per claim or |
| | $ ---------- | per occurrence |
| Personal Injury and/or Advertising Injury Liability Combined * | $ 10,000. | per claim or |
| | $ ---------- | per occurrence |
| All Covered Claims | $ ---------- | Aggregate |

*This includes "personal injury" and "advertising injury" or "personal and advertising injury" depending on the coverage actually provided in the policy to which this endorsement applies.

A. As respects the aggregate limit shown in the schedule above one of the following conditions apply, as indicated by an x:

   1. _____ This limit is not subject to adjustment.

   2. _____ This limit is a minimum based on estimated _____ of _____ and is subject to adjustment. Should your actual _____ for the policy period exceed the estimate, the limit shall be increased by _____ for each _____, rounded to the nearest whole unit, that the actual exceeds the estimate.

B. A loss conversion factor (LCF) of _____ will apply to all deductible reimbursements paid by the insured. The LCF will be charged in addition to the deductible obligations of the insured, and does not erode the deductible limits stated in this endorsement.



FM 101.0.1539 02 02

Page 1 of 6

**EXHIBIT F - PAGE 277**



**II.    APPLICATION OF ENDORSEMENT**

A. Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury", and "personal and/or advertising injury", however caused:

B. Our obligation to pay damages under the Bodily Injury and Property Damage Liability and the Personal and/or Advertising Injury Liability, to defend any claim or "suit", to investigate any "occurrence", to settle any claim or "suit", and to pay benefits under Medical Payments applies only to the amount of damages, benefits, and/or "defense expense" incurred in excess of any deductible amounts stated in the Schedule above as applicable to such coverage.

C. The limits of insurance applicable to each "occurrence" for coverages subject to the deductible shall be reduced by the application of any deductible amount stated as being applicable to such coverage.

D. "Aggregate" policy limits for any coverage shall be reduced by the application of any deductible amount.

E. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amounts stated in the Schedule above apply as follows:

1. **PER CLAIM BASIS** - if the deductible amount indicated in the Schedule above is on a "per claim" basis, that deductible amount applies as follows:

(1) Under Bodily Injury Liability and/or Property Damage Liability and Medical Payments, Combined, to all damages sustained by any one person because of "bodily injury" and "property damage" combined as the result of any one "occurrence".

(2) Under Personal and/or Advertising Injury Liability Combined, to all damages because of "personal and/or advertising injury" combined sustained by any one person because of any one "occurrence" or offense.

(3) If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

(4) With respect to "property damage", and "personal and/or advertising injury", person includes an organization.



FM 101.0.1539 02 02

Page 2 of 6

**EXHIBIT F - PAGE 278**



2. **PER OCCURRENCE BASIS** - if the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

  (1) Under Bodily Injury Liability and/or Property Damage Liability and Medical Payments, Combined, to all damages because of "bodily injury" and "property damage" as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

  (2) Under Personal and/or Advertising Injury Liability Combined, to all damages because of "personal and/or advertising injury" combined as the result of any one "occurrence" or offense regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

F. The terms of this insurance, including those with respect to:

  1. our right and duty to defend any "suits" seeking those damages;

  2. our right to select counsel and maintain control of the defense; and

  3. your duties in the event of an "occurrence", claim or "suit";

  apply irrespective of the application of the deductible amount.

III. **AGGREGATE LIMIT**

A. The aggregate limit shown in the schedule is the most the insured will have to pay for all covered claims within the deductible.

  1. If we cancel the policy for reasons other than nonpayment of premium, the aggregate amount shown in the Schedule will be reduced to a pro rata amount based on the time this policy was in force.

  2. If you cancel the policy as a result of your retiring from business, the aggregate deductible amount will be reduced to a pro rata amount based on the time this policy was in force.

  3. If the policy is canceled for any reason other than as described in paragraph A.1, and A. 2, above, the aggregate deductible amount will not be reduced.

B. The aggregate will not be reduced if this policy is issued for a term less than one (1) year except if the policy is canceled. In such event, the aggregate deductible will be determined in accordance with section A. above.



FM 101.0.1539 02 02

Page 3 of 6



**EXHIBIT F - PAGE 279**



**IV.    REIMBURSEMENT TERMS**

A.  We will pay the deductible amount for you, but you must reimburse us after we send you notice that payment is due.  We will send you notice that payment is due on a periodic basis but not more frequently than on a monthly basis, unless a single loss is paid by us in excess of 50% of the escrow balance held by us, in which case we have the right to bill you immediately for this loss. You are responsible to reimburse us for the total loss falling within the deductible including any expected recovery, as described below, until such time as the recovery is received.

B.  Reimbursement of the deductible amount shall be applied in the following order:

1.  First, to benefits paid under Medical Payments.

2.  Second, to any "defense expense" incurred by us regardless of whether there was any payment for actual damages.

3.  Third, to damages paid by us on your behalf.

C.  These rights are in addition to any other legal rights we have to be reimbursed.



**V.    DEFENSE EXPENSE**

"Defense expense" is defined as:

The expenses incurred by you or us in connection with the investigation of accidents, adjustments of claims and includes any legal costs associated with the defense and settlement or trial of suits.  Defense expenses do not include work ordinarily done by a Claims Department, nor expenses incurred by employees of any "insured".  Defense expenses and legal costs include, but are not limited to the following:

a.  Payments to attorneys, law firms, doctors, experts, appraisers, photographers, adjusters, investigators, printers, stenographers (not on salary or in the employment of the company) and all other services and expenses in connection with the investigation and settlement of claims and the defense or legal proceedings as defined in the policy.

b.  Costs for release of attachments, removal and appeal bonds, and post-judgment interest.

c.  Fees and expenses of witnesses, lay and expert.

d.  Pre-judgment interest.

FM 101.0.1539 02 02

Page 4 of 6

**EXHIBIT F - PAGE 280**



## VI. RECOVERY FROM OTHERS

If any money is recovered under Rights of Recovery Against Others it will be disbursed in the following order so long as funds remain:

A. First, all expenses incurred in making the recovery will be repaid; and

B. Second, we will be repaid to the extent of our actual loss payments; and

C. Third, the insured will be repaid for any deductible reimbursements made.

Disbursement of recoveries will occur on the next deductible billing following receipt of the recovery.

If our recovery attempt is unsuccessful, we will bear all of the recovery expenses.

## VII. CANCELLATION

The following is added to the cancellation conditions of the policy.

A. If you fail to provide and maintain collateral and escrow as required by us to secure your obligations under this deductible endorsement, we have the right to cancel the policy for nonpayment of premium.

B. If you fail to fully reimburse us when due, we have the right to cancel the policy for nonpayment of premium. We may keep the amount of unearned premium that will reimburse us for the payments we made.

## VIII. ARBITRATION

If any dispute shall arise between you and us with reference to this Deductible Endorsement, such dispute, upon written request of either party, shall be submitted to arbitration in accordance with the Commercial Rules of the American Arbitration Association. Said arbitration shall be conducted in the county of the mailing address of the first named insured by a panel of three arbitrators, one to be chosen by each party and the third by the two so chosen. The arbitrator chosen by each party shall be from a list, provided by the American Arbitration Association, of arbitrators knowledgeable in the area of the dispute. If either party refuses or neglects to appoint an arbitrator within thirty days after receipt of written notice from the other party requesting it to do so, the requesting party may appoint two arbitrators. If the two arbitrators fail to agree in the selection of a third arbitrator within thirty days of their appointment, each of them shall name two, of whom the other shall decline one, and the decision shall be made by drawing lots. The arbitrators shall interpret this

FM 101.0.1539 02 02                                    Page 5 of 6

Nov 23 04 05:59p    Michelle Darringer        (661) 397-3275        p.32



Agreement as an honorable engagement and not merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law; and they shall make their award with a view of effecting the general purposes of this Agreement in a reasonable manner rather than in accordance with a literal interpretation of the language. Each party shall submit its case to its arbitrator within thirty days of the appointment of the third arbitrator. The decision in writing of any two arbitrators, when filed with the parties hereto, shall be final and binding on both parties, and judgment may thereafter be entered thereon in any court of competent jurisdiction. Each Party shall bear the expenses of its own arbitrator and shall jointly and equally bear with the other party the expenses of the third arbitrator. The prevailing party in the arbitration shall be awarded its attorneys' fees and expenses (other than the cost of the arbitrators). In the event that each party prevails on one or more issues, the arbitrators shall determine as accurately as possible which party has more substantially prevailed on an overall basis, and award that party attorneys' fees and costs in the percentage amount by which that party has prevailed.





FM 101.0.1539 02 02



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DEFINITION OF GROSS SALES

1.  **Definition**
    The gross amount charged by the Named Insured, concessionaires of the Named Insured or by others trading under the insured's named for:

    a.  All goods or products sold or distributed during the Policy Period;
    b.  Operations performed during the Policy Period; and
    c.  Rentals during the Policy Period;
    d.  Dues or fees during the Policy Period.

2.  **Inclusions**
    The following items shall not be deducted from gross sales as determined above:

    a.  Foreign exchange discounts;
    b.  Freight allowance to customers;
    c.  Total sales of consigned goods and warehouse receipts;
    d.  Trade or cash discounts;
    e.  Bad debts; and
    f.  Repossession of items sold on installments (amounts actually collected).

3.  **Exclusions**
    The following items shall be deducted from gross sales:

    a.  Sales or excise taxes which are collected and submitted to a governmental division;
    b.  Credits for repossessed merchandise and products returned. Allowances for damaged and spoiled goods;
    c.  Finance charges for items sold on installments;
    d.  Freight charges on sales if freight is charged as a separate item on customer's invoice; and
    e.  Royalty income from patent rights or copyrights which are not product sales.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

---

Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Policy #_____

Effective on and after _____ 12:01 am standard time

Issued to _____

---

Countersigned by _____          Date:_____

Authorized Representative

CFSGEN1

Nov 23 04 05:59p    Michelle Darringer       (661) 397-3275        p.34



# ENDORSEMENT

This endorsement, issued by CRUM & FORSTER SPECIALTY INSURANCE COMPANY, forms a part of the policy to which it is attached.

### EARNED PREMIUM AND COMPOSITE RATE ENDORSEMENT

In consideration of Crum & Forster's acceptance of this insurance, the Named Insured hereby agrees that the minimum earned premium(s) due for this policy shall be calculated in accordance with the following:

1. In the event of cancellation of this policy by the Named Insured after this policy has been in effect for more than thirty (30) days, the return premium due, if any, shall be computed at a rate equal to ninety percent (90%) of the pro-rata unearned policy premium, subject however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy. Within the first thirty (30) days of coverage under this insurance, a twenty-five percent (25%) absolute minimum earned premium is applicable, unless another higher premium is designated specifically as a minimum premium in the declarations.

2. Failure by the Named Insured to remit premium payments when due shall be considered a request by the Named Insured for the Company to cancel this policy. Cancellation shall be computed in accordance with paragraph 1 above.

3. In the event of cancellation of this policy by the Company for reasons other than nonpayment of premium, the earned premium for this policy shall be computed on a pro-rata basis, subject, however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy.

4. The premium entered on the Declarations page of this policy as ADVANCE PREMIUM is a provisional premium only and is subject to upward adjustment only in accordance with our rules, rates and the Premium Audit provisions of this policy. Premium adjustments effected as a result of premium audits will be done after the policy is no longer in effect, but may be done by the Company while the policy is in effect.

5. The amount entered as ADVANCE PREMIUM on the Declarations page of this policy has been computed on a composite rate basis for both "bodily injury" and "property damage" as follows:

| Exposure Basis | Estimated Exposure | x | Composite Rate | = | ADVANCE PREMIUM |
|---|---|---|---|---|---|
| Gross Sales | $9,000,000. | X | $0.56 | = | $504,000. |

If the Exposure Basis is Payroll, then the Composite Rate shall be applied per hundred dollars of Payroll. If the Exposure Basis is Gross Sales, then the Composite Rate shall be applied per thousand dollars of Gross Sales.



CFS GEN 12 (01/01)

Nov 23 04 05:59p    Michelle Darringer         (661) 397-3275         p.35



COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.



EXHIBIT F - PAGE 285

Nov 23 04 06:00p    Michelle Darringer         (661) 397-3275        p.36



COMMERCIAL GENERAL LIABILITY
CG 21 75 12 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or



4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs 1. and 2. describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

   a. The act resulted in aggregate losses in excess of $5 million; and

CG 21 75 12 02                  © ISO Properties, Inc., 2002                  Page 1 of 2      □



b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.





Page 2 of 2                    © ISO Properties, Inc., 2002                    CG 21 75 12 02    □

EXHIBIT F - PAGE 287

Nov 23 04 06:00p    Michelle Darringer        (661) 397-3275        p.38



POLICY NUMBER: GLO 011079

COMMERCIAL GENERAL LIABILITY
CG 21 35 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Description And Location Of Premises Or Classification: |
| --- |
| |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)



With respect to any premises or classification shown in the Schedule:

1. Section I – Coverage C – Medical Payments does not apply and none of the references to it in the Coverage Part apply; and

2. The following is added to Section I – Supplementary Payments:

   h. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies,



CG 21 35 10 01                © ISO Properties, Inc., 2000                Page 1 of 1        □

EXHIBIT F – PAGE 288

Nov 23 04 06:00p    Michelle Barringer    (661) 397-3275    p.39



COMMERCIAL GENERAL LIABILITY
CG 22 33 07 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – TESTING OR CONSULTING ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. An error, omission, defect or deficiency in:

   a. Any test performed; or

   b. An evaluation, a consultation or advice given,

   by or on behalf of any insured;

2. The reporting of or reliance upon any such test, evaluation, consultation or advice; or

3. An error, omission, defect or deficiency in experimental data or the insured's interpretation of that data.





CG 22 33 07 98    Copyright, Insurance Services Office, Inc., 1997    Page 1 of 1    □

**EXHIBIT F – PAGE 289**

Nov 23 04 06:00p    Michelle Darringer        (661) 397-3275        p.40



COMMERCIAL GENERAL LIABILITY
CG 21 67 04 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.



**B.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

CG 21 67 04 02                    © ISO Properties, Inc., 2001                    Page 1 of 1       □

Nov 23 04 06:01p    Michelle Barringer          (661) 387-3275        p.41



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

## LEAD EXCLUSION

This policy does not apply to:

1.  "Bodily Injury", "Property Damage", or "Personal and Advertising Injury" in any way or to any extent arising out of the actual, alleged or threatened exposure to lead or any substance containing lead.

2.  "Economic Loss", "Diminution of Property", "Abatement Costs", or any other loss, cost, or expense including "Equitable Relief", in any way or to any extent arising out of or involving lead or any substance containing lead.

3.  Any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any "Claim" or "Suit" arising out of or involving lead or any substance containing lead.

For the purpose of this exclusion, the following additional terms are defined:

"Abatement Costs" mean any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal, replacement, or treatment.

"Diminution of Property" means the diminishing or lessening in value of property.

"Economic Loss" means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture, utilization, or existence of a substance or product.

"Equitable Relief" means any remedy or relief, including restitution or injunctive relief, sought in a court with equitable powers.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.



| Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy. |
|---|
| Policy No. _____ |
| Effective on and after _____ 12:01a.m. standard time |
| Issued to _____ |

Countersigned by: _____
                          **Authorized Representative**

FM 600.0.955 (0999)

Nov 23 04 06:01p    Michelle Darringer        (661) 397-3275        p.42




A HARTFORD Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

*Named Insured: MGA Entertainment          Policy No. GLO 011079

*Company: C&F Specialty                    Effective Date: 01/01/04

*This information is completed only when this endorsement is issued subsequent to preparation of policy.

### MULTI-MEDIA ACTIVITY EXCLUSION

In consideration of the premium charged, it is agreed that this insurance shall not apply to liability arising out of or resulting from "Multi-Media Activity".

"Multi-Media Activity" means creating, producing, distributing, exhibiting, broadcasting, advertising or publicizing "Matter".



"Matter" means printed, verbal, numerical, audio or visual expression, or any other form of expression, fixed in software or any other medium.

All other terms and conditions remain unchanged.

                                    _____
                                    Authorized Representative



CFSGL116



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTVE AND HIGHWAY LIABILITY POLICY NEW YORK
DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

A . Under any Liability Coverage, to "bodily injury" or "property damage:"
    (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

    (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;



IL 00 21 04 98

Page 1 of 3

Nov 23 04 06:01p   Michelle Darringer        (661) 397-3275        p.44



(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property threat.

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic, or explosive properties;

"Nuclear material" means "source material," "Special nuclear material," or "by-product material;"

"Source material," "special nuclear material," and "by-product material;" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing, or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

IL 00 21 04 98                                    Page 2 of 3

**EXHIBIT F - PAGE 294**



(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.





IL 00 21 04 98                                                    Page 3 of 3



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION

This policy does not apply to punitive or exemplary damages, fines or penalties.



This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy. |
|---|
| Policy # _____ |
| Effective on and after _____ 12:01 am standard time |
| Issued to _____ |

Countersigned by _____

Authorized Representative



FM 101.0.1203  (1189)

EXHIBIT F - PAGE 296



## SURPLUS LINES FILING AND POLICY ISSUANCE CRITERIA

### SERVICE OF PROCESS CLAUSE

The Commissioner, Director, or Superintendent of Insurance of the State (or other office specified for the following purpose) in the State of California is hereby designated as the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit, or proceeding arising out of this policy. The Company further designates:

Name:                                Doug Libby, President

Name of Company or Firm:             Crum & Forster Specialty Insurance Co.

Mailing Address:                     305 Madison Avenue ·
                                     Morristown, NJ 07962



As its agent in (state) to whom such process shall be forwarded by the Commissioner, Director, or Superintendent of Insurance.

ALL STAMPS PLACED ON POLIY OR OTHER DOCUMENTS MUST BE IN RED INK

GEN 0002

Nov 23 04 06:01p    Michelle Darringer        (661) 387-3275        p.48



POLICY NUMBER: GLO 011079                    COMMERCIAL GENERAL LIABILITY
                                                    CG 24 04 10 93

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:
    COMMERCIAL GENERAL LIABILITY COVERAGE PART

                        SCHEDULE

**Name of Person or Organization:**

        AS REQUIRED BY WRITTEN CONTRACT

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV -- COMMER-CIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.





CG 24 04 10 93        Copyright, Insurance Services Office, Inc., 1992        Page 1 of 1    □

**EXHIBIT F - PAGE 298**

Nov 23 04 06:02p   Michelle Darringer        (661) 397-3275        p.49



COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion I. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

2. Exclusions

This insurance does not apply to:

i. War

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or



(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

WAR

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

a. War, including undeclared or civil war; or

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

C. Exclusion h. under Paragraph 2., Exclusions of Section I – Coverage C – Medical Payments does not apply. Medical payments due to war are now subject to Exclusion g. of Paragraph 2., Exclusions of Section I – Coverage C – Medical Payments since "bodily injury" arising out of war is now excluded under Coverage A.



CG 00 62 12 02                © ISO Properties, Inc., 2002                Page 1 of 1        □

EXHIBIT F - PAGE 299

Nov 23 04 06:02p     Michelle Darringer          (661) 387-3275          p.50



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ADDING/DELETING ENDORSEMENT

NAMED INSURED:   MGA Entertainment, Inc.

POLICY NUMBER:   **GLO 011079**

The following endorsements are either added to, or deleted from, the policy noted above, effective as of the date shown below:

| ADDED | DELETED | EFFECTIVE DATE | FORM NUMBER | FORM TITLE |
|-------|---------|----------------|-------------|------------|
| ☒ | ☐ | 01/01/04 | FM 100.0.14 (4/83) | Named Insured Listing |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |



FM 101.0.233

**EXHIBIT F - PAGE 300**

Nov 23 04 06:02p    Michelle Darringer        (661) 397-3275        p.51



INSURED NAME: MGA Entertainment
EFFECTIVE: 01/01/04
        12:01 AM January 1, 2004

                    ENDORSEMENT #1

This endorsement forms a part of policy No. GLO 011079

Issued by Crum & Forster Specialty Insurance Company

It is agreed that item 1 (Name of Insured) of the declarations is as follows:

MGA Entertainment, Inc.
MGA Entertainment (HK) Ltd.
16730 Schoenborn L.P.
        A California Limited Partnership
Schoenborn Partners
        A Limited Liability Corporation
Sumitomo Trading
Micro Games of America
Isaac Larian
Jahangir Makabi
Shirin Makabi
MGA Entertainment (HK) Ltd.
        Hong Kong
MGA Entertainment (Mauritius) Ltd.



All other terms and conditions of this policy remain unchanged.

                                        _____
                                        Authorized Representative



F M 100.0.14 (4/83)



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ADDING/DELETING ENDORSEMENT**

NAMED INSURED:   MGA Entertainment, Inc.

POLICY NUMBER:   GLO 011079

The following endorsements are either added to, or deleted from, the policy noted above, effective as of the date shown below:

| ADDED | DELETED | EFFECTIVE DATE | FORM NUMBER | FORM TITLE |
|-------|---------|----------------|-------------|------------|
| ☒ | ☐ | 01/01/04 | FM 100.0.14 (4/83) | Named Insured Listing |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |



FM 101.0.233

Nov 23 04 06:02p    Michelle Darringer        (661) 397-3275        p.53



Crum&Fors_er
A FAIRFAX Company

INSURED NAME: MGA Entertainment
EFFECTIVE: 01/01/04
    12:01 AM January 1, 2004

### ENDORSEMENT #1

This endorsement forms a part of policy No. GLO 011079

Issued by Crum & Forster Specialty Insurance Company

It is agreed that item 1 (Name of Insured) of the declarations is as follows:

MGA Entertainment, Inc.
MGA Entertainment (HK) Ltd.
16730 Schoenborn L.P.
    A California Limited Partnership
Schoenborn Partners
    A Limited Liability Corporation
Sumitomo Trading
Micro Games of America
Isaac Larian
Jahangir Makabi
Shirin Makabi
MGA Entertainment (HK) Ltd.
    Hong Kong
MGA Entertainment (Mauritius) Ltd.

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

FM 100.0.14 (4/83)

Nov 23 04 06:02p   Michelle Barringer      (661) 397-3275        p.54



## Crum & Forster
### Specialty Insurance Co.
## CLAIM REPORTING

### Dear Policyholder:

Please report claims to:

JoAnne McGovern
Litigation Unit Manager
Crum & Forster Specialty Insurance Company
305 Madison Avenue
Morristown, NJ 07962

Phone: 973-490-6094
Fax:    1-877-622-6230
Email: Joanne_Mcgovern@cfins.com

All Claims Handling is centralized at this location for Crum & Forster Specialty Insurance
Company.

Thank you.





305 Madison Avenue, PO Box 1973, Morristown, New Jersey 07962-1973   TEL: (973) 490-6600

# Exhibit G



**Crum** **Forster**

## COMMERCIAL GENERAL LIABILITY POLICY

### DECLARATIONS

POLICY NUMBER:  GLO 050151

| DATE ISSUED:  January 14, 2005 | REPLACEMENT OF: GLO 011079 |
|---|---|

| ITEM 1. | NAMED INSURED & ADDRESS: |
|---|---|

**MGA Entertainment, Inc,**
**16380 Roscoe Blvd., Suite 100**
**Van Nuys, CA 91406**

Named Insured's Business:  Toys & Game Manufacturer & Sales         Form of Business:  Corporation

| 2. | POLICY PERIOD:  POLICY COVERS FROM:  01/01/05     TO:   01/01/06 |
|---|---|

12:01 a.m. Standard Time at the Named Insured's address stated above

| 3. | COVERAGE IS PROVIDED BY: | REPRESENTATIVE:<br>Number:  82919 |
|---|---|---|

Crum & Forster Specialty Insurance Company
( A Stock Company)
305 Madison Avenue
Morristown, NJ 07962

Broker:  Marsh Risk & Insurance Services
Telephone Number: 213-346-5790
Office Address: 777 South Figueroa Street
Town, State & Zip: Los Angeles, CA 90017-5822

| 4. | LIMITS OF INSURANCE:     (The Limits of Insurance are the amounts shown below.) |
|---|---|

(a)  Each Occurrence Limit:   $1,000,000
(b)  General Aggregate Limit: $2,000,000
(c)  Personal & Advertising Injury Limit:  $1,000,000        Any One Person or Organization
(d)  Products-Completed Operations Aggregate Limit: $2,000,000
(e)  Damage to Premises Rented To You Limit:  $50,000   Any One Premise
(f)  Medical Expense Limit: Excluded

| 5. | DEDUCTIBLE:     $ 10,000.  All Coverages except Sporting Good Products |
|---|---|

$100,000.  Sporting Goods Products

See FM 101.0.1539                    Applies ☒ Per Claim
                                     Applies ☐ Per Occurrence

| 6. | POLICY JACKET, SCHEDULES, FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT INCEPTION (Number and Edition Date) AS PER MASTER FORMS LIST ATTACHED. |
|---|---|

Location of All Premises You Own, Rent or Occupy:  See Schedule of Locations on file with Company.

| 7. | PREMIUM: $561,600.                          MINIMUM EARNED PREMIUM: $561,600. |
|---|---|

PREMIUM SUBJECT TO ADJUSTMENT: Yes ☒ No ☐

Notice: Companies writing property and Casualty insurance business in California are required to participate in the California Insurance Guaranty Association. If a company becomes insolvent, the California Insurance Guaranty Association assessment surcharge and assessments each insurance company for its pro-rata/fair share. California law requires all companies to surcharge policies to recover these assessments. If your policy is surcharged, "CA Surcharge" with an amount will be displayed on your premium notice.

THESE DECLARATIONS, TOGETHER WITH POLICY JACKET, MASTER FORM LIST, AND SCHEDULE OF FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART OF, AND IN THE COMPLETION OF THE ABOVE NUMBER POLICY.

CGLDecDedOcc 03 01 02



## Crum & Forster Specialty Insurance Company
### An Arizona Corporation
### Home Office: Phoenix, Arizona

(A Stock Company)

SIGNATURE

SIGNATURE

Douglas M. Libby
President

Valerie J. Gasparlk
Secretary



FM 206.0.30  10/01



POLICY NUMBER:  GLO 050151

COMMERCIAL GENERAL LIABILITY
CG 20 10 07 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Locations |
|---|---|
| As required by written contract. | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or
2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.





CG 20 10 07 04

© ISO Properties, Inc., 2004

Page 1 of 1

EXHIBIT G - PAGE 308



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

MASTER FORMS LIST

The following forms and endorsements are attached to this policy effective at inception:

| FORM TITLE | FORM NUMBER |
|---|---|
| Declarations Page | CGLDecOccDed 03 01 02 |
| Signature Page — Crum & Forster Specialty | FM 206.0.30  10 01 |
| Master Forms List | GEN 0001 |
| Absolute Asbestos Exclusion | FM 101.0.1252 |
| Absolute Silica Exclusion | FM 101.0.2115 (0703) |
| Additional Insured — Owners, Lessees or Contractors | CG 2010 (0704) |
| Additional Insured — Vendors | CG 2015 (0704) |
| Architect & Engineers & Surveyors Exclusion | CG 2243 (0798) |
| Commercial General Liability Coverage Form | CG 00 01 10 01 |
| Common Policy Conditions | IL 0017 (1198) |
| Computer Related and Other Electronic Problems Exclusion | FM 101.0.2112 |
| Cross Suits By Named Insureds Exclusion | CFSGL103 |
| Deductible Liability Endorsement | FM 101.0.1539 (0202) |
| Definition of Gross Sales | CFSGEN1 |
| Disclosure Pursuant To Terrorism Risk Insurance Act of 2002 | FM 2.0.838 (0203) |
| Earned Premium & Composite Rate Endorsement | CFS GEN12 (1203) |
| Employee Benefits Liability | CG 0435 |
| Employment Related Practices Exclusion | CG 2147 (0798) |
| Exclusion — Certified Acts of Terrorism | CG 2175 |
| Exclusion — Coverage C Medical Payments | CG 2135 |
| Exclusion — Testing or Consulting E&O Exclusion | CG 2233 (0798) |
| Fungi or Bacteria Exclusion | CG 2167 |
| Lead Exclusion | FM 600.0.955 (0999) |
| Multi-Media Activity Exclusion | CFSGL116 |
| Named Insured | FM 100.0.14 (0996) |
| Nuclear Energy Liability Exclusion Endorsement | IL0021 0498 |
| Punitive or Exemplary Damages | FM 101.0.1203 |
| Service of Process Clause | GEN 0002 |
| Waiver of Transfer of Rights of Recovery | CG 2404 (1093) |
| War Liability Exclusion | CG 0062 (1202) |



GEN 0001

EXHIBIT G - PAGE 309



## ABSOLUTE ASBESTOS EXCLUSION

It is agreed that:

1. This policy does not apply to "bodily injury", "property damage", or "personal or advertising injury" in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

2. This policy does not apply to "economic loss", "diminution of property", "abatement costs", or any other loss, cost, or expense including "Equitable Relief", in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

3. This policy provides no coverage for any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or "suit" arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

For the purpose of this exclusion only, the following additional terms are defined:



"Abatement costs" means any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal or replacement.

"Diminution of property" means the diminishing or lessening in value of property.

"Economic loss" means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture or utilization of a good or product.

"Equitable relief" means any remedy or relief, including restitution or injunctive relief, sought in a court with equitable powers.



FM 101.0.1252 05 00



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# ABSOLUTE SILICA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART:

It Is agreed that:

1. This policy does not apply to "bodily injury", "property damage", or "personal and advertising injury" in any way or to any extent arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica, or any product or action used or taken to protect any person from exposure to silica in any form.

2. This policy does not apply to "economic loss", "diminution of property", "abatement costs", or any other loss, cost, or expense including "Equitable Relief", in any way or to any extent arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica or any product or action used or taken to protect any person from exposure to silica in any form.

3. This policy provides no coverage for any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or "suit" arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica or any product or action used or taken to protect any person from exposure to silica in any form.
For the purpose of this exclusion only, the following additional terms are defined:

"Abatement costs" means any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal or replacement.

"Diminution of property" means the diminishing or lessening in value of property.

"Economic loss" means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture or utilization of a good or product.

"Equitable relief" means any remedy or relief, including restitution or injunctive relief, sought in a court with equitable powers.



FM 101.0.2115 07 03



POLICY NUMBER: GLO 050151

COMMERCIAL GENERAL LIABILITY
CG 20 15 07 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| Any vendor of the named Insured. | Your products manufactured or sold by the named Insured. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.



**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;



CG 20 15 07 04

© ISO Properties, Inc., 2004

Page 1 of 2    □



**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

    **(1)** The exceptions contained in Subparagraphs **d.** or **f.**; or

    **(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.





Page 2 of 2          © ISO Properties, Inc., 2004          CG 20 15 07 04    ☐



COMMERCIAL GENERAL LIABILITY
CG 22 43 07 98

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.



Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.



CG 22 43 07 98        Copyright, Insurance Services Office, Inc., 1997        Page 1 of 1    □

**EXHIBIT G – PAGE 314**



# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.



© ISO Properties, Inc., 2000

MGA 328
Page 1 of 16

**EXHIBIT G – PAGE 315**



e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".



© ISO Properties, Inc., 2000

CG 00 01 10 01



**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".





(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity,

i. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. Damage To Property

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

© ISO Properties, Inc., 2000

MC CG 00 01 10 01



(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described In Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.



CG 00 01 10 01　　　　　© ISO Properties, Inc., 2000　　　　　Page 5 of 16



No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This Insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

© ISO Properties, Inc., 2000

CG 00 01 10 01

**EXHIBIT G – PAGE 320**



**l.  Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n.  Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**COVERAGE C MEDICAL PAYMENTS**

**1.  Insuring Agreement**



a.  We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b.  We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2.  Exclusions**

We will not pay expenses for "bodily injury":

**a.  Any Insured**

To any insured, except "volunteer workers".

**b.  Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.  Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d.  Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.  Athletics Activities**

To a person injured while taking part in athletics.

**f.  Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g.  Coverage A Exclusions**

Excluded under Coverage A.

**h.  War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a.  All expenses we incur.



b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment Interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.



© ISO Properties, Inc., 2000

CG 00 01 10 01

EXHIBIT G – PAGE 322



## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;



         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.



4.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    b.  Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    c.  Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

SECTION III – LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.  Insureds;

    b.  Claims made or "suits" brought; or

    c.  Persons or organizations making claims or bringing "suits".

2.  The General Aggregate Limit is the most we will pay for the sum of:

    a.  Medical expenses under Coverage C;

    b.  Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    c.  Damages under Coverage B.

3.  The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4.  Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5.  Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a.  Damages under Coverage A; and

    b.  Medical expenses under Coverage C

    because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6.  Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7.  Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1.  Bankruptcy

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit

    a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1) How, when and where the "occurrence" or offense took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.



© ISO Properties, Inc., 2000

CG 00 01 10 01



b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.





When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.



**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2000



3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".



6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means: 

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

CG 00 01 10 01                © ISO Properties, Inc., 2000                Page 13 of 16



10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".



© ISO Properties, Inc., 2000 MG SG 00 01 10 01



15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.



© ISO Properties, Inc., 2000



b. Includes

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    (2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

    (1) Work or operations performed by you or on your behalf; and

    (2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    (2) The providing of or failure to provide warnings or instructions.





Page 16 of 16

© ISO Properties, Inc., 2000

MG-1 343
CG 00 01 10 01



IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.



Copyright, Insurance Services Office, Inc., 1998



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMPUTER RELATED AND OTHER ELECTRONIC PROBLEMS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability:

2. Exclusions

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of:

1. any actual or alleged failure, malfunction or inadequacy of:

a. any of the following, whether belonging to any insured or to others:
    (1) Computer hardware, including microprocessors;
    (2) Computer application software;
    (3) Computer operating systems and related software;
    (4) Computer networks
    (5) Microprocessors (computer chips) not part of any computer system; or
    (6) Any other computerized or electronic equipment or components; or

b. any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in paragraph a. above due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times, including the year 2000 and beyond.

2. any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or for any insured to determine, rectify or test for, any potential or actual problems described in paragraph 1.above.

Countersigned by _____
                          Authorized Representative



FM 101.0.2112 0503

**EXHIBIT G - PAGE 332**



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

<u>**CROSS SUITS BY NAMED INSUREDS EXCLUSION**</u>

It is agreed that this policy does not apply to "Bodily Injury", "Property Damage", or "Personal and Advertising Injury" arising out of "Suits" brought by any "Named Insured" against another "Named Insured".



This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy. |
| :-- |
| Policy # _____ |
| Effective on and after _____ 12:01 am standard time |
| Issued to _____ |

Countersigned by _____
                        Authorized Representative



CFS GL 103



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

GENERAL LIABILITY
DEDUCTIBLE LIABILITY INSURANCE - INDEMNITY AND DEFENSE COMBINED

This endorsement modifies insurance provided under the following:
I.
SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| Bodily Injury Liability, and/or Property Damage Liability, and Medical Payments, Combined | $100,000 | per claim – sporting goods products and |
| | $10,000 | per claim – all other products |
| Personal Injury and/or Advertising Injury Liability Combined * | $10,000 | per claim |
| All Covered Claims | $ -------- | aggregate |

*This includes "personal injury" and "advertising injury" or "personal and advertising injury" depending on the coverage actually provided in the policy to which this endorsement applies.

A. As respects the aggregate limit shown in the schedule above one of the following conditions apply, as indicated by an x:

1. _____ This limit is not subject to adjustment.

2. _____ This limit is a minimum based on estimated _____ of _____ and is subject to adjustment. Should your actual _____ for the policy period exceed the estimate, the limit shall be increased by _____ for each _____, rounded to the nearest whole unit, that the actual _____ exceeds the estimate.

B. A loss conversion factor (LCF) of _____ will apply to all deductible reimbursements paid by the insured.  The LCF will be charged in addition to the deductible obligations of the insured, and does not erode the deductible limits stated in this endorsement.

*CCF is claim handling*

*ALAE not included in Deductible?*

FM 101.0.1539 02 02

EXHIBIT G - PAGE 334



## II.  APPLICATION OF ENDORSEMENT

A.  Enter below any limitations on the application of this endorsement.  If no limitation is entered, the deductibles apply to damages for all "bodily injury", and "personal and/or advertising injury", however caused:

B.  Our obligation to pay damages under the Bodily Injury and Property Damage Liability and the Personal and/or Advertising Injury Liability, to defend any claim or "suit", to investigate any "occurrence", to settle any claim or "suit", and to pay benefits under Medical Payments applies only to the amount of damages, benefits, and/or "defense expense" incurred in excess of any deductible amounts stated in the Schedule above as applicable to such coverage.

C.  The limits of insurance applicable to each "occurrence" for coverages subject to the deductible shall be reduced by the application of any deductible amount stated as being applicable to such coverage.

D.  "Aggregate" policy limits for any coverage shall be reduced by the application of any deductible amount.

E.  You may select a deductible amount on either a per claim or a per "occurrence" basis.  Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above.  The deductible amounts stated in the Schedule above apply as follows:

1.  **PER CLAIM BASIS** - if the deductible amount indicated in the Schedule above is on a "per claim" basis, that deductible amount applies as follows:
    (1)  Under Bodily Injury Liability and/or Property Damage Liability and Medical Payments, Combined, to all damages sustained by any one person because of "bodily injury" and "property damage" combined as the result of any one "occurrence".

    (2)  Under Personal and/or Advertising Injury Liability Combined, to all damages because of "personal and/or advertising injury" combined sustained by any one person because of any one "occurrence" or offense.

    (3)  If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

    (4)  With respect to "property damage", and "personal and/or advertising injury", person includes an organization.

2.  **PER OCCURRENCE BASIS** - if the deductible amount indicated in the



**EXHIBIT G - PAGE 335**



Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

(1) Under Bodily Injury Liability and/or Property Damage Liability and Medical Payments, Combined, to all damages because of "bodily injury" and "property damage" as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

(2) Under Personal and/or Advertising Injury Liability Combined, to all damages because of "personal and/or advertising injury" combined as the result of any one "occurrence" or offense regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

F.  The terms of this insurance, including those with respect to:

1.  our right and duty to defend any "suits" seeking those damages;

2.  our right to select counsel and maintain control of the defense; and



3.  your duties in the event of an "occurrence", claim or "suit";

apply irrespective of the application of the deductible amount.

## III.  AGGREGATE LIMIT

A.  The aggregate limit shown in the schedule is the most the insured will have to pay for all covered claims within the deductible.

1.  If we cancel the policy for reasons other than nonpayment of premium, the aggregate amount shown in the Schedule will be reduced to a pro rata amount based on the time this policy was in force.

2.  If you cancel the policy as a result of your retiring from business, the aggregate deductible amount will be reduced to a pro rata amount based on the time this policy was in force.

3.  If the policy is canceled for any reason other than as described in paragraph A.1. and A. 2. above, the aggregate deductible amount will not be reduced.

B.  The aggregate will not be reduced if this policy is issued for a term less than one (1) year except if the policy is canceled.  In such event, the aggregate deductible will be determined in accordance with section A. above.

## IV.  REIMBURSEMENT TERMS



A.  We will pay the deductible amount for you, but you must reimburse us after we send



you notice that payment is due. We will send you notice that payment is due on a periodic basis but not more frequently than on a monthly basis, unless a single loss is paid by us in excess of 50% of the escrow balance held by us, in which case we have the right to bill you immediately for this loss. You are responsible to reimburse us for the total loss falling within the deductible including any expected recovery, as described below, until such time as the recovery is received.

B. Reimbursement of the deductible amount shall be applied in the following order:

   1. First, to benefits paid under Medical Payments.

   2. Second, to any "defense expense" incurred by us regardless of whether there was any payment for actual damages.

   3. Third, to damages paid by us on your behalf.

C. These rights are in addition to any other legal rights we have to be reimbursed.

**V.   DEFENSE EXPENSE**



"Defense expense" is defined as:

The expenses incurred by you or us in connection with the investigation of accidents, adjustments of claims and includes any legal costs associated with the defense and settlement or trial of suits. Defense expenses do not include work ordinarily done by a Claims Department, nor expenses incurred by employees of any "insured". Defense expenses and legal costs include, but are not limited to the following:

a. Payments to attorneys, law firms, doctors, experts, appraisers, photographers, adjusters, investigators, printers, stenographers (not on salary or in the employment of the company) and all other services and expenses in connection with the investigation and settlement of claims and the defense or legal proceedings as defined in the policy.

b. Costs for release of attachments, removal and appeal bonds, and post-judgment interest.

c. Fees and expenses of witnesses, lay and expert.

d. Pre-judgment interest.

**VI.   RECOVERY FROM OTHERS**



If any money is recovered under Rights of Recovery Against Others it will be disbursed in the following order so long as funds remain:

FM 101.0.1539 02 02                                    PAGE 4 of 6



A. First, all expenses incurred in making the recovery will be repaid: and
B. Second, we will be repaid to the extent of our actual loss payments; and
C. Third, the insured will be repaid for any deductible reimbursements made.

Disbursement of recoveries will occur on the next deductible billing following receipt of the recovery.

If our recovery attempt is unsuccessful, we will bear all of the recovery expenses.

**VII.    CANCELLATION**

The following is added to the cancellation conditions of the policy.

A. If you fail to provide and maintain collateral and escrow as required by us to secure your obligations under this deductible endorsement, we have the right to cancel the policy for nonpayment of premium.

B. If you fail to fully reimburse us when due, we have the right to cancel the policy for nonpayment of premium. We may keep the amount of unearned premium that will reimburse us for the payments we made.



**VIII.    ARBITRATION**

If any dispute shall arise between you and us with reference to this Deductible Endorsement, such dispute, upon written request of either party, shall be submitted to arbitration in accordance with the Commercial Rules of the American Arbitration Association. Said arbitration shall be conducted in the county of the mailing address of the first named insured by a panel of three arbitrators, one to be chosen by each party and the third by the two so chosen. The arbitrator chosen by each party shall be from a list, provided by the American Arbitration Association, of arbitrators knowledgeable in the area of the dispute. If either party refuses or neglects to appoint an arbitrator within thirty days after receipt of written notice from the other party requesting it to do so, the requesting party may appoint two arbitrators. If the two arbitrators fail to agree in the selection of a third arbitrator within thirty days of their appointment, each of them shall name two, of whom the other shall decline one, and the decision shall be made by drawing lots. The arbitrators shall interpret this Agreement as an honorable engagement and not merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law; and they shall make their award with a view of effecting the general purposes of this Agreement in a reasonable manner rather than in accordance with a literal interpretation of the language. Each party shall submit its case to its arbitrator within thirty



FM 101.0.1539 02 02

PMGA 051



days of the appointment of the third arbitrator. The decision in writing of any two arbitrators, when filed with the parties hereto, shall be final and binding on both parties, and judgment may thereafter be entered thereon in any court of competent jurisdiction. Each Party shall bear the expenses of its own arbitrator and shall jointly and equally bear with the other party the expenses of the third arbitrator. The prevailing party in the arbitration shall be awarded its attorneys' fees and expenses (other than the cost of the arbitrators). In the event that each party prevails on one or more issues, the arbitrators shall determine as accurately as possible which party has more substantially prevailed on an overall basis, and award that party attorneys' fees and costs in the percentage amount by which that party has prevailed.





FM 101.0.1539 02 02                                         PM463A0852

**EXHIBIT G - PAGE 339**



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## DEFINITION OF GROSS SALES

1.  **Definition**
    The gross amount charged by the Named Insured, concessionaires of the Named Insured or by others trading under the insured's named for:

    a.   All goods or products sold or distributed during the Policy Period;
    b.   Operations performed during the Policy Period; and
    c.   Rentals during the Policy Period;
    d.   Dues or fees during the Policy Period.

2.  **Inclusions**
    The following items shall not be deducted from gross sales as determined above:

    a.   Foreign exchange discounts;
    b.   Freight allowance to customers;
    c.   Total sales of consigned goods and warehouse receipts;
    d.   Trade or cash discounts;
    e.   Bad debts; and
    f.   Repossession of items sold on installments (amounts actually collected).



3.  **Exclusions**
    The following items shall be deducted from gross sales:

    a.   Sales or excise taxes which are collected and submitted to a governmental division;
    b.   Credits for repossessed merchandise and products returned.  Allowances for damaged and spoiled goods;
    c.   Finance charges for items sold on installments;
    d.   Freight charges on sales if freight is charged as a separate item on customer's invoice; and
    e.   Royalty income from patent rights or copyrights which are not product sales.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

---

Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy.
Policy #_____
Effective on and after _____12:01 am standard time
Issued to _____

---

Countersigned by _____ Date:_____
                          Authorized Representative

CFSGEN1



POLICY NUMBER GLO 050151

FM2.0.838 02 03

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

# NO COVERAGE



| SCHEDULE* |
|---|
| Terrorism Premium (Certified Acts)  Not Applicable |
| Additional information, if any, concerning the terrorism premium: |
|  |
|  |
|  |
|  |
| Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.



FM2.0.838 02 03

© ISO Properties, Inc., 2003

Page 1 of 1

EXHIBIT G - PAGE 341



# ENDORSEMENT

This endorsement, issued by CRUM & FORSTER SPECIALTY INSURANCE COMPANY, forms a part of the policy to which it is attached.

## EARNED PREMIUM AND COMPOSITE RATE ENDORSEMENT

In consideration of Crum & Forster's acceptance of this insurance, the Named Insured hereby agrees that the minimum earned premium(s) due for this policy shall be calculated in accordance with the following:

1. In the event of cancellation of this policy by the Named Insured after this policy has been in effect for more than thirty (30) days, the return premium due, if any, shall be computed at a rate equal to ninety percent (90%) of the pro-rata unearned policy premium, subject, however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy. Within the first thirty (30) days of coverage under this insurance, a twenty-five percent (25%) absolute minimum earned premium is applicable, unless another higher premium is designated specifically as a minimum premium in the declarations.

2. Failure by the Named Insured to remit premium payments when due shall be considered a request by the Named Insured for the Company to cancel this policy. Cancellation shall be computed in accordance with paragraph 1 above.

3. In the event of cancellation of this policy by the Company for reasons other than nonpayment of premium, the earned premium for this policy shall be computed on a pro-rata basis, subject, however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy.

4. The premium entered on the Declarations page of this policy as ADVANCE PREMIUM is a provisional premium only and is subject to upward adjustment only in accordance with our rules, rates and the Premium Audit provisions of this policy. Premium adjustments effected as a result of premium audits will be done after the policy is no longer in effect, but may be done by the Company while the policy is in effect.

5. The amount entered as ADVANCE PREMIUM on the Declarations page of this policy has been computed on a composite rate basis for both "bodily injury" and "property damage" as follows:

| Exposure Basis | Estimated Exposure | x | Composite Rate | = | ADVANCE PREMIUM |
|---|---|---|---|---|---|
| Gross Sales: | $1,170,000,000 | X | $.48 | = | $561,600. |



If the Exposure Basis is Payroll, then the Composite Rate shall be applied per hundred dollars of Payroll. If the Exposure Basis is Gross Sales, then the Composite Rate shall be applied per thousand dollars of Gross Sales. If the exposure is Cost, then the composite rate shall be applied per thousand dollars of cost.

CFS GEN 12 (1203)



POLICY NUMBER:  GLO 050151

COMMERCIAL GENERAL LIABILITY
CG 04 35 02 02

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYEE BENEFITS LIABILITY COVERAGE

### THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
### PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $1,000,000 | each employee | $1,000. | each employee | Included |
| | $1,000,000 | aggregate | $ | | |
| Retroactive Date: | 10/27/95 | | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)



A. The following is added to Section I – Coverages:

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Paragraph E. (Section III – Limits Of Insurance); and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   b. This insurance applies to damages only if:

      (1) The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

      (2) The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

      (3) A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph c. below, during the policy period or an Extended Reporting Period we provide under Paragraph G. of this endorsement.

   c. A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

      (1) When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or



CG 04 35 02 02

© ISO Properties, Inc.,  2001

Page 1 of 6



**(2)** When we make settlement in accordance with Paragraph 1.a. above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

## 2. Exclusions

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments -- Coverages A and B are replaced by Supplementary Payments -- Coverages A, B and Employee Benefits Liability.

**2.** Paragraphs 1.b. and 2. of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs 2. and 4. of Section II -- Who Is An Insured are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

© ISO Properties, Inc., 2001

CG 04 35 02 02    □

**EXHIBIT G - PAGE 344**



4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

    a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

    b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

D. For the purposes of the coverage provided by this endorsement, Paragraph 3. of **Section II – Who Is An Insured** does not apply.

E. For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

1. **Limits Of Insurance**

    a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

      (1) Insureds;

      (2) "Claims" made or "suits" brought;

      (3) Persons or organizations making "claims" or bringing "suits";

      (4) Acts, errors or omissions: or

      (5) Benefits included in your "employee benefit program".

    b. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

    c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

      (1) An act, error or omission; or

      (2) A series of related acts, errors or omissions

    negligently committed in the "administration" of your "employee benefit program".



However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

2. **Deductible**

    a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

    b. The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

    c. The terms of this insurance, including those with respect to:

      (1) Our right and duty to defend any "suits" seeking those damages; and

      (2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

    apply irrespective of the application of the deductible amount.

    d. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.



© ISO Properties, Inc., 2001

**EXHIBIT G – PAGE 345**



F. For the purposes of the coverage provided by this endorsement, Conditions 2. and 4. of Section IV -- Conditions are replaced by the following:

2. **Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

   a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

      (1) What the act, error or omission was and when it occurred; and

      (2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

   b. If a "claim" is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

   a. Primary Insurance

      This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

   b. Excess Insurance

      (1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

         (a) No Retroactive Date is shown in the Schedule of this insurance; or

         (b) The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

      (2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

      (3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

      (4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.



       © ISO Properties, Inc., 2001       CG 04 35 02 02       □

**EXHIBIT G - PAGE 346**



**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

**G.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

1. You will have the right to purchase an Extended Reporting Period, as described below, if:

    a. This endorsement is canceled or not renewed; or

    b. We renew or replace this endorsement with insurance that:

       (1) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

       (2) Does not apply to an act, error or omission on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

    You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

    We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

    a. The "employee benefit programs" insured;



    b. Previous types and amounts of insurance;

    c. Limits of Insurance available under this endorsement for future payment of damages; and

    d. Other related factors.

    The additional premium will not exceed 100% of the annual premium for this endorsement.

    The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4. If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

    The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

    Paragraph **E.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **E.1.c.**

**H.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions Section:**

1. "Administration" means:

    a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

    b. Handling records in connection with the "employee benefit program"; or

    c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

    However, "administration" does not include handling payroll deductions.



**EXHIBIT G - PAGE 347**



2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

I. For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. in the Definitions Section are replaced by the following:

   5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.





© ISO Properties, Inc., 2001

CG 04 35 02 02    □

**EXHIBIT G – PAGE 348**



COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.,** Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.,** Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.





CG 21 47 07 98       Copyright, Insurance Services Office, Inc., 1997       Page 1 of 1    □



COMMERCIAL GENERAL LIABILITY
CG 21 75 11 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

Injury or damage arising directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    a. Physical injury that involves a substantial risk of death; or

    b. Protracted and obvious physical disfigurement; or

    c. Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs 1. and 2. describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

B. The following definitions are added:

1. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

    a. The act resulted in aggregate losses in excess of $5 million; and

    b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.



CG 21 75 11 02                    © ISO Properties, Inc., 2002                    Page 1 of 2    ▢



2. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.





© ISO Properties, Inc., 2002

CG 21 75 11 02    □



POLICY NUMBER:  GLO 050151

COMMERCIAL GENERAL LIABILITY
CG 21 35 10 01

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description And Location Of Premises Or Classification: |
|---|
| |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)



With respect to any premises or classification shown in the Schedule:

1. Section I – Coverage C – Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

2. The following is added to Section I – Supplementary Payments:

   h. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.



CG 21 35 10 01

© ISO Properties, Inc., 2000

Page 1 of 1      □



COMMERCIAL GENERAL LIABILITY
CG 22 33 07 98

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – TESTING OR CONSULTING ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2.**, **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and **Paragraph 2.–Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. An error, omission, defect or deficiency in:

    a. Any test performed; or

    b. An evaluation, a consultation or advice given,

    by or on behalf of any insured;



2. The reporting of or reliance upon any such test, evaluation, consultation or advice; or

3. An error, omission, defect or deficiency in experimental data or the insured's interpretation of that data.



CG 22 33 07 98

Copyright, Insurance Services Office, Inc., 1997

Page 1 of 1

**EXHIBIT G – PAGE 353**



COMMERCIAL GENERAL LIABILITY
CG 21 67 04 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., Exclusions of Section I -- Coverage A -- Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph 2., Exclusions of Section I -- Coverage B -- Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.







**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## LEAD EXCLUSION

This policy does not apply to:

1. "Bodily Injury", "Property Damage", or "Personal and Advertising Injury" in any way or to any extent arising out of the actual, alleged or threatened exposure to lead or any substance containing lead.

2. "Economic Loss", "Diminution of Property", "Abatement Costs", or any other loss, cost, or expense including "Equitable Relief", in any way or to any extent arising out of or involving lead or any substance containing lead.

3. Any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any "Claim" or "Suit" arising out of or involving lead or any substance containing lead.

For the purpose of this exclusion, the following additional terms are defined:

"Abatement Costs" mean any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal, replacement, or treatment.

"Diminution of Property" means the diminishing or lessening in value of property.

"Economic Loss" means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture, utilization, or existence of a substance or product.

"Equitable Relief" means any remedy or relief, including restitution or injunctive relief, sought in a court with equitable powers.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| |
|---|
| Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy. |
| Policy No. _____ |
| Effective on and after _____ 12:01a.m. standard time |
| Issued to _____ |

Countersigned by: _____

Authorized Representative

FM 600.0.955 (0999)




A FAIRFAX Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

*Named Insured: MGA Entertainment, Inc.        Policy No. GLO 050151

*Company: C&F Specialty        Effective Date: 01/01/05

*This information is completed only when this endorsement is issued subsequent to preparation of policy.

## MULTI-MEDIA ACTIVITY EXCLUSION

In consideration of the premium charged, it is agreed that this insurance shall not apply to liability arising out of or resulting from "Multi-Media Activity".

"Multi-Media Activity" means creating, producing, distributing, exhibiting, broadcasting, advertising or publicizing "Matter".

"Matter" means printed, verbal, numerical, audio or visual expression, or any other form of expression, fixed in software or any other medium.



All other terms and conditions remain unchanged.

_____
Authorized Representative

CFSGL151



# LIST OF NAMED INSURED'S
## ENDORSEMENT

This endorsement forms a part of Policy No. GLO 050151


Issued by Crum & Forster Specialty Company

MGA Entertainment (Canada) Company
MGA Entertainment International Holdings Cooperatief UA
Schoenborn Properties, LP


All other terms and conditions of this policy remain unchanged.



_____
Authorized Representative



FM 100.0.14 (0996)



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTVE AND HIGHWAY LIABILITY POLICY NEW YORK
DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:



   A . Under any Liability Coverage, to "bodily injury" or "property damage;"
      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:



      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

IL 00 21 04 98                                                          Page 1 of 2



(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property threat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic, or explosive properties;

"Nuclear material" means "source material," "Special nuclear material," or "by-product material;"

"Source material," "special nuclear material," and "by-product material;" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing, or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;



IL 00 21 04 98



(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.





IL 00 21 04 98

**EXHIBIT G - PAGE 360**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION

This policy does not apply to punitive or exemplary damages, fines or penalties.



This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Policy # _____

Effective on and after _____ 12:01 am standard time

Issued to _____

Countersigned by_____
                    Authorized Representative



FM 101.0.1203 (1189)

**EXHIBIT G - PAGE 361**



## SURPLUS LINES FILING AND POLICY ISSUANCE CRITERIA

### SERVICE OF PROCESS CLAUSE

The Commissioner, Director, or Superintendent of Insurance of the State (or other office specified for the following purpose) in the state of California designated as true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit, or proceeding arising out of this policy.  The Company further designates:

| | |
|---|---|
| Name: | Doug Libby, President |
| Name of Company or Firm: | Crum & Forster Specialty Insurance Co. |
| Mailing Address: | 305 Madison Avenue Morristown, NJ 07962 |



As its agent in (state) to whom such process shall be forwarded by the Commissioner, Director, or Superintendent of Insurance.



ALL STAMPS PLACED ON POLIY OR OTHER DOCUMENTS MUST BE IN RED INK

GEN 0002

**EXHIBIT G - PAGE 362**



## SURPLUS LINES FILING AND POLICY ISSUANCE CRITERIA

### SERVICE OF PROCESS CLAUSE

The Commissioner, Director or Superintendent of Insurance of the State (or other office specified for the following purpose) in the State of California is hereby designated as the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit, or proceeding arising our of this policy.  The Company further designates:



NAME:                    Robert Elster

Name of Company or Firm:    Apollo General Insurance Agency, Inc.

Mailing Address:            P.O. Box 1508, Sonoma, CA 95476

As its agent in (state) to whom such process shall be forwarded by the Commissioner, Director, or Superintendent of Insurance.



GEN 0002

**EXHIBIT G – PAGE 363**



POLICY NUMBER: GLO 050151

COMMERCIAL GENERAL LIABILITY
CG 24 04 10 93

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

As required by written contract.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.





CG 24 04 10 93

Copyright, Insurance Services Office, Inc., 1992

Page 1 of 1



COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion i. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion h. under Paragraph 2., Exclusions of Section I – Coverage C – Medical Payments does not apply. Medical payments due to war are now subject to Exclusion g. of Paragraph 2., Exclusions of Section I – Coverage C – Medical Payments since "bodily injury" arising out of war is now excluded under Coverage A.





CG 00 62 12 02          © ISO Properties, Inc., 2002          Page 1 of 1

**EXHIBIT G - PAGE 365**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Josephine Tucker and the assigned discovery Magistrate Judge is Robert N. Block.

The case number on all documents filed with the Court should read as follows:

## SACV12- 943 JST  (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [X] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

CENTRAL DISTRICT OF CALIFOR

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, LEXINGTON INSURANCE COMPANY, CHARTIS SPECIALTY INSURANCE COMPANY (Continued on Attachment) | ) ) ) ) |
| *Plaintiff(s)* | ) ) |
| v. | ) ) Civil Action No.  **SACV12-00943 JST (RNBx)** |
| MGA ENTERTAINMENT, INC.; and ISAAC LARIAN | ) ) ) ) |
| *Defendant(s)* | ) ) ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   see attachment.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  JUN 1 3 2012                                                   N. Boe~~~

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .


I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                           *Server's signature*

                                                   _____
                                                           *Printed name and title*


                                                   _____
                                                           *Server's address*


Additional information regarding attempted service, etc:

SUMMONS IN A CIVIL ACTION
Attachment

1 | **Caption (Continuation)**

2 | (FORMERLY AMERICAN
INTERNATIONAL SPECIALTY
3 | LINES INSURANCE), AND
CRUM & FORSTER
4 | SPECIALTY INSURANCE
COMPANY,

5 |

6 |             Plaintiffs,

7 |

**Plaintiffs' Attorneys**

8 |

MUSICK, PEELER & GARRETT LLP
9 | Susan J. Field (State Bar No. 086200)
One Wilshire Boulevard, Suite 2000
10 | Los Angeles, California 90017-3383
Telephone: (213) 629-7600
11 | Facsimile: (213) 624-1376
*s.field@mpglaw.com*

12 |

MUSICK, PEELER & GARRETT LLP
13 | Jennifer M. Kokes (State Bar No. 210261)
650 Town Center Drive, Suite 1200
14 | Costa Mesa, California 92626-1925
Telephone: (714) 668-2400
15 | Facsimile: (714) 668-2490
*j.kokes@mpglaw.com*

16 |

Attorneys for CRUM & FORSTER SPECIALTY INSURANCE COMPANY

17 |

DRINKER BIDDLE & REATH LLP
18 | William A. Hanssen (State Bar No. 110613)
Suzanne V. Stouder (State Bar No. 161077)
19 | 1800 Century Park East, Suite 1400
Los Angeles, California 90067
20 | Telephone:  (310) 203-4000
Facsimile:   (310) 229-1285
21 | *William.hanssen@dbr.com*
*Suzanne.stouder@dbr.com*

22 |

Attorneys for NATIONAL UNION FIRE INSURANCE COMPANY OF
23 | PITTSBURGH, PA., LEXINGTON INSURANCE COMPANY, CHARTIS
SPECIALTY INSURANCE COMPANY (FORMERLY AMERICAN
24 | INTERNATIONAL SPECIALTY LINES INSURANCE)

25 |

26 |

27 |

28 |

797349.1

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| National Union Fire Ins. Co. of Pittsburgh, PA, Lexington Ins. Co., Chartis Specialty Ins. Co. (Formerly American International Specialty Lines Insurance), and Crum & Forster Specialty Ins. Co. | MGA Entertainment, Inc.; and Isaac Larian |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) See attachment I(b). | Attorneys (If Known) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No    ☑ MONEY DEMANDED IN COMPLAINT: $ Excess of $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C Section 1332(a)(1)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☑ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/ PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

FOR OFFICE USE ONLY:    Case Number:    **SACV12-00943 JST (RNBx)**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STAT   DISTRICT COURT, CENTRAL DISTRICT   CALIFORNIA
CIVIL COVER SHEET

VIII(a).  IDENTICAL CASES:  Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

VIII(b).  RELATED CASES:  Have any cases been previously filed in this court that are related to the present case?  ☐ No   ☑ Yes
If yes, list case number(s):  CV 04-9049 DOC(RNBx), CV 08-00457-DOC(RNBx)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☑ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☑ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE:  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | New York, New Jersey |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange, Los Angeles |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):                                   Date  June 13, 2012

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

**Attachment to Civil Case Cover Sheet**

1  **I(b)**

2  MUSICK, PEELER & GARRETT LLP
Susan J. Field (State Bar No. 086200)
3  One Wilshire Boulevard, Suite 2000
Los Angeles, California 90017-3383
4  Telephone: (213) 629-7600
Facsimile: (213) 624-1376
5  *s.field@mpglaw.com*

6  MUSICK, PEELER & GARRETT LLP
Jennifer M. Kokes (State Bar No. 210261)
7  650 Town Center Drive, Suite 1200
Costa Mesa, California 92626-1925
8  Telephone: (714) 668-2400
Facsimile: (714) 668-2490
9  *j.kokes@mpglaw.com*

10  Attorneys for CRUM & FORSTER SPECIALTY INSURANCE COMPANY

11  DRINKER BIDDLE & REATH LLP
William A. Hanssen (State Bar No. 110613)
12  Suzanne V. Stouder (State Bar No. 161077)
1800 Century Park East, Suite 1400
13  Los Angeles, California 90067
Telephone:  (310) 203-4000
14  Facsimile:  (310) 229-1285
*William.hanssen@dbr.com*
15  *Suzanne.stouder@dbr.com*

16  Attorneys for NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PA,, LEXINGTON INSURANCE COMPANY, CHARTIS
17  SPECIALTY INSURANCE COMPANY (FORMERLY AMERICAN
INTERNATIONAL SPECIALTY LINES INSURANCE)

18

19

20

21

22

23

24

25

26

27

28

797462.1